E-FILED 09-19-08

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>IRA ISAACS,<br><br>    Defendant. | CASE NO. CR 07-732-GHK<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT WITH PREJUDICE** |

This matter is before us on Defendant's Motion for an Order Dismissing the Indictment with Prejudice ("Motion"). On June 13, 2008, Chief Judge Alex Kozinski declared a mistrial in this case. Defendant now moves to dismiss the indictment against him. He argues that his re-prosecution is barred by the Double Jeopardy Clause. U.S. Const. amend. V. Because the parties are familiar with the facts in this case, we will not repeat any facts except as necessary. We have fully considered the parties' briefing as well as counsel's oral argument on September 8, 2008. We rule as follows:

//
//
//

When, as here, a mistrial is declared after jeopardy attaches[1] but before the jury reaches a verdict, a defendant may be tried again for the same crime only if he consents to the mistrial or if the district court determines that the mistrial was required by manifest necessity. *See United States v. Chapman*, 524 F.3d 1073, 1081 (9th Cir. 2008); *United States v. Bates*, 917 F.2d 388, 392 (9th Cir. 1990).

## I.  Express or Implied Consent

The Government argues that Defendant cannot bring this Motion because he consented to a mistrial. Consent to a mistrial can either be express or implied. Express consent to mistrial "is deemed to be a deliberate election on [defendant's] part to forego his valued right to have his guilt or innocence determined before the first trier of fact[,]" and usually removes any double jeopardy bar to re-prosecution. *United States v. Nelson*, 718 F.2d 315, 320 (9th Cir. 1983). In this case, there is no evidence that Defendant expressly consented to a mistrial. To the contrary, in open court and on the record Mr. Diamond, counsel for Defendant, stated that he opposed a mistrial based on the June 11, 2008, *Los Angeles Times* ("*Times*") article.[2] (Trial Tr. pg. 87, ln. 20-21, Jun. 11, 2008).

Similarly, there is no evidence that Defendant impliedly consented to a mistrial. Implied consent, like express consent, "removes any double jeopardy bar to retrial." *United States v.*

---

[1] Neither side disputes that jeopardy had attached at the time Judge Kozinski declared the mistrial. We agree. Jeopardy attaches in a jury trial after a jury has been empaneled and sworn. *Serfass v. United States*, 420 U.S. 377, 388 (1975). Here, it is undisputed that the jury had been empaneled and sworn before Judge Kozinski declared the mistrial.

[2] As we stated on the record at oral argument on this Motion, we will not consider the alleged telephone conversation between Mr. Diamond, Mr. Whitted, counsel for the Government, and Judge Kozinski's courtroom deputy clerk. The conversation was not on the record, its accuracy is disputed, and Judge Kozinski was not present during the conversation. Furthermore, even if we were to consider the alleged telephone conversation, we would not find that Defendant had consented to a mistrial. At best, Mr. Whitted claimed Mr. Diamond consented to a mistrial provided that Defendant would not be re-tried until 2009. As the Government admits in its own declaration, Defendant's contingency was rejected by the Government. Accordingly, we find and conclude that Defendant had not expressly consented to a mistrial.

*Smith*, 621 F.2d 350, 351 (9th Cir. 1980).  Nevertheless, we may infer implied consent "only where the circumstances positively indicate a defendant's willingness to acquiesce in the mistrial order."  *Weston v. Kernan*, 50 F.3d 633, 637 (9th Cir. 1995); *United States v. You*, 382 F.3d 958, 964–65 (9th Cir. 2004).  The Government argues that Defendant impliedly consented to the mistrial order by failing to object to it immediately after it was issued.  We agree with Mr. Diamond that he had no reasonable opportunity to object to the mistrial declaration after it was made and before the jurors were discharged.  His failure to object did not in any way amount to a "willingness to acquiesce in the mistrial order."  Thus, we find and conclude that Plaintiff neither expressly nor impliedly consented to mistrial.

**II.     Manifest Necessity**

Because jeopardy attached before the mistrial declaration, absent consent, as here, re-trial is constitutionally permissible only if there was manifest necessity for the mistrial, or the ends of public justice would otherwise be defeated.  *Illinois v. Somerville*, 410 U.S. 458, 461 (1973); *see also United States v. Elliot*, 463 F.3d 858, 864 (9th Cir. 2006).  In determining whether a judge was correct in finding "manifest necessity," we consider the grounds for the mistrial declaration, as well as whether the judge acted within his "sound discretion" in concluding that manifest necessity for a mistrial existed.  *See Elliot*, 463 F.3d at 864.  Here, Judge Kozinski recused himself, and then declared a mistrial.  In his order, Judge Kozinski stated that "[i]n light of the public controversy surrounding my involvement in this case, I have concluded that there is a manifest necessity to declare a mistrial.  I recuse myself from further participation in the case . . . ."

     A.     Judge Kozinski's Self-Recusal

Under 28 U.S.C. § 455(a) a judge must recuse himself if "a reasonable person *with knowledge of all the facts* would conclude that the judge's impartiality might reasonably be questioned."  *Pesnell v. Arsenault*, ___ F.3d ___, 2008 WL 4192067, at *4 (9th Cir. Sept. 15, 2008) (emphasis added); *United States v. Holland*. 519 F.3d 909, 913 (9th Cir. 2008).  In determining the propriety of Judge Kozinski's recusal determination under § 455(a), we consider the entirety of the record because "[d]isqualification under § 455(a) is necessarily fact-driven

1  and may turn on subtleties in the particular case.  Consequently, the analysis of a particular §
2  455(a) claim must be guided, not by comparison to similar situations addressed by prior
3  jurisprudence, but rather by an independent examination of the unique facts and circumstances
4  of the particular claim at issue." *Holland*, 519 F.3d at 913 (citation omitted).  The record in this
5  case includes the *Times* articles,[3] the statements attributed to him in those articles,[4] the court's

---

[3] As of the mistrial declaration, there were two articles at issue.  One was published on the *Times* website on June 11, 2008, and the other was published in the June 12, 2008, paper edition.  On the record in proceedings on June 11, 2008, Judge Kozinski referred to the website article that had appeared earlier that day.  Because Judge Kozinski recused himself on June 13, 2008, after the publication of the print version of the June 12, 2008 *Times* article, and because he referred to the "public controversy" in his recusal order, we conclude that these two articles encompassed the subject matter of the "public controversy" to which Judge Kozinski referred in his recusal order.

[4] Defendant objects to our consideration of these two articles, largely on hearsay grounds, but also because the articles were not actually spread on the record in this case.  To the extent that Defendant argues that the articles are not in the record before us, we reject this argument.  We can, and do, take judicial notice of the *Times* articles.  Fed. R. Evid. 201 (stating rule for taking judicial notice); *United States v. W.R. Grace*, 504 F.3d 745, 766 (9th Cir. 2007) (observing that courts have the right to take judicial notice of the existence and content of published articles).  Insofar as Defendant objects on hearsay grounds, this objection is also overruled. We are not convinced that, in determining the propriety of recusal, we are necessarily prohibited from considering hearsay statements in all instances.  *See United States v. Professional Air Traffic Controllers Organization*, 527 F. Supp. 1344, 1356 n.12 (N.D. Ill. 1981) (noting that hearsay might, in some circumstances, constitute a basis for recusal)*; Hodgson v. Liquor Salesmen's Local Union No. 2*, 444 F.2d 1344, 1349 (2d Cir. 1971) (concluding that the fact a recusal application is based entirely on hearsay may be taken into account in judging the sufficiency of an affidavit required for recusal under 28 U.S.C. § 144, but not holding that hearsay may not in some circumstances constitute a basis for recusal); *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 67 (S.D.N.Y. 2001) (recognizing that hearsay statements could be considered in a recusal motion).

We recognize that recusal cannot be necessitated by the simple publication of a wholly fabricated article about a judge, lest judicial administration be hijacked by such manipulation.  *See In re United States*, 666 F.2d 690, 695 (1st Cir. 1981) (misrepresentations or falsehoods made by third parties, even if widely reported and might theoretically cause "appearance of partiality" not bases for recusal).  But we also should not ignore the contents of the articles especially in light of the context they provide for the proceedings that followed their publication.

In this case, we need not, and do not, determine that every assertion in the articles

4

two colloquies with the parties concerning the first *Times* article, and Judge Kozinski's June 12, 2008, order requesting that proceedings be initiated against him pursuant to Rule 26 of the Rules Governing Judicial Conduct and Disability ("Conduct Rule 26").[5]

The purpose of § 455(a) is to "promote public confidence in the integrity of the judicial process." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858 n.7 (1988); *Holland*, 519 F.3d at 913 n.3. With that in mind, the question before us is not whether Judge Kozinski had any actual bias, either for or against Defendant or the Government, but whether a reasonable person with knowledge of all the facts would conclude that his impartiality might reasonably be questioned. *United States v. Jaramillo*, 745 F.2d 1245, 1248 (9th Cir. 1984). Based on the subject matter of, and the statements attributed to Judge Kozinski in, the articles, Judge Kozinski's own statements relating to the articles made on the record, as well as his request for proceedings under Conduct Rule 26, a reasonable person, aware of all the facts and giving due regard to the nature and quality of those facts, would conclude that his impartiality might reasonably be questioned in this case. Therefore, based upon the entire record, taken in context and in its entirety, we find and conclude that Judge Kozinski's recusal was required by 28 U.S.C.

---

is true. Nevertheless, we conclude that a reasonable person may and would consider the assertions in the articles in light of all of the circumstances reflected in this record. These circumstances include (1) the absence of any evidence that the subject matter and content of the articles, including statements attributed to Judge Kozinski, are wholly fictitious, (2) Judge Kozinski's reaction to such articles which, while not directly commenting on the merits, also does not assert that the articles are without any factual basis such that the publication is properly viewed as an attempt to manipulate the judicial process, and (3) the judge's characterization of the matter as serious enough to merit not only the parties' consideration of a recusal motion, but also an investigation under Rule 26 of the Rules Governing Judicial Conduct and Disability.

[5]Judge Kozinski requested "the Judicial Council of the Ninth Circuit to take steps pursuant to Rule 26, of the Rules Governing Judicial Conduct and Disability, and to initiate proceedings concerning the article that appeared in [the June 11, 2008 online edition of the] Los Angeles Times." He said that he "will cooperate fully in any investigation." Gov. Attach. D.

§455(a).[6]

B.     Manifest Necessity For A Mistrial

A judicial determination of manifest necessity is reviewed for abuse of discretion. *Chapman,* 524 F.3d at 1082.[7] In this case, Judge Kozinski's recusal, which we find proper, is a significant factor in our determination of whether he exercised sound discretion in concluding that manifest necessity for mistrial existed. In *Jaramillo*, the Ninth Circuit concluded that manifest necessity for mistrial was shown when the trial judge recused himself mid-trial due to his indictment. 745 F.2d at 1248. We, of course, do not rely solely on the recusal order. We have also considered the other factors set forth in *Bates*. 917 F.2d at 395–96. These factors are whether the judge heard the parties' opinions about the propriety of mistrial, whether he considered any alternatives to mistrial and chose the least harmful alternative to a defendant's rights, whether he acted deliberately instead of abruptly, and whether the mistrial benefitted defendant. *Id.*

First, Judge Kozinski heard Mr. Diamond's position that he opposed any mistrial.

Second, although the record does not show affirmatively that Judge Kozinski considered alternatives to mistrial, we conclude that none was available under the circumstances of this case. Defendant argues that another judge could have completed the jury trial pursuant to Fed.

---

[6] We reject Defendant's attempt to focus solely on the reported subject matter of some of the content on Judge Kozinski's server, as well as the parade of horribles Defendant argues would occur were we to determine that Judge Kozinski's recusal was required based solely or largely thereon. Here, we do not rely on any one fact, but on the totality of the circumstances, in determining whether recusal was required.

[7] Although the level of deference varies according to the circumstances of the case, review with the "strictest scrutiny" is only proper when the prosecution sought mistrial for a tactical advantage. *Arizona v. Washington*, 434 U.S. 497, 508 (1978); *Chapman*, 524 F.3d at 1082. Here, Defendant does not directly assert that the Government sought mistrial for a tactical advantage. *But see infra. at n.9.* To the extent Defendant makes this assertion, we reject it. The record does not support any inference that the Government brought on this dispute, much less that it did so to gain a tactical advantage over the Defendant.

R. Crim. P. 25(a).[8]  We disagree.  First, although disability brought on by death or sickness is within the scope of the Rule, a "disability" arising from recusal would not likely serve the purpose of the Rule.  In *Jaramillo*, the Ninth Circuit recognized this distinction in observing that "[n]either death nor a disabling sickness necessarily affects the integrity of all prior proceedings in the trial." 745 F.2d at 1249.  However, a "disability" brought on by recusal "directly implicates the character and integrity of the judge especially in relation to criminal proceedings, [and] the designation of another judge would not remove the appearance of partiality concerning all prior rulings and all actions of the [recused] judicial officer, from the inception of the trial." *Id.*  Similarly, that Judge Kozinski had to recuse himself because a reasonable person would conclude that his impartiality might reasonably be questioned calls into question all of his prior rulings in this case.  To establish the appearance of justice under such circumstances, a new judge would necessarily be compelled to begin the trial anew.  *See Id.*  While clearly there is a difference between the facts necessitating recusal in *Jaramillo* and in this case, at bottom what is important is not a comparison of the relative need for recusal but that once recusal is required, public confidence is necessarily undermined as to all of the recused judge's prior rulings.  Thus, contrary to Defendant's arguments, Judge Kozinski was not under a "disability" within the meaning of Fed. R. Crim. P. 25(a), and the appointment of another judge to complete the trial was not a viable alternative to mistrial.

Third, the record shows that Judge Kozinski also acted with due deliberation when he declared the mistrial.  The first *Times* article was released on Wednesday, June 11, 2008.  The mistrial was not declared until Friday, June 13, 2008.  In the interim, Judge Kozinski called the June 11, 2008 *Times* article to the parties' attention and gave them adequate time to be heard and to consider their options.  Under these circumstances, the mistrial declaration was not an abrupt reaction to emerging events, but was the result of calm deliberation.  *See e.g.*, *Cherry v.*

---

[8] Fed. R. Crim. P. 25 provides that: "(a) **During Trial.** Any judge regularly sitting in or assigned to the court may complete a jury trial if: (1) the judge before whom the trial began cannot proceed because of death, sickness, or other disability; and (2) the judge completing the trial certifies familiarity with the trial record."

1  *Director, State Bd. of Corrs.*, 635 F.2d 414, 418 (5th Cir. 1981) (en banc) (upholding a mistrial
2  declaration made "after inquiry and overnight deliberation").[9]

3  Finally, although we are not certain whether the mistrial benefitted Defendant, this factor
4  does not outweigh the other factors that militate strongly in favor of mistrial.  *See Chapman*, 524
5  F.3d at 1082 n.3 (because the first three *Bates* factors demonstrated that the district court did not
6  abuse its discretion, panel elected to bypass the fourth factor in that case).  In any event,
7  Defendant has not cited any authority, and we are aware of none, to suggest that mistrial is only
8  proper if this fourth factor is satisfied.  Therefore, under *Bates,* and given our determination that
9  Judge Kozinski's recusal was proper, we conclude that Judge Kozinski acted with sound
10 discretion in finding manifest necessity for a mistrial.

11 **III. Conclusion**

12 Judge Kozinski's self-recusal was proper under § 455(a).  There was no abuse of
13 discretion in his conclusion that there was manifest necessity for the declaration of a mistrial.
14 Accordingly, the United States is not barred from re-trying the Defendant.  In light of these

---

[9]During oral argument on this Motion, Mr. Diamond speculated that Judge Kozinski was intimidated into making a hasty mistrial declaration by a purported "threat" by Government counsel to file a recusal motion in the public record.  To support this dubious proposition, counsel resorted to the Declaration of Mr. Whitted which he had previously sought to exclude as being outside the record.  While we disfavor counsel's attempt to have his cake and eat it too, we reject this argument in any event.  Even were we to consider Mr. Whitted's declaration for this limited purpose, we do not view the Government's position that a potential recusal motion should not be filed under seal absent court order as remotely constituting a threat to the judge, especially when significant proceedings on the subject had already occurred on the open record.  Moreover, we find there is absolutely no evidence that the judge reacted in haste due to this alleged threat or for any other reason.  Defendant also points to Judge Kozinksi's recusal and mistrial order as purported evidence of the haste under which he acted.  Mr. Diamond asserted that Judge Kozinski was in such a hurry (purportedly to forestall a threatened public recusal motion) that he only designated the order as "Order Recusing" instead of a more complete designation of the order as also one declaring a mistrial.  This speculation at best elevates form over substance.  The body of the order addressed not only recusal but also found manifest necessity for a mistrial.  As a matter of fact, we find from this record that there is no credible evidence of either a threat to the judge or any hasty mistrial declaration by the judge in response to that alleged threat.

8

1  findings and conclusions, Defendant's motion to dismiss the indictment is **DENIED**.

2      We recognize that an order denying a motion to bar re-trial on double jeopardy grounds is
3  subject to immediate appeal.  *See U.S. v. Chick*, 61 F.3d 682, 684–85 (9th Cir. 1995)*; Abney v.*
4  *U.S.,* 431 U.S. 651, 659–62 (1977).  As such, we do not set this matter for re-trial at this time.
5  The Government and Defendant shall file a joint status report stating that either (1) a timely
6  notice of appeal was filed, or (2) Defendant failed to do so. If a timely notice of appeal is filed,
7  we shall await the results of appellate review.  If no timely notice of appeal is filed, we shall set
8  this matter for re-trial.

10  **IT IS SO ORDERED.**

12  DATED: September 19, 2008.

                _____
                      GEORGE H. KING
                    United States District Judge