UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) **CR-07-732-GHK** |
| IRA ISAACS, | ) **QUALIFICATIONS AND PROPOSED** |
| | ) **TESTIMONY OF GOVERNMENT'S** |
| Defendant. | ) **EXPERT REBUTTAL WITNESS** |
| | ) |

The United States of America, by and through its undersigned attorneys, hereby submits the following pleading addressing the admissibility of proposed expert testimony and setting forth the qualifications and proposed testimony of Government rebuttal witness Dr. Mary Anne Layden, pursuant to the Order of this Court. *See* Docket No. 129 (Order, dated December 22, 2010 Order).[1]

I.   Background

The Defendant is charged with three counts of knowingly using a facility of interstate commerce or interactive computer service to sell and distribute obscene material in violation of 18 U.S.C. § 1465, to wit: a movie depicting a woman masturbating

---

[1]   It is the understanding of counsel for the Government there are no operative stipulations governing the instant case.  To the extent that any previously submitted, but unaccepted, stipulation regarding expert witnesses is under consideration by the Court, the Government notes its reasoned opposition to the admissibility of the proposed expert testimony in this case for reasons set forth herein.

herself with a carrot and feeding it to two horses, orally copulating both horses, having intercourse with two horses, and drinking the ejaculate of a horse(Count I); a movie depicting a man inserting his entire hand into the throat of a woman who then vomits and is forced to ingest her own vomit as she cries, one or more men urinating and defecating on a woman's face and in her mouth, a woman ingesting feces while performing oral sex, and a woman drinking semen, urine and feces (Count II); and a movie depicting Defendant Isaacs directing a woman to perform oral sex, ingest urine and feces, smear feces on her face and body, and smear feces on the penis of an adult male before performing oral sex on that adult male's penis (Count III).  The Defendant is also charged with one count of knowingly using an express company, common carrier, or interactive computer service in interstate commerce to transport obscene material in violation of 18 U.S.C. § 1462, to wit: and a movie depicting Defendant Isaacs directing a woman to perform oral sex, ingest urine and feces, smear feces on her face and body, and smear feces on the penis of an adult male before performing oral sex on that adult male's penis (Count V).

    For purposes of the charges alleged under § 1465, at trial, it will be the Government's burden to prove beyond a reasonable doubt that: (1) the Defendant knowingly transported, in or affecting interstate commerce, the charged materials; (2) the Defendant transported those materials for the purpose of selling

or distributing them; (3) the Defendant knew, at the time of such transportation, the general sexual nature and content of the materials; and (4) that the materials are obscene. *See* 18 U.S.C. § 1465.  For purposes of the charge alleged under § 1462, the Government must prove that: (1) the Defendant knowingly used or caused to be used an express company, common carrier or interactive computer service to transport the charged materials in interstate commerce; (2) the Defendant knew, at the time of such transportation, the general sexual nature of the content of the materials; and (3) that the materials are obscene. *See* 18 U.S.C. § 1462.

 To prove that the charged materials are obscene, the Government must prove that the materials: (1) appeal predominately to a prurient interest; (2) depict or describe sexual conduct in a patently offensive manner; and (3) lack serious literary, artistic, political or scientific value. *See Miller* v. *California*, 413 U.S. 15 (1973); *Smith* v. *United States*, 431 U.S. 291 (1977); *Pope* v. *Illinois*, 481 U.S. 497 (1987).

 The Defendant has noticed his intent to call Dr. Mohan Nair as an expert witness to testify regarding the scientific value of pornographic movies depicting bestiality and sex acts involving the use and ingestion of feces and urine.  According

to previous filings and communications,[2] Dr. Nair may testify about the "[t]heraputic, phycological [sic] and scientific value of viewing the movies in [sic] case in relation to paraphilias, fetish, deviant behavior and therapeutic solutions and it [sic] serious scientific value." *See* Docket No. 30 (Email, dated January 3, 2008). Dr. Nair may testify that viewing pornography that depicts paraphilic conduct is an acceptable form of sexual arousal "in a way that some people use drugs like Viagra or Cialis." *See id.* (Letter, dated January 10, 2008). Dr. Nair may also testify that the pornography depicting paraphilic conduct has scientific research value. *See* Docket No. 61 (Daubert Hearing, Koskinksi, J.) (May 6, 2008). And, as proposed, Dr. Nair may testify about pornographic materials depicting homosexuality and other forms of sexual activity, the existence of a "bright line" between different depictions of sexual conduct, and whether depictions of certain types of criminal conduct would be "obscene." *See* Docket No. 30 (Letter, dated January 10, 2008).

Defendant Isaacs has also noticed his intent to call himself as an expert on the artistic value of the charged

---

[2]     The Defendant has not provided the Government with a pleading setting forth the topics of Dr. Nair's proposed testimony and the Government was unable to reach counsel for the Defendant to confer before the instant filing. Thus, to satisfy the Court's Order, the Government is relying on the representations and attachments to the Joint Pretrial Filing at Docket No. 30 and other previously filed documents in this case. The Government respectfully reserves the right to augment Dr. Layden's proposed testimony, as necessary, in response to Dr. Nair's proposed testimony.

videos.   As proposed, he may testify that the charged videos have serious artistic value.   *See id*. (Email, dated January 3, 2008).   Defendant Isaacs may also testify about the Internet distribution and marketing of pornographic materials depicting defecation, bestiality and other paraphilias.   *See id*.

The Government objects to the qualifications of the proposed defense experts and to the admissibility of their proposed testimony, pursuant to Federal Rule of Evidence 702, *Daubert* v. *Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579 (1993) ("*Daubert I*"), or *Daubert* v. *Merrell Dow Pharmaceuticals*, Inc., 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*").

II.   Requirements for Admissibility of Expert Testimony

Foremost, the Government observes the U.S. Supreme Court's observation that federal obscenity law "'is not a subject that lends itself to the traditional use of expert testimony.'" *United States* v. *Stagliano*, --- F.Supp.2d ----, 2010 WL 3033489 (D.D.C. 2010) (quoting *Paris Adult Theatre I* v. *Slaton*, 413 U.S. 49, 56 n.6 (1973)).   Whereas expert testimony "'is usually admitted for the purpose of explaining to lay jurors what they otherwise could not understand[,] ... '[n]o such assistance is needed by jurors in obscenity cases.'"   *Id*.   Notwithstanding, because "expert testimony is not *per se* inadmissible in all obscenity cases," such proposed experts are subject to general

analysis under federal rules governing the admissibility of expert testimony.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Pursuant to that rule:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid 702. Accordingly, to be admissible expert testimony must be: (1) presented by a person appropriately qualified on the subject matter; (2) the methodology employed by that person to arrive at his conclusions must be reliable; and (3) the prospective testimony must be relevant to the charges as alleged. *See id*. Courts, operating as gatekeepers, have broad discretion to determine the admissibility of expert testimony. *Daubert I*, 509 U.S. at 589; *Kumho Tire Co.* v. *Carmichael*, 526 U.S. 137, 152 (1999). The party proposing the expert testimony bears the burden of establishing admissibility by a preponderance of the evidence. *See Daubert I*, 509 U.S. at 593; Fed. R. Evid. 702, Advisory Committee Note to 2000 amendment.

Rule 702 "contemplates a broad conception of expert qualifications." *United States* v. *King*, 703 F.Supp.2d 1063, 1067 (D. Hawaii 2010) (citing *Thomas* v. *Newton Intern. Enterprises*, 42 F.3d 1266, 1269 (9th Cir. 1994)). Per Rule 702, qualification may be based upon "'knowledge, skill, experience, training, or education.'" *King*, 703 F.Supp.2d at 1068 (quoting Fed. R. Evid. 702). Notwithstanding the scope of potential expert qualification, "any opinion testified to by an expert must fall within his or her area of expertise, whatever that expertise may be and howsoever it may have been acquired." *Id*. (citing *White* v. *Ford Motor Co.*, 312 F.3d 998, 1008-1009 (9th Cir. 2002)).

To be reliable, expert testimony must "reflect[] scientific knowledge,... [be] derived by the scientific method, and ... amount[] to good science." *Id*. (internal citation omitted). Notably, "something doesn't become scientific knowledge just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were derived by the scientific method be deemed conclusive." *Id*. at 1315-1316. Rather, to qualify as scientific opinion, the proposed testimony must be "based on scientifically valid principles." *Id*. at 1316. Scientifically valid principles may be based upon "the type of data that is generally and reasonably relied upon by scientists." *Id*. at 1316-1318.

In assessing reliability, courts should consider the following factors: (1) whether the theory, technique or method used by the expert to form her opinion can or has been tested; (2) the known or potential rate of error in the expert's theory, technique or method; (3) whether the theory, technique or method has been subjected to peer review and publication; (4) whether there are standards controlling the theory, technique or method's operation; and (5) the general acceptance of the theory, technique or method within the relevant community. *See Id.* at 1316-1318 (noting that these factors are illustrative, not exhaustive). In the role of gatekeeper, judges "must satisfy themselves that scientific evidence meets a certain standard of reliability before it is admitted." *Id.* at 1316 (stating that an "expert's bald assurance of validity is not enough).

Finally, "proposed expert testimony [must be] 'relevant to the task at hand," *i.e.,* "logically advance[] a material aspect of the proposing party's case." *Daubert II*, 43 F.3d at 1315 (referring to his prong as the "fit" requirement) (internal citation omitted). The "fit" standard "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility" and whether proposed expert testimony will assist the trier of fact is governed by the substantive legal

1   standard. *Id*. at 1320.   In this case, the substantive legal

2   standard is set forth in the *Miller* test.

3       Under federal law, matter is obscene if: (1) the average

4   person, applying contemporary community standards, would find

5   that the material taken as a whole appeals to the prurient

6   interest; (2) the average person, applying contemporary

7   community standards, would find that the material depicts or

8   describes sexual conduct in a patently offensive way; and (3) a

9   reasonable person would find, taking the material as a whole,

10  that it lacks serious literary, artistic, political or

11  scientific value.  Miller, 413 U.S. at 24-25; Smith, 431 U.S. at

12  299-30; Pope, 481 U.S. at 500-502 (emphasis added).   The

13  proposed testimony of the defense expert witnesses relates to

14  the third prong of the *Miller* test --- whether the material has

15  *serious* scientific or *serious* artistic value.   For purposes of

16  determining fitness, *i.e.*, "helpfulness" for the fact-finder, if

17  there is no valid scientific nexus between the pertinent inquiry

18  and the proposed expert testimony, that testimony is unfit and

19  thus inadmissible. *See Daubert II*, at 1320.

20      Even if proposed expert testimony survives the reliability

21  and relevance tests, "Rule 403 permits the exclusion of relevant

22  evidence 'if its probative value is substantially outweighed by

23  the danger of unfair prejudice, confusion of the issues, or

24  misleading the jury.'"  *Daubert*, 509 U.S. at 595 (quoting Fed.

25  R. Evid. 403). "Expert evidence can be both powerful and quite

misleading because of the difficulty in evaluating it."
*Daubert*, 509 U.S. at 595. Because of the significant weight a
fact-finder may attribute to expert testimony, such testimony
creates an inherent danger of unduly influencing the trier-of-
fact to the prejudice of the defendant. *See id*. If the
probative value of expert testimony is substantially outweighed
by the danger of unfair prejudice, testimony that is relevant
and otherwise admissible should be excluded.

III. <u>Argument</u>

a. <u>Dr. Nair's Testimony Is Not Admissible.</u>

Dr. Nair's proposed testimony --- that viewing pornography
depicting paraphilic conduct is therapeutic and may be used to
study paraphilic disorders --- is not based upon "methods and
methodology that would generally and reasonably be accepted by
people who deal in these matters." *See Daubert II*, 43 F.3d at
1316. Much to the contrary, Dr. Nair's proposed testimony on
the therapeutic value of pornographic videos depicting
paraphilic conduct and their utility as medical research tools
is not supported by reliable scientific data and is inconsistent
with the medically accepted standards for treatment of
paraphilias and sexual trauma. Dr. Layden, if called in
rebuttal, will testify pornography depicting paraphilic conduct
has no scientifically recognized therapeutic value because it
would have the effect of reinforcing, not diminishing, a
paraphilic interest or disorder. Dr. Layden will testify that,

pursuant to the standards within the cognitive science and therapeutic community, the use of such videos in clinical treatment would violate the standards of treatment recognized within this community. Further, Dr. Layden will testify the credible, board-certified field of psychological research does not permit the use of imagery depicting diagnosable paraphilias in clinical studies.

Because Dr. Nair's proposed testimony rests on methodologies that do not "fall[] within the range of accepted standards governing how scientists conduct their research and reach their conclusions" *see id*. at 1317, it is unreliable and thus inadmissible. As with the excluded expert testimony in *Daubert* II, Dr. Nair's testimony "relies entirely on the experts' unadorned assertions that the methodology they employed comports with standard scientific procedures" absent an explanation of methodology or references to external, validating sources. See *id*. at 1319. Also, because there is no valid scientific nexus between Dr. Nair's proposed testimony and the substantive standard that must be applied by the jury in this case, his proposed testimony does not satisfy the "fit" test, a precondition to admissibility. *See id*. at 1320.

The proposed testimony by Dr. Nair regarding whether the charged videos are "obscene" or in-line with "community standards," *see* Docket No. 30, Letter, *supra*, is similarly not admissible. Although as a general matter, "testimony in the

form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact, ... an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Nationwide Transport Finance* v. *Cass Information Systems, Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008). The terms "obscenity" and "community standards" are clearly terms of art applicable to the substantive legal standard in this case. Not only is the proposed testimony outside the purview of Dr. Nair's proffered area of expertise, but the proposed testimony is clearly an attempt to cloak opinion about the ultimate, determinative legal issue in this case under the guise of "a scientific point of view." *See* Docket No. 30, Letter, *supra*. That type of opinion testimony is not admissible.

Notably, the type of expert testimony proposed in the instant case was similarly proposed and rejected in a recent obscenity case. In *Stagliano*, the defendants proposed to call Dr. Lawrence Sank, a clinical psychologist, to testify that to all three elements of the *Miller* standard. As relevant here, Dr. Sank proposed to testify that the material at issue was not patently offensive according to the community standards of the District of Columbia. *See Stagliano*, *supra* at *3. The defendants maintained that Dr. Sank was "uniquely situated to opine on the community standards of the District because of his

clinical practice, which gave him intimate, day-to-day access to the private thoughts of his patients, many of whom were members of the community, concerning particularly sensitive issues pertaining to sex." *Id*. The court rejected this proposed ground, finding that "his opinion would have been distorted, and potentially misleading to the jury, because it would have been based entirely on his interaction with people who come to him for treatment thinking that they have a psychological problem or a particular sexual problem and are willing to speak openly about it." *Id*. (finding that "his opinion would not have been grounded on a fair and accurate cross-section of the community, nor could it have been given the nature of his clinical work"). As such, the court found that the proposed testimony was "wholly unreliable" and, thus, inadmissible.  The court further found, consistent with the Supreme Court's observation on the use of expert testimony in obscenity cases, that "because jurors can ... 'draw on [their] own knowledge of the views of the average person in the community or vicinage from which [they] come [ ],' Dr. Sank's testimony would have done very little to assist the jury." *Id*. at *4 (quoting *Hamling* v. *United States*, 418 U.S. 87, 104 (1974)).[3]

Dr. Sank's proposed testimony also included his views on the scientific value of the content at issue.  Similar to the

---

[3]    The same analysis applied to the court's exclusion of Dr. Sank's proposed testimony on the issue of appeal to prurient interests. *See Stagliano*, *supra* at *3 -4.

proposed testimony in this case, Dr. Sank would have testified that his treatment of persons diagnosed with paraphilias included having them view "films from his personal film library or from the Internet depicting others performing the sexual acts that define the paraphilia." *Id*. at *4. As elicited during the *Daubert* hearing, Dr. Sank's treatment approach was not intended to "cure" patients. *Id*. Rather, it was intended to "normalize the patient's behavior" by "making them comfortable with their offbeat sexual inclinations." *Id*. Dr. Sank made representations that this type of treatment was "a general practice" within the cognitive therapy community and did not present any ethical issues. *Id*. The court firmly rejected the asserted scientific basis for Dr. Sank's proposed testimony.

First, the court noted that "the fact that Dr. Sank and others in his field believe this treatment to be effective does not alone establish the reliability of his opinion on the scientific merit of the adult films charged in this case." *Id*. at *4. After a judicially driven colloquy, the court found that: (1) there was no reliable scientific evidence supporting Dr. Sank's treatment theory; (2) Dr. Sank had never published a peer-reviewed article about the clinical use of pornographic films depicting paraphilia to treat paraphilics; and (3) the only literature referenced by Dr. Sank was a self-written manuscript on the topic "marriage preparation" where he may have described his theory. *Id*. at *5. The court found that the

record was devoid of any evidence that Dr. Sank's proposed theory had undergone a "rigorous process, grounded in the scientific method, of systematically testing whether his method of treatment was actually effective." *Id.* (noting, also, that Dr. Sank could not recall any scientific study or testing, major university study, or "article in a reputable journal" supporting or testing the efficacy of his proposed theory). In light of the dearth of scientific support, the court noted the "curious fact that such a *common practice* had not --- at least to Dr. Sank's knowledge --- been subjected to the rigors of scientific testing." *Id.* (emphasis added).

The court rejected the defendant's argument that personal knowledge and experience could form the basis for the proposed *scientific* expert testimony. The court observed that "personal knowledge and experience are not an adequate source of reliable expert testimony when traditional sources are available." *Id.* (citing *Groobert* v. *President and Directors of Georgetown College*, 219 F.Supp.2d 1 (D.D.C. 2002), the case relied upon by the defendants). The court acknowledge the well-established rule that "'[i]n matters where [the *Daubert*] factors *do not* apply, reliability concerns may focus on personal knowledge or experience[,]'" especially in the case of "'*non-scientific testimony*'" *Id.* (emphasis in original). But, because Dr. Sank proposed to render "scientific, as opposed to non-scientific, testimony," the court found that "his reliance on personal

knowledge and experience was inadequate to establish the reliability of his testimony precisely because the traditional indicia of reliability for evaluating scientific knowledge were applicable." *Id.*

Finally, the court found that, even if Dr. Sank's testimony satisfied the reliability and relevancy requirements, "[g]iven the tendency of lay jurors to place special weight on scientific expert testimony, coupled with the already shaky reliability of the method upon which Dr. Sank was expected to base his opinion, the danger of unfair prejudice and the danger of misleading the jury substantially outweighed the probative value of Dr. Sank's proposed testimony." *Id.* at *6 (citing Rule 403).

In light of the notable similarity between the testimony proposed in this case and the testimony proposed and rejected in *Stagliano*, Dr. Nair's proposed testimony should be rejected on similar grounds.

### b. Defendant Isaacs' Testimony Is Not Admissible.

Similarly, Defendant Isaacs' proposed testimony is not admissible. The law of this Circuit is clear --- "[a] layman, which is what an expert witness is when testifying outside his area of expertise, ought not to be anointed with ersatz authority as a court-approved expert witness for what is essentially a lay opinion." *White*, 312 F.3d at 1008-1009.

Though the Defendant offers himself as an expert in the field of art and may have produced reproductions of the artwork of others as part of his advertising business, there is no foundation for stamping him with the imprimatur of an expert on the artistic value of the very videos charged against him. The Defendant's testimony would amount to no more than a self-serving opinion about the determinative, legal issue of obscene, i.e., whether the charged videos lack serious artistic value. To the extent that his testimony would be admissible at trial, it would only be permissible as lay opinion testimony.

To the extent that the Defendant's proposes to testify about comparable material, *i.e.*, the "Team America Movie" or pornography, see Docket No. 30 (Email, dated January 3, 2008), that material would not be admissible under the *Womack* standard.

In the rare instances where federal and state courts have admitted "comparables," they have done so only when defendants have satisfied rigorous foundational requirements. The two key elements of the requisite foundation were set forth in *Womack* v. *United States*, 294 F.2d 204 (D.C. Cir. 1961). Under *Womack*, "[t]he predicate for a conclusion that a disputed piece of mailed matter is acceptable under contemporary community standards, as shown by proffered other matter already in unquestioned circulation, must be that the two types of matter are similar. And as another part of his foundation he must show

a reasonable degree of community acceptance of works like his own." *Id*. at 206.

In simpler terms, this widely-recognized standard requires that the party proffering additional pornographic or other content show that there is: (1) reasonable resemblance between the charged and comparable materials; and (2) a reasonable degree of community acceptance of the proffered comparables. This foundation for the admission of comparables has been adopted by numerous state and federal courts including the Ninth Circuit. *See, e.g. United States* v. *Pinkus*, 579 F.2d 1174, 1175 (9th Cir. 1978); *see also*, *United States* v. *Thevis*, 490 F.2d 76, 77 (5th Cir. 1974); *United States* v. *Petrov*, 747 F.2d 824, 831-32 (2d Cir. 1984); *United States* v. *Battista*, 646 F.2d 237 (6th Cir. 1981); *United States* v. *Various Articles of Merchandise*, 750 F.2d 596, 599-600 (7th Cir. 1984).

The Ninth Circuit case, *Pinkus*, squarely addressed the foundation issue and adopted the *Womack* standard. In that case, the defendant was convicted of mailing obscene matters. The Court of Appeals affirmed the conviction but the Supreme Court remanded the case based on a jury instruction that had been given. Upon remand, the Ninth Circuit made clear that proponents of comparables must demonstrate the materiality and relevance of the comparables as a prerequisite for their admission. The Court explicitly adopted the *Womack* foundational standard. *Id*. at

1155.  Echoing the *Womack* language, the Ninth Circuit said there must be a reasonable resemblance between the proffered comparables and the allegedly obscene materials, and the proponent must establish a reasonable degree of community acceptance of the proffered comparables.  *Id*.

Here, for previously stated reasons, the Defendant does not qualify as an expert in the field of art.  Accordingly, there is no basis for his proposal of expert testimony regarding circumstantial evidence of community standards.

Moreover, testimony about particular "mainstream" and pornographic movies that may be available for distribution via the Internet would not be comparable for several reasons.  In *Ginzburg* v. *United States*, the Supreme Court held that in determining whether something is obscene, the context in which it is received is an important factor to consider.  383 U.S. 463, (1966).  Purchases from specialized outlets have little or no value in determining contemporary community standards.  *See United States* v. *392 Copies of Magazine Entitled "Exclusive,"* 253 F. Supp 485, 496 (D. Md. 1966).  Moreover, both adult bookstores and internet websites pandering obscene material have plenty of warnings prominently displayed that alert persons about the content of the material they are about to encounter if they proceed.  These facts belie a contention of general acceptance by the relevant community.

Assuming, *arguendo*, that the proffered comparables satisfy the similarity prong of the *Womack* test, any proffered "comparables" would still fail the second-prong of that test. As the *Womack* case made clear, courts must distinguish between the "mere availability" of material in a community and "a reasonable degree of community acceptance" of the material. *Womack*, 294 F.2d at 206.  The Fourth Circuit commented on this point in *United States* v. *392 Copies of Magazine "Exclusive,"* 253 F. Supp. 485, 496 (D. Md. 1966), when it made clear that neither the loose standards of "the Block" (an area in Baltimore in which there are a number of shops which deal in pornographic materials), nor the standards of the most straight-laced area should be applied.  *See also*, *United States* v. *Gower*, 316 F. Supp. 1390 (D.D.C. 1970); *United States* v. *Hochman*, 175 F.Supp. 881 (E.D. Wis. 1959); *People* v. *Finkelstein*, 183 N.E.2d 661 (1962).  The fact that allegedly "comparable" materials might be available from a tiny fraction of vendors in an area and on the internet is not probative of the issue of contemporary community standards --- the mere availability of this material does not, by itself, establish the community standard.  Expert testimony suggesting or stating the contrary would have the effect of misleading, not assisting, the jury to determine that critical legal issue.

Similarly, testimony that the charged videos have never been charged as obscenity or have been so charged infrequently would not be permissible testimony because the mere absence or infrequency of previous prosecutions related to proposed comparables is insufficient to prove the second element of the *Womack* test.  In that case, the court ruled that the appellants had failed to show a reasonable degree of community acceptance, even though the defense had been able to prove that the purveyors of the proffered comparables had never been prosecuted.  Other cases have also underscored the distinction between community tolerance and community acceptance.  Several federal appellate circuits have approved the following jury instruction defining "community standards" --- "[c]ontemporary community standards are set by what is in fact accepted in the community *as a whole*."  *See United States* v. *Gilman*, 684 F.2d 616, 621 (9th Cir. 1982); *United States* v. *Battista*, 646 F.2d 237, 245(6th Cir. 1981); *United States* v. *Cohen*, 583 F.2d 1030, 1043 (8th Cir. 1978) (emphasis added).  In addition, the court in the *Battista* case specifically rejected the common defense contention that "tolerance" is the only appropriate measure of "community standards."  Accordingly, the Defendant's testimony, or that of any other proposed defense expert on the issues of community standards would be inadmissible under by the law of this Circuit.

IV.   Testimony Of Dr. Layden Is Admissible In Rebuttal.

If the Court permits Dr. Nair's testimony, then the Government will seek leave to call Dr. Mary Anne Layden as an expert witness in rebuttal.  If called, Dr. Layden will testify that the use of pornographic movies depicting bestiality and sexualized conduct involving the use and ingestion of feces and urine is not a scientifically accepted therapeutic treatment of medically recognized paraphilias.   Further, she will testify that pornography depicting paraphilic conduct is not otherwise used in the credible study or treatment of cognitive disorders, including paraphilias.

A. Qualifications of Dr. Layden

Dr. Mary Anne Layden is a licensed, certified psychotherapist and Assistant Professor of Clinical Psychology at the Center for Cognitive Therapy, Department of Psychiatry at the University of Pennsylvania.   Dr. Layden directs the Sex Trauma and Psychotherapy Program at the University of Pennsylvania.  She has engaged in approximately 25,000 hours of therapy sessions and trains post-doctoral students in clinical therapeutic science.  Dr. Layden's practice focuses almost exclusively on adult patients and the treatment of victims of sexual violence, perpetrators of sexual violence, and individuals with sexual trauma, including the treatment of persons with paraphilias.

22

Dr. Layden received her Bachelor of Science Degree in Psychology in 1970 from Marian University and her Doctorate Degree in Psychology in 1981 from the University of Wisconsin. Dr. Layden has held several postgraduate training and fellowship appointments between 1973 and 1987 in the Department of Psychology at the University of Wisconsin, The Association for Rational Development in Madison, Wisconsin, and the Department of Psychology and Department of Psychiatry at the University of Pennsylvania.

Dr. Layden has also held several faculty appointments since 1978, including Instructor in Psychology at Haverford College in Haverford, PA; Arcadia University, in Glenside, PA; and, Rutgers University in Camden, NJ. Dr. Layden has also served as Assistant Professor of Psychology at Arcadia University and Clinical Associate and Instructor in Psychiatry at the University of Pennsylvania. Presently, Dr. Layden is an Associate Professor of Psychiatry at the University of Pennsylvania.

Dr. Layden has also served in several administrative capacities since 1978, including Counselor and Consultant for Project Bridge, Head Start Program at the Institute of Pennsylvania Hospital; Staff Psychologist at the Center for Cognitive Therapy; and Department of Psychiatry at the University Of Pennsylvania School Of Medicine. Currently, Dr

Layden serves as the Director of Education for the Center for Cognitive Therapy, Department of Psychiatry at the University Of Pennsylvania School Of Medicine, a position she has held since 1994. Since 2004 - present, Dr. Layden has served as the Director Sexual Trauma and Psychopathology Program Department of Psychiatry University of Pennsylvania School of Medicine.

Dr. Layden is a member of several professional societies, including the American Psychological Association (1987-present) and the Association for Behavioral and Cognitive Therapies (1990-present). She also provides instruction and clinical supervision for psychotherapy patients and psychiatry residents at the University of Pennsylvania and affiliated hospitals.

In 1997, 1998, 1999, 2004 and 2010, Dr. Layden provided testimony to Congress on psychological issues related to pornography. Before both domestic and international scientific associations, Dr. Layden has lectured on issues related to cognitive therapy, including the effect of "permission-giving beliefs" on persons who consume pornographic material and the psychological impacts of pornography consumption, e.g., 2005 and 2008 lectures on the acceptance of the rape myth and permission-giving beliefs before the International Congress of Cognitive Psychotherapy in Goteborg, Sweden; and a 2006 symposium lecture on the psychological perspective of obscenity and community standards at the Lighted Candle Society in Salt Lake City, UT.

Dr. Layden has published and studied relevant, peer-reviewed literature. *See e.g.*, Ickes, W., Layden, M. A. & Barnes, R. Objective self-awareness and individuation: an empirical link, Journal of Personality (1978). Dr. Layden has also edited and reviewed chapters in several medical treatises, books, and journals, including Layden, M. A., Cybersex Addiction. Advances in Cognitive Therapy (2005); Layden, M. A., Pornography and violence: A new look at the research. Chapter in Stoner, J. & Hughes, D. (Eds) The Social Costs of Pornography: A collection of papers. Princeton, NJ: Witherspoon Institute (2010); Layden, M. A., Newman, C., Freeman, A., & Morse, S. Cognitive therapy of borderline personality disorder. Needham, MA: Allyn & Bacon (1993); and Eberstadt, M. & Layden, M. A. The Social Costs of Pornography: A Statement of Findings and Recommendations, Witherspoon Institute: Princeton, NJ (2010).

Accordingly, Dr. Layden is qualified to testify about cognitive psychological and psychiatric issues related to the use of pornography and the medically accepted treatment of paraphilias.

B. Proposed Testimony of Dr. Layden

If called as a rebuttal witness, it is anticipated that Dr. Layden would testify that based on her education, training and experience in the field of cognitive psychotherapy, the

materials charged in this case lack therapeutic value in the treatment of psychological, emotional and cognitive disorders.

Dr. Layden will testify that the term "paraphilia" refers to a medically recognized sexual deviancy that is in the Diagnostic and Statistical Manual of the American Psychiatric Association (DSM-IV-TR). She will testify that paraphilias include "coprophilia" (sexualized conduct involving feces or defecation); "coprophagia" (sexualization of the act of eating feces); "zoophilia," a.k.a. "bestiality" (sexualization of conduct with animals); and "urophilia" (sexualized conduct involving urine or urination). Dr. Layden will testify that she has reviewed the charged videos and that they depict the aforementioned paraphilic conduct.

Dr. Layden will testify that cognitive therapy is the study of how beliefs affect emotion and behavior and that behavioral responses to stimuli are affected by "permission giving" beliefs. She will testify that a permission-giving belief is a manner of rationalizing behavior by interpreting social cues as acquiesce or acceptance of a particular behavior. Dr. Layden will testify that, for example, a smile from or the laughter of a woman at the end of a video depicting her engaged in bestiality or drinking liquefied fecal matter may be interpreted as her consenting to and enjoying the paraphilic conduct. Dr. Layden will testify that the goal of therapeutic treatment of disorders such as paraphilias is the diminishment or remission

of the diagnosed disorder.  Dr. Layden will testify that because permission-giving beliefs transmitted through pornography depicting bestiality or coprophagia would *reinforce, not diminish*, paraphilic interest in that conduct, exposure to depictions of such conduct would be adverse to therapy. Similarly, Dr. Layden will testify that "normalizing" behavior that has been identified as paraphilias sexually deviant in the DSM-IV-TR, also included in Dr. Nair's previously proposed testimony, *see* Docket No. 30., is antithetical to the goals of therapy.    Thus, she will testify, that pornography depicting paraphilic conduct has no scientifically recognized "therapeutic" value.

Dr. Layden will also testify that Dr. Nair's proposed testimony --- that paraphilic pornography has scientific value because it may be used in the study of paraphilias --- violates the standards of care in the relevant scientific community which forbid the use of imagery depicting paraphilia to treat paraphilia.  Dr. Layden will testify that there are no board-reviewed clinical, double-blind, controlled studies or peer-reviewed literature that support Dr. Nair's contention that the charged videos have any credible, much less serious, use in the study or practice of cognitive therapy.

V.   Conclusion

For the foregoing reasons, the Government respectfully, submits the proposed testimony of Dr. Nair and Defendant Isaacs

1    is not admissible under Federal Rule of Evidence 702 and

2    governing precedent.    However, if the Court permits the

3    testimony of Dr. Nair, the Government seeks leave to call Dr.

4    Layden as an expert witness in rebuttal.

5

6                                    Respectfully Submitted,

7

8                                    _____/s/_____
                                     Chantel L. Febus
9                                    U.S. Department of Justice
                                     Trial   Attorney,   Criminal
10                                   Division, Child Exploitation
                                     and Obscenity Section
11                                   1400 New York Avenue, NW
                                     Sixth Floor
12                                   Washington, DC 20530
                                     (202) 514-6715 (phone)
13                                   (202) 514-1793 (fax)
                                     Chantel.Febus@usdoj.gov
14
                                     _____/s/_____
15                                   Michael W. Grant
                                     U.S. Department of Justice
16                                   Trial    Attorney,   Criminal
                                     Division, Child Exploitation
17                                   and Obscenity Section
                                     1400 New York Avenue, NW
18                                   Sixth Floor
                                     Washington, DC 20530
19                                   (202)307-1982 (phone)
                                     (202)514-1793 (fax)
20                                   Michael.Grant@usdoj.gov

21

22

23

24

25

## CERTIFICATE OF SERVICE

I, Chantel L. Febus, Trial Attorney with the United States Department of Justice, Criminal Division, hereby certify that the foregoing Pleading regarding the admissibility of the proposed expert witnesses and the qualifications and proposed testimony of the Government's rebuttal expert witness was filed on January 12, 2011 by CM/ECF which will send electronic copies to counsel for the defendant, Roger Jon Diamond, 2115 Main Street, Santa Monica, California 90405 and was also mailed first-class, postage pre-paid to Roger Jon Diamond, 2115 Main Street, Santa Monica, California 90405 on January 12, 2011.

```
_____/s/_____
Chantel L. Febus
U.S. Department of Justice
Trial   Attorney,   Criminal
Division,  Child  Exploitation
and Obscenity Section
1400 New York Avenue, NW
Sixth Floor
Washington, DC 20530
(202) 514-6715 (phone)
(202) 514-1793 (fax)
Chantel.Febus@usdoj.gov
```