E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 07-732-GHK | Date | March 2, 2011 |
|---|---|---|---|

| Present: The Honorable | GEORGE H. KING, UNITED STATES DISTRICT JUDGE |
|---|---|
| Interpreter | N/A |

| Beatrice Herrera | Mary Riordan Rickey | Brent D. Ward |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape* | *United States Department of Justice* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Ira Isaacs | | | √ | Roger Diamond | | | √ |

**Proceedings:**   *Daubert* **Motions**

This matter is before the Court on Defendant Ira Isaacs's ("Defendant") Motion to Designate himself as an expert and the Government's Motion to Preclude Expert Testimony of Defendant Ira Isaacs.[1] The Court held a *Daubert* hearing on January 19, 2011, at which Defendant testified. The Parties each filed supplements to their original papers, which the Court has reviewed. Having reviewed all filings and testimony in support of and in opposition to the Motions, we hereby rule as follows.

**I. Background**

Defendant faces three criminal charges for his involvement with allegedly obscene videos. Defendant has asserted his intention to raise a defense that the videos at issue have serious artistic value. Defendant lists several qualifications. Defendant graduated from the State University of New York in 1977, where he received a B.A. in Communications arts. He has directed over sixty films, some of which do not involve nude images. Defendant claims that his film-making experience gives him insight into the three charged films' artistic value. He also claims that he is presently working on a gallery installation art exhibit featuring the audience's reaction to one of the charged films. Defendant also asserts that he has been in the traditional art world for more than 25 years, including producing marketing campaigns featuring fine art imagery in a commercial art setting. He and his company have produced over a 100 hand-painted works to be used in a variety of commercial applications.

Defendant proposes to testify on the distinction between postmodernism (characterized as the use of disturbing imagery) versus modernism (aesthetically pleasing images) and the value of both. Defendant

---

[1] Defendant earlier had indicated that he intended to call other expert witnesses. His *Daubert* motion, however, only proposed to call himself as an expert witness. (Dkt. No. 133). He also reiterated this intent during the January 19, 2011 hearing. The Government had earlier indicated that it too planned to solicit expert testimony, specifically to respond to any argument that the videos have scientific value. However, in response to Defendant's filings, the Government has dropped any such request. Thus, the only *Daubert* issue before the Court is whether Defendant can testify as an expert.

E-Filed
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

explains that when most people think of art, they think of a beautiful painting in a museum or a sculpture in an art gallery. However, he explains that art does not have to be beautiful; rather it can utilize disturbing imagery and ideas (such as war and taboos). If qualified as an expert, Defendant will testify that the work has artistic value because it has shock value and works that have shock value also have artistic value because they provoke people who witness them. Defendant will testify that much of postmodern art relies on a gut emotional reaction -- to shock the viewer into thinking and questioning what they are looking at. Defendant also proposes to testify about how part of what characterizes his works as art is the response they have received and the emotions they have evoked.

Defendant proposes to discuss works by other artists that help to explain his own work. Among these are "The Fountain", a famous piece of art by Marcel Duchamp, "Nude Descending a Staircase", also by Duchamp, a work by Piero Mannzoni, a work by Kiki Smith entitled "Trail", a work by Chris Ofili entitled "Madonna", and Robert Rauschenberg's "White Painting". Some of these works involve feces, although none involve the precise combination of images that are present in the videos at issue in this case.

In his filings and during his testimony at the *Daubert* hearing, Defendant offered several theories on what makes something art and why his works qualify. These include: "Art is created by the artist and should be free from definitions, categories and pre-conceived ideas," "the venue is more important than the art work itself," and "the point of art [is] to get people to think, question and discuss."

### II. Legal standards

A work is obscene if the jury determines (1) "that the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest"; (2) that the average person applying contemporary community standards would find that "the work depicts or describes, in a patently offensive way, sexual conduct"; and (3) that a reasonable person would find that "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Miller v. California*, 413 U.S. 15, 25 (1973). "[S]ex and obscenity are not synonymous. . . . The portrayal of sex, e.g., in art, literature and scientific works, is not itself sufficient reason to deny material the constitutional protection of freedom of speech and press." *Kois v. Wisconsin*, 408 U.S. 229, 231 (1972) (quoting *Roth v. United States*, 354 U.S. 476, 487 (1957)). "A reviewing court must, of necessity, look at the context of the material, as well as its content." *Id.*

Because films "are the best evidence of what they represent," the Supreme Court has noted that the task of judging whether a particular film is obscene "is not a subject that lends itself to the traditional use of expert testimony. *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 56 (1973). "Such testimony is usually admitted for the purpose of explaining to lay jurors what they otherwise could not understand, . . . [n]o such assistance is needed by jurors in obscenity cases . . . . The materials are sufficient in themselves for the determination of the [obscenity] question." *Id.* (internal quotation marks omitted). Expert testimony is not per se inadmissible in all obscenity cases, as the Supreme Court made clear that the "defense should be free to introduce appropriate expert testimony." *Kaplan v. California*, 413 U.S. 115, 121 (1973).

Trial courts have "wide discretion in [their] determination to admit [or] exclude evidence, and this is particularly true in the case of expert testimony." *Hamling v. United States*, 418 U.S. 87, 108 (1974). Federal Rule of Evidence 702 provides that:

E-Filed
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, established a framework to guide trial courts in performing their "gatekeeping" function. 509 U.S. 579 (1993). Under *Daubert*, if a party proffers expert testimony that is scientific in nature, it is admissible only if the trial court concludes: (1) that the reasoning or methodology underlying the testimony is scientifically valid, and (2) that the reasoning or methodology will assist the trier of fact to understand or determine a fact in issue. *Id.* at 592-93. The focus is "solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. The *Daubert* framework applies equally to any testimony that is based on technical or specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148-49 (1999). In *Perry v. Schwarzenegger*, 704 F. Supp. 2d 931 (N.D. Cal. 2010), the district court provided a good summary of the factors relevant to an expert's reliability:

> (1) whether [a method] can be (and has been) tested; (2) whether the [method] has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the [method's] operation; (5) a degree of acceptance of the method within a relevant community, (6) whether the expert is proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, (7) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion, (8) whether the expert has adequately accounted for obvious alternative explanations, (9) whether the expert employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field, and (10) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

*Id.* at 947 (internal quotation marks and citations omitted).

### III. Defendant's Proposed Expert Testimony

Defendant proposes to provide expert testimony concluding that these videos have serious artistic value. Admittedly, deciding who is qualified as an expert in art is a difficult task. An expert in art (for example, a world-recognized artist) may not have the formal training that an expert in another field would likely possess. Distinguishing art from obscenity also does not lend itself to a definitive test like those that experts in other fields may employ.

Here, Defendant's proposed testimony does not meet the required standards for expert testimony. First, the Court is concerned that Defendant could provide no methodology in determining whether something qualifies as art or has serious artistic value. Instead, Defendant only provided vague and self-serving (and at times circular) descriptions, such as art is what an artist does. He also describes that a work may become art when it is commented on or receives the attention of art critics. By this logic a work that did not start as art may later crystallize into art. However, Defendant provides no explanation for how one can determine that a

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

work has transformed from obscenity into art.  Defendant also points to the articles that have been written about the prosecution of him as evidence that his work has received the requisite amount of attention to distinguish it as art.  (Exh. No. 137).  This cannot be a proper methodology because prosecution for obscenity cannot have the legal affect of shielding the work from prosecution for the offense.  Finally, Defendant does not provide any examples of what is obscene or characteristics that would make some images obscene (short of some film director declaring his own work obscene).

Moreover, to the extent Defendant offers a methodology, he provides insufficient qualifications to support his testimony.  A methodology from any layperson is irrelevant -- the methodology needs to be backed by expertise or qualifications for it to be considered "expert" testimony.  Defendant declares that he knows about art, but does not demonstrate sufficient expertise to qualify as an expert.  An individual can read a book about the human heart but that does not make him or her an expert in the methods of heart surgeries.  Defendant does not possess sufficient qualifications to show that he has the type of expertise necessary to make his methodology reliable, and not just an ad hoc opinion about what constitutes art.

A district court in the District of Colombia recently faced a similar situation in deciding whether to certify a professor of film studies at the University of California, Santa Barbara as an expert.  *United States v. Stagliano*, 729 F. Supp. 2d 222 (D.D.C. 2010).  Although that decision is not binding on this court, it is informative.  That court ruled that although the professor possessed impressive credentials to discuss film studies, those credentials were not directly relevant to the task of distinguishing art from obscenity, and she had never written or lectured on the topic.  *Id.* at 229.  The professor in that case possessed much stronger credentials than Defendant.  More importantly, the district court, similarly to our situation, relied upon the absence of methodology to determine if a work has serious artistic value.  For example, "[w]hen asked again whether she had ever seen pornography that she would not consider to be art, the most she would say is: 'I certainly have seen some films that weren't to my taste.'  She went on to explain that '[a]rt as a practice, a creative practice, . . . is a matter of taste.'"  *Id.*  The court concluded that "the defendants failed to meet their burden of demonstrating that the methodology underlying her opinion was reliable and would truly assist the jury in evaluating the serious artistic value of the charged works."  *Id.* at 230.

Based on the defects in Defendant's proposed expert testimony as set forth above, we conclude that Defendant may not testify as an expert about the alleged artistic value of the videos.

### IV. Layperson testimony

Even if he cannot testify as an expert, Defendant may still be able to testify as a lay witness about his films.  The Supreme Court has explained, "it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense."  *Rock v. Arkansas*, 483 U.S. 44, 49 (1987).  The right stems from several provisions of the Constitution, including the Fourteenth Amendment's Due Process Clause, the Sixth Amendment's Compulsory Process Clause, and the Fifth Amendment's privilege against self-incrimination.  *United States v. Pino-Noriega*, 189 F.3d 1089, 1094 (9th Cir. 1999).  However, the Ninth Circuit has also ruled that a defendant's proposed testimony must be relevant.  *United States v. Moreno*, 102 F.3d 994, 998 (9th Cir. 1996).   If testifying as a nonexpert, Defendant would purportedly testify about his intentions in creating the video.  The applicable legal standard here is whether a reasonable person, applying a nationwide standard, would think the work has serious artistic value.  Thus, the Court must decide whether Defendant's testimony would be relevant given the objective standard to be applied by the jury for determining

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

what has serious artistic value.

Although the standard is objective, one of the considerations a reasonable person might want to take into account is the intent of the creator in making the work. The reasonable person, in assessing the nature of a work of art, might find the intent of its creator highly relevant. In this respect, art is unique. Given its inherent subjectivity, and the vast range of considerations a viewer of art might consider determinative in assessing a work of art, testimony concerning the artist's goals, inspirations, and intended meaning is at least relevant. Of course, this rationale does not extend to any videos which Defendant did not play a role in creating. For these, Defendant's opinion of the artistic nature of the work is irrelevant.

**V.  Conclusion**

For the foregoing reasons, Defendant's proposed expert testimony is hereby deemed **INADMISSIBLE**. As to any of the videos that he created, Defendant may testify about what he aimed to achieve in creating the works.

Within **thirty (30) days** hereof, the Parties shall meet and confer regarding any motions in limine and shall file any such motions in a single fully integrated joint brief. To the extent the Parties still dispute the definition of the relevant community they shall include this issue in this joint brief. The joint brief shall then be calendared for hearing at the final pre-trial conference to be held on **May 2, 2011 at 3:30 p.m.** The matter is hereby **set for trial on May 17, 2011 at 9:30 a.m.** Prior to trial, the Parties shall meet and confer and in a joint brief, to be filed **thirty (30) days before trial**, propose a jury questionnaire. In this joint brief, the Parties shall list each proposed question and then whether the Parties stipulate to it or, if there are objections, the grounds for those objections. The Parties shall file separate proposed voir dire questions no later than **fourteen (14) days before trial**. No later than **ten (10) days before trial** the Parties shall file a joint proposed statement of the case.

**IT IS SO ORDERED.**

|  | -- | : | -- |
|---|---|---|---|
|  | Initials of Deputy Clerk | | Bea |