1  MICHAEL W. GRANT
   michael.grant@usdoj.gov
2  Trial Attorney
   United States Department of Justice
3  1400 New York Avenue, NW, Suite 6000
   Washington, D.C. 20005

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA, )
                              )
12        Plaintiff,          )
                              )
13           vs.              )  CR-07-732-GHK
                              )
14  IRA ISAACS,               )  **PARTIES JOINT CONSOLIDATED**
                              )  **BRIEF CONTAINING PRETRIAL**
15        Defendant.          )  **MOTIONS AND MEMORANDA OF LAW**
                              )
16                            )
                              )
17  _____ )

18      Pursuant to the Court's Order, dated March 2, 2011,

19  Plaintiff United States of America, through the undersigned

20  counsel, and the Defendant, Ira Isaacs, by and through his

21  counsel of record, Roger Jon Diamond, submit the following joint

22  consolidated brief relating to pretrial motions.

23      The Government hereby submits: (1) Government's Motion

24  Concerning the Relevant Community Standard; (2) Government's

25

                              1

Motion in Limine Regarding the Issue of Fair Warning; (3) Government's Motion in Limine Regarding the Issue of Consenting Adults; (4) Government's Motion in Limine Regarding the Issue of Imprisonment or Punishment; (5) Government's Motion in Limine to Preclude Introduction of Any Alleged Comparable Material Offered by Defendant; and (6) Government's Motion in Limine Regarding Motive of the Government.

The Defendant's counsel of record, Roger Jon Diamond, has stated that the defense has no motions and files no opposition to the Government's motions, but does not concede the Government's motions. *See* Email at Attachment 1.

**GOVERNMENT'S MOTION CONCERNING THE RELEVANT COMMUNITY STANDARD**

The United States of America, by and through its undersigned attorney, hereby moves this Honorable Court to instruct the jurors in the above-titled case that "contemporary community standards," as applied to the first two prongs of the *Miller* Test[1] is defined as "contemporary standards that would be applied by the average person in the Central District of California, with an average and normal attitude toward, and interest, in sex."

I.   Background

The defendant has been charged with three counts of knowingly using a facility of interstate commerce or interactive computer service to sell and distribute obscene material in violation of 18 U.S.C. § 1465 and one count of knowingly using an express company, common carrier, or interactive computer service in interstate commerce to transport obscene material in violation of 18 U.S.C. § 1462. *See* Docket No. 1.

The Government alleges, in reference to Count 1, that on or about May 11, 2004, SA Mark Hunter using an interactive computer service in California accessed the Internet in order to make an on-line purchase from the Internet website www.scatmovies.com. SA Hunter, using an undercover identity and credit card, purchased three DVD movies, one of which was "Gang Bang Horse,

---

[1] *See Miller v. California*, 413 U.S. 15, 24 (1973).

1  Pony Sex Game" (the video charged in Count 1)(hereinafter
2  "GBH"). SA Hunter requested the movies be delivered to an
3  undercover address in Huntington Beach, California. After that
4  purchase, the defendant, through his solely owned business L.A.
5  Media, shipped via United Parcel Service ("UPS"), a common
6  carrier, the three ordered DVD movies from his office in Los
7  Angeles, California to the undercover address in Huntington
8  Beach, California. Law enforcement agents received the videos,
9  to include GBH, at the undercover address in Huntington Beach,
10  California.

11  The Government alleges, in reference to Count 2, that on or
12  about July 21, 2006, SA William McDermott using an interactive
13  computer service in Virginia accessed the Internet in order to
14  make an on-line purchase from the Internet website
15  www.scatmovies.com. SA McDermott, using an undercover identity
16  and credit card, purchased four DVD movies, one of which was
17  "Mako's First Time Scat" (the video charged in Count 2)
18  (hereinafter "Mako"). SA McDermott requested the movies be
19  delivered to an undercover address in Huntington Beach,
20  California. After that purchase, the defendant, through his
21  solely owned business L.A. Media, shipped via UPS, a common
22  carrier, the four ordered DVD movies, to include the Mako video
23  from his office in Los Angeles, California to the undercover
24  address in Huntington Beach, California. Law enforcement agents

25

4

1  received the videos, to include Mako, at the undercover address
2  in Huntington Beach, California.

3      The Government alleges, in reference to Count 3 and 5, that
4  on or about October 20, 2006, SA James Myrick, using an
5  interactive computer service in Virginia accessed the Internet
6  in order to make an on-line purchase from the Internet website
7  www.stolencarfilms.com.  SA Myrick, using an undercover identity
8  and credit card, purchased five DVD movies, one of which was
9  "Hollywood Scat Amateurs No. 7" (the video charged in Counts 3
10  and 5) (hereinafter "HSA7").  SA Myrick requested the movies be
11  delivered to an undercover address in Alexandria, Virginia.
12  After that purchase, the defendant, through his solely owned
13  business L.A. Media, shipped via UPS, a common carrier, the five
14  ordered DVD movies, to include HSA7 from his office in Los
15  Angeles, California to the undercover address in Alexandria,
16  Virginia. Law enforcement agents received the videos, to include
17  HSA7, at the undercover address in Alexandria, Virginia.

18      All three videos charged in the present Indictment were
19  shipped by the defendant via UPS, a common carrier, from Los
20  Angeles, California to either Huntington Beach, California, or
21  Alexandria, Virginia.  None of the alleged obscene materials
22  were delivered via the Internet or email.

23  II.  Law

24      Under federal law, matter is obscene if: (1) the average
25  person, applying contemporary community standards, would find

1  that the material taken as a whole appeals to the prurient
2  interest; (2) the average person, applying contemporary
3  community standards, would find that the material depicts or
4  describes sexual conduct in a patently offensive way; and (3) a
5  reasonable person would find, taking the material as a whole,
6  that it lacks serious literary, artistic, political or
7  scientific value. *Miller v. California*, 413 U.S. 15, 24-25
8  (1973); *Smith v. United States*, 431 U.S. 291, 299-300 (1977);
9  *Pope v. Illinois*, 481 U.S. 497, 500-02 (1987).

10     In *Miller*, the Court also held that "Nothing in the First
11  Amendment requires that a jury must consider hypothetical and
12  unascertainable 'national standards' when attempting to
13  determine whether certain materials are obscene as a matter of
14  fact." *Miller*, 413 U.S. at 31-32. Though *Miller* involved
15  application of a state obscenity statute, the *Miller* test has
16  subsequently been found to define regulated speech for the
17  purposes of federal obscenity statutes such as 18 U.S.C. 1462
18  and 18 U.S.C. 1465. *See Hamling v. United States*, 418 U.S. 87,
19  106 (1974); *United States v. Schales*, 546 F.3d 965, 973 (9th Cir.
20  2008).

21     The Supreme Court has long held that "in cases involving
22  obscenity disseminated via the regular mails, that for purposes
23  of federal obscenity statutes, no 'precise geographical area'
24  need be applied in defining 'contemporary community standards.'"
25  *See United States v. Kilbride*, 584 F.3d 1240, 1247 (9th Cir.

2009) (citing *Hamling*, 418 U.S. at 105).  As a result, in federal obscenity prosecutions, a juror may simply "draw on knowledge of the community or vicinage from which he comes" in determining contemporary community standards."  *Id.*

In *Kilbride*, however, the Ninth Circuit held that "a national community standard must be applied in regulating obscene speech on the Internet, including obscenity disseminated via email."  *Id.* at 1254. The Ninth Circuit drew support from the Supreme Court's fractured decision in *Ashcroft v. ACLU*, 535 U.S. 564 (2002), where the Court reviewed the constitutionality of the Child Online Privacy Act ("COPA"), which sought to regulate material "harmful to minors" transmitted via the World Wide Web "for commercial purposes."  *See Kilbride*, 584 U.S. at 1252-55 (discussing *Ashcroft*, 535 U.S. 564). In *Ashcroft*, the Third Circuit found that COPA's use of contemporary community standards was constitutionally problematic because web publishers were without any means to limit access to their sites based on the geographic location of particular Internet users. *Id.* at 1252. The Supreme Court vacated the Third Circuit judgment, holding that "COPA's reliance on community standards…does not by itself render the statute substantially overbroad for purposes of the First Amendment". *Id.*  However, the eight Justices concurring in the judgment applied divergent reasoning to justify the Court's holding. *Id.*  Justice O'Connor, writing for herself, stated "given Internet speakers' inability

1 to control the geographic location of their audience, expecting
2 them to bear the burden of controlling the recipients of their
3 speech…may be entirely too much to ask, and would potentially
4 suppress an inordinate amount of expression." *Id.* at 1253
5 (citing *Ashcroft*, 535 U.S. at 587). Justice Thomas, joined by
6 two other Justices, did not view it as constitutionally
7 significant that distributers of potential obscene materials via
8 the Internet could not control where the material was read. *Id.*
9 He explained "if a publisher wishes for its material to be
10 judged only by the standards of particular communities, then it
11 need only take the simple step of utilizing a medium that
12 enables it to target the release of its material into those
13 communities." *Id.* (citing *Ashcroft*, 535 U.S. at 583). Justice
14 Breyer, writing for himself, stated "[t]he technical
15 difficulties associated with efforts to confine Internet
16 material to particular geographic areas make the problem
17 particularly serious." *Id.* at 1253 (citing *Ashcroft*, 535 U.S. at
18 590).

19 III. Argument

20    The definition of the relevant community that applies in
21 this case should be the community of the Central District of
22 California, not a national community.

23    In deciding whether it is appropriate to instruct jurors to
24 apply a national community standard, the Ninth Circuit has
25 focused on the manner in which the speaker has disseminated the

8

1 alleged obscene material. *See Kilbride*, 584 F.3d 1240.  The
2 court, in *Kilbride*, focusing on the narrowest grounds of
3 concurrence in *Ashcroft*, recognized a need to apply a national
4 standard in regulating obscene speech on the Internet, including
5 obscenity disseminated via email.  *See id*. at 1254.

6     In *Kilbride*, the obscene material was transmitted to the
7 recipients over the Internet via email. *See id*. at 1244. The
8 defendants in *Kilbride* operated a business sending unsolicited
9 bulk email, popularly known as "spam."  *See id*.  The spam emails
10 contained sexually explicit obscene images.  *See id*.  In
11 *Kilbride*, the Ninth Circuit expressed concern about the
12 inability of the speaker to regulate the geographic locations of
13 where the spam emails containing the obscene images were being
14 sent and the geographic locations of where they were being
15 accessed. *See id*. at 1254. In *Kilbride*, due to defendants'
16 practice of sending out "spam" emails, the defendants' did not
17 know the geographic locations of where the emails containing the
18 obscene images were going or where they were being received.
19 *See id*. at 1244-45.

20     The defendants in *Kilbride* argued that there were no means
21 to control where geographically their messages would be received
22 and thus they could not tailor their message to the specific
23 communities into which they disseminated their speech.  *See id*.
24 at 1251.  The *Kilbride* court, focusing on the method of
25 transmission (i.e., unsolicited emailed sent to random

addresses) and relying on the fractured Supreme Court in *Ashcroft*, agreed that a national community standard must be applied in situations where the obscene matter was transmitted over the Internet, to include by email. *See id.* at 1253. Of note, the Ninth Circuit found in *Kilbride* that although the district court should have instructed the jury to apply a national community standard because the obscene matter was transmitted over the Internet, the district court's error was "far from plain." The *Kilbride* court stated, "Prior to our holding here, the relevant law in this area was highly unsettled with the extremely fractured opinion in *Ashcroft* providing the best guidance. While our holding today follows directly from a distillation of the various opinions in *Ashcroft*, our conclusion was far from clear and obvious to the district court. Hence, we conclude that the district committed no reversible error in its §§ 1462 and 1465 jury instructions." *Id.* at 1255.

A national community standard, as described in *Kilbride*, does not apply in this case because none of the charged videos were transmitted over the Internet or via email. All three of the charged videos were shipped by the defendant via UPS, a common carrier, to specific geographic locations with the defendant's full knowledge of where he was shipping the videos. He made a knowing and intentional decision to transmit the material to Huntington Beach, California, and to Alexandria, Virginia. As such, there is no burden for the defendant to bear

1  – he had total control as to where he distributed the material.
2  *See id.* at 1253 (citing *Ashcroft*, 535 U.S. at 587).

3  Moreover, none of the concerns regarding a distributor of
4  potentially obscene material being forced to "abide by the 'most
5  puritan' community's standards" (*Ashcroft*, 535 U.S. at 577) to
6  which he distributed material, apply in this case because the
7  defendant is being prosecuted in the Central District of
8  California which is the district in which defendant lived,
9  operated his business, and from which he shipped the alleged
10 obscene materials.

11 The local contemporary community standard of the Central
12 District of California is the appropriate standard in this case,
13 being the district from which the defendant shipped the
14 allegedly obscene material by UPS (a common carrier), in which
15 the defendant lived and operated his business, within which the
16 defendant shipped two of the three allegedly obscene videos (the
17 third video having been shipped to the Eastern District of
18 Virginia), and in which the defendant is being prosecuted and in
19 which the jurors live and reside.  This standard has long been
20 recognized as the appropriate standard and, because of the facts
21 in this case, the Ninth Circuit's decision in *Kilbride* does not
22 change or affect this precedent.

23 IV.  Conclusion

24 The definition of the relevant community that should apply
25 in this case is the community of the Central District of

California, not a national community.  The Government
respectfully requests that the Court define "contemporary
community standards" as contemporary standards that would be
applied by the average person in the Central District of
California, with an average and normal attitude toward, and
interest in, sex.

**GOVERNMENT'S MOTION IN LIMINE REGARDING THE ISSUE OF FAIR**

**WARNING**

The United States of America, by and through its undersigned attorney, hereby request this Court grant their Motion in Limine Regarding the Issue of Fair Warning, instructing the defendant, his attorney, and all defense witnesses not to use testimony, remarks, tangible evidence, exhibits, questions or arguments which relate, either directly or indirectly, to the matters enumerated below.

I.   Introduction

This motion is based upon the fact that the evidence set forth herein will be inadmissible and unfairly prejudicial under the laws of evidence.  Also, such evidence will confuse and mislead the jury on critical legal issues which will be discussed by the Court in its instructions to the jury. Moreover, if such evidence is heard by the jury, the damage to the Government's case will be irreparable in that a motion to strike or cautionary instructions will be inadequate.

II.   Fair Warning

The Government requests the Court to instruct defendant, his attorney, and any defense witness to refrain from arguing to the jury, making comments in the presence of the jury, or eliciting testimony suggesting that (1) the defendant did not

have "fair warning" and therefore relied on a non-obscene classification of their behavior or (2) that lack of "fair warning" is a permissible defense to obscenity.

III. Law & Argument

Any argument by the defendant or his counsel on whether the defendant had "fair warning" that his acts were illegal would be improper and should be excluded by this Court.  There is no requirement, other than the clarity of the language in the statute involved, that a defendant be forewarned of prosecution before a charge may be brought.  *United States v. Alexander*, 736 F.Supp 968, 993 (D. Minn. 1990).  The Government is not required to "fire warning shots".  *Id.* (citing *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 61 (1989)).  Rather, the law itself is "fair warning" of what may be prosecuted and "those who conduct their affairs close to the boundaries of proscribed activity necessarily incur some risks."  *Polykoff v. Collins*, 816 F.2d 1326, 1340 (9th Cir. 1987).

IV. Conclusion

For the foregoing reasons, the Government requests that the Court enter an Order precluding the defense from introducing evidence, making statements, or eliciting testimony relating to a claim that the defendant did not have "fair warning" and lastly for an order barring the defense from raising or arguing these issues at trial.

**GOVERNMENT'S MOTION IN LIMINE REGARDING THE ISSUE OF CONSENTING**

**ADULTS**

The United States of America, by and through its undersigned attorney, hereby request this Court grant their Motion in Limine Regarding the Issue of Consenting Adults by instructing the defendant, his attorney, and all defense witnesses not to use testimony, remarks, tangible evidence, exhibits, questions or arguments which relate, either directly or indirectly, to the matters enumerated below.

I.    Introduction

This motion is based upon the fact that the evidence set forth herein will be inadmissible and unfairly prejudicial under the laws of evidence. Also, such evidence will confuse and mislead the jury on critical legal issues which will be discussed by the Court in its instructions to the jury. Moreover, if such evidence is heard by the jury, the damage to the Government's case will be irreparable in that a motion to strike or cautionary instructions will be inadequate.

II.   Consenting Adults

The Government requests the Court to instruct the defendant, his attorney, and any defense witness to refrain from making any comment in the presence of the jury, that would directly or indirectly contradict the established rule of law that it is not a defense to a crime of distributing or

1  transporting obscene material that the business sold material
2  only to consenting adults.

3  III. Law & Argument

4      Within the established law of obscenity, there is no
5  defense to the charge of distributing obscene material by
6  claiming that the films were distributed to "consenting adults,"
7  i.e., sold by willing adults to other willing adults. *See Paris*
8  *Adult Theatre I v. Slaton*, 413 U.S. 49, 57-59 (1973). In *Paris*,
9  the defendants were charged in a civil action with "exhibiting
10 to the public for paid admission two obscene films." *Id.* at 51.
11 While the trial court assumed that these films would be obscene,
12 no finding of obscenity was made at the trial court level. *Id.*
13 at 53. Because there was no evidence presented that minors had
14 ever entered the theatres, the trial court erroneously dismissed
15 the civil complaints stating:

16              It appears to the court that the display
17              of these films in a commercial theatre,
18              when surrounded by requisite notice to the
19              public of their nature and by reasonable
20              protection against the exposure of these
21              films to minors, is constitutionally
22              permissible.

23 *Paris Adult Theatre I*, 413 U.S. at 53 (citing the trial court
24 ruling). On appeal, this ruling was unanimously reversed by the
25 Georgia Supreme Court, which held that obscene films are without

16

1  protection under the First Amendment. *Id*.  On appeal to the
2  Supreme Court, the Georgia Supreme Court ruling was affirmed,
3  with the following ruling:

4         [W]e categorically disapprove the theory
5         apparently adopted by the trial judge,
6         that obscene, pornographic films acquire
7         constitutional immunity from state
8         regulation simply because they are
9         exhibited for consenting adults only.

10  *Paris Adult Theatre I*, 413 U.S. at 57.  In *Paris*, the Court
11  deliberately removed the factual element of "consenting adults"
12  from the consideration of the fact finder, drawing the other
13  elements of obscenity into greater contrast.  It is not whether
14  or not the adults are consenting that is at issue; the jury must
15  determine and apply the "community standards," which are created
16  by considering the views and attitudes of all adult members of
17  the community, i.e., what is in fact accepted in the community
18  as a whole, not just by those who purchased the tapes.  *See*
19  *Smith v. United States*, 431 U.S. 291, 297-98 (1977); *see also*
20  *Pinkus v. United States*, 436 U.S. 293, 298-301 (1978).

21     In *Kaplan v. California*, 413 U.S. 115 (1973), an adult
22  bookstore owner was convicted of obscenity for selling an
23  "unillustrated book containing repetitively descriptive material
24  of an explicitly sexual nature." *Id*. at 115-17.  The Court held
25  that "commercial exposure and sale of obscene materials to

1  anyone, including consenting adults, is subject to state
2  regulation" in order to curb possible antisocial effects on
3  community members. *Id*. at 120. The federal government has the
4  same interest in this case and therefore whether or not this
5  transaction was conducted amongst consenting adults is
6  irrelevant.

7      This rule of law, initiated in *Paris*, reflects a greater
8  concern for the health of the community rather than the behavior
9  of the individual. While the offensive behavior of a single
10 member may be beyond the interest and regulation of the
11 government, those behaviors that relate back and rely on
12 interstate commerce have the dangerous potential of affecting
13 the community as a whole. It would be impossible to provide
14 sufficient assurance that those "consenting adults"
15 participating in the transaction of obscene material will
16 restrict their viewing to themselves or their family in a
17 private setting. *See United States v. Shein*, 31 F.3d 135, 138
18 (3rd Cir. 1994).

19     Any discussion or argument framing the issue of consenting
20 adults, may mislead jurors into thinking the distribution of
21 potentially obscene materials to "consenting adults" only, is
22 (or should be) a defense. As a result, jurors may mistakenly
23 transpose such a claim by the defendant with the law of
24 obscenity. For this and all the reasons stated above, the
25 defendant should not be permitted to, in any way, introduce

18

1  evidence that their materials were available to willing, or

2  consenting, adults only, and that this is a defense to the

3  crimes alleged.

4    IV.  <u>Conclusion</u>

5      For the foregoing reasons, the Government requests that the

6  Court enter an Order precluding the defense from introducing

7  evidence, making statements, or eliciting testimony relating to

8  a claim that the defendant only sold or distributed the alleged

9  obscene materials to "consenting adults" and lastly for an order

10 barring the defense from raising or arguing these issues at

11 trial.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**GOVERNMENT'S MOTION IN LIMINE REGARDING THE ISSUE OF**

**IMPRISONMENT OR PUNISHMENT**

The United States of America, by and through its undersigned attorneys, hereby request this Court grant their Motion in Limine Regarding the Issue of Punishment or Imprisonment, by instructing the defendant, his attorney, and all defense witnesses not to use testimony, remarks, tangible evidence, exhibits, questions or arguments which relate, either directly or indirectly, to the matters enumerated below.

I.    Introduction

This motion is based upon the fact that the evidence set forth herein will be inadmissible and unfairly prejudicial under the laws of evidence.  Also, such evidence will confuse and mislead the jury on critical legal issues which will be discussed by the Court in its instructions to the jury. Moreover, if such evidence is heard by the jury, the damage to the Government's case will be irreparable in that a motion to strike or cautionary instructions will be inadequate.

II.   Punishment or Imprisonment

The Government requests the Court to instruct the defendant, his attorney, and any defense witness to refrain from making any comment in the presence of the jury that would directly or indirectly contradict the established rule of law that juries are not to consider the possible sentence of a defendant.   The Government further requests that the Court

20

1  instruct the defendant, his attorney, and any defense witness to
2  refrain from making any mention of possible punishment or
3  imprisonment for the crimes charged.

4  III. Law & Argument

5  When a jury has no sentencing function, it should be
6  admonished to reach its verdict without regard to what sentence
7  might be imposed. *See Shannon v. United States*, 512 U.S. 573,
8  579 (1994); *see also Rogers v. United States*, 422 U.S. 35, 40
9  (1975). This principle reflects the basic division of labor in
10 our legal system between judge and jury. *Shannon*, 512 U.S. at
11 579. The Court in *Shannon* went on to state that "providing
12 jurors sentencing information invites them to ponder matters
13 that are not within their province, distracts them from their
14 fact finding responsibilities, and creates a strong possibility
15 of confusion." *Id.*

16 The above cited cases establish the rule that juries are
17 not to consider sentencing so as not to prejudice or confuse
18 their verdict. Such evidence is completely irrelevant to the
19 charge of obscenity and would do little to assist the jury in
20 fulfilling their duty as fact-finder. For this and the above
21 mentioned reasons, the Government asks that any mention of
22 potential punishment by the defendant and/or his counsel be
23 excluded from trial.

24

25

IV.   Conclusion

For the foregoing reasons, the Government requests that the Court enter an Order precluding the defense from introducing evidence, making statements, or eliciting testimony relating to any potential punishment the defendant faces and lastly for an order barring the defense from raising or arguing these issues at trial.

1   **GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE INTRODUCTION OF ANY**

2   **ALLEGED COMPARABLE MATERIAL OFFERED BY DEFENDANT**

3       The United States of America, by and through its

4   undersigned attorney, hereby submits the following motion and

5   memorandum of law in opposition to the defendant's intention to

6   use certain evidence at trial and moves this Court to preclude

7   the introduction of any alleged "comparable" material offered by

8   the defendant.

9   I.   Factual Background

10      The defendant has been charged with three counts of

11  knowingly using a facility of interstate commerce or interactive

12  computer service to sell and distribute obscene material in

13  violation of 18 U.S.C. § 1465 and one count of knowingly using

14  an express company, common carrier, or interactive computer

15  service in interstate commerce to transport obscene material in

16  violation of 18 U.S.C. § 1462. *See* Docket No. 1.  The charged

17  videos include, but are not limited to, sexual acts of

18  bestiality, sexual acts involving feces and urination, and

19  sadomasochistic acts.

20      The case was initially set for trial in front of the

21  Honorable George H. King.  Pursuant to direction by the Court,

22  on January 23, 2008, the parties jointly filed a brief

23  containing pretrial motions and memorandum of law. *See* Docket

24  No. 28.  The joint filing contained a government motion to

25

1  preclude certain defense evidence and the defense response to
2  said motion. *See id.*

3      On February 11, 2008, the Court heard oral arguments from
4  both parties concerning the motion to preclude certain defense
5  evidence.  The evidence at issue in the motion was (1) a letter
6  from a customer of defendant; (2) DVD movie of Team America
7  World Police; (3) two DVDs regarding surfing the web; (4) twelve
8  advertising flyers designed and produced by the defendant; and
9  (5) notice of the desire of the defendant to search the Internet
10 during trial and to show the jury various types of sexually
11 explicit materials.  The Court granted the Government's motion
12 to preclude the evidence within the motion.  *See* Docket No. 34.

13     On March 14, 2008, the case at issue was transferred to the
14 Honorable Alex Kozinski.  *See* Docket No. 51.  The matter was set
15 for trial on June 9, 2008.  Immediately prior to trial, the
16 defense provided the Government with a trial notebook containing
17 58 items of evidence.  *See* Exhibit List at Attachment 2.

18     On June 13, 2008, the case was returned to the Honorable
19 George H. King.  *See* Docket No. 67.

20     On August 11, 2010, pursuant to an Order of the Court, the
21 parties filed a Joint Status Brief in preparation for trial.
22 *See* Docket No. 119.  In the joint brief, the prior Government
23 counsel and the defense addressed the evidence provided by the
24 defendant in the trial notebook.  The parties agreed that
25 numerous proposed exhibits were inadmissible and would not be

1  offered by the defendant (the Government is under the assumption
2  that the defendant intends to honor this agreement and therefore
3  will not address those exhibits in this motion). *See* Docket No.
4  119.   The parties could not agree to the admissibility of the
5  remaining exhibits and the Government requested leave to brief
6  and argue the outstanding exhibits.   *See id.*

7  II.   LAW

8      In the rare instances where federal and state courts have
9  admitted "comparables," they have done so only when defendants
10  have satisfied rigorous foundational requirements. The two key
11  elements of the requisite foundation were set forth in *Womack* v.
12  *United States*, 294 F.2d 204 (D.C. Cir. 1961).   This widely-
13  recognized standard requires that the party proffering
14  additional pornographic or other content show that there is: (1)
15  reasonable resemblance between the charged and comparable
16  materials; and (2) a reasonable degree of community acceptance
17  of the proffered comparables. This foundation for the admission
18  of comparables has been adopted by numerous state and federal
19  courts including the Ninth Circuit. *See, e.g. United States* v.
20  *Pinkus*, 579 F.2d 1174, 1175 (9th Cir. 1978); *see also, United*
21  *States* v. *Thevis*, 490 F.2d 76, 77 (5th Cir. 1974); *United States*
22  v. *Petrov*, 747 F.2d 824, 831-32 (2d Cir. 1984); *United States* v.
23  *Battista*, 646 F.2d 237 (6th Cir. 1981); *United States* v. *Various*
24  *Articles of Merchandise*, 750 F.2d 596, 599-600 (7th Cir. 1984).

25

1    The Ninth Circuit case, *Pinkus*, squarely addressed the
2   foundation issue and adopted the *Womack* standard. In that case,
3   the defendant was convicted of mailing obscene matters. The
4   Court of Appeals affirmed the conviction but the Supreme Court
5   remanded the case based on a jury instruction that had been
6   given. Upon remand, the Ninth Circuit made clear that proponents
7   of comparables must demonstrate the materiality and relevance of
8   the comparables as a prerequisite for their admission. The Court
9   explicitly adopted the *Womack* foundational standard. *Id*. at
10   1155.  Echoing the *Womack* language, the Ninth Circuit said there
11   must be a reasonable resemblance between the proffered
12   comparables and the allegedly obscene materials, and the
13   proponent must establish a reasonable degree of community
14   acceptance of the proffered comparables.  *Id*.

15    The United States Supreme Court has indicated that
16   comparable evidence is of questionable relevance and generally
17   is inadmissible, stating: "Mere availability of similar material
18   by itself means nothing more than that other persons are engaged
19   in illegal activities." *Hamling v. United States*, 418 U.S. 87,
20   126 (1974) (quoting *United States v. Manarite*, 448 F.2d 583, 593
21   (2d Cir. 1971)).  In *Hamling*, the defendants offered as evidence
22   at trial several types of allegedly comparable material: (1)
23   materials which received second-class mailing privileges; (2)
24   materials which had previously been the subject of litigation
25   and had been found to be "constitutionally" protected; and (3)

1  materials openly available on the newsstands." *Hamling*, 418 U.S.
2  at 125.   The Supreme Court upheld the exclusion of this evidence
3  by the district court, stating further that "[m]uch of the
4  material offered by petitioners was not of demonstrated
5  relevance to the issues in this case.  Such of it that may have
6  been clearly relevant was subject to the District Court's
7  observation that it would tend to create more confusion than
8  enlightenment in the minds of the jury…." *Id*. at 127.

9       Furthermore, this Court should preclude this evidence based
10 on its judicial authority.  Federal Rule of Evidence 611 states
11 "[t]he trial court shall exercise reasonable control over the
12 mode and order of…presenting evidence so as to (1) make the
13 interrogation and presentation effective for the ascertainment
14 of the truth, (2) avoid needless consumption of time, and (3)
15 protect the witnesses…."  Fed. R. Evid. 611(a).  Also, Fed. R.
16 Evid. 403 states "evidence may be excluded if its probative
17 value is substantially outweighed…by considerations of undue
18 delay, waste of time, or needless presentation of cumulative
19 evidence."

20   III. Argument Regarding Specific Items of Evidence

21       Isaacs Produced Paintings and Coupon Mailers (Items 1-12):
22 These offered paintings and coupon mailers (for dry cleaners and
23 pizza parlors) are wholly irrelevant and are not comparable
24 evidence within the meaning of the *Womack* standard or within the
25 subsequent *Pinkus* decision by the Ninth Circuit on remand from

1  the Supreme Court.  The paintings depict a laundry mat with
2  clothes flying, animals, and what appear to be Roman statutes
3  wearing sunglasses.  The flyers are essentially coupons for dry
4  cleaners and pizza parlors.  None of these exhibits depict any
5  sex act, much less sex acts involving animals or excrement.
6  Furthermore, these exhibits are irrelevant and even if some
7  semblance of relevancy could be shown, they should still not be
8  admitted under Fed. R. Evid. 403, because they confuse the
9  issues and would be a waste of the Court's time.

10      Photos of Other Artists Work (Items 13B-C, 15, 17, 18, 19D,
11  21B, and 23D): These exhibits are copies of other artists work.
12  A few of the exhibits involve depictions of feces but none of
13  the exhibits illustrate a sex act of any kind. As such, applying
14  the *Womack* test, these works do not reasonably resemble the
15  charged material. However, assuming, *arguendo*, that the
16  proffered comparables satisfy the similarity prong of the *Womack*
17  test, these exhibits would still fail the second-prong of that
18  test.  As the *Womack* case made clear, courts must distinguish
19  between the "mere availability" of material in a community and
20  "a reasonable degree of community acceptance" of the material.
21  *Womack*, 294 F.2d at 206.  The defendant must show not only that
22  it was accepted in the community but that acceptance was during
23  the period when the defendant was distributing and selling the
24  charged videos.  *See Pinkus*, 436 U.S. at 298-300; *Smith v.*
25  *United States*, 431 U.S. 291, 301 (1977); *Miller v. California*,

1 | 413 U.S. 15, 24 (1973). The defendant has failed to make that
2 | showing with regard to this evidence.

3 |   DVDs of Commercial Movies (Items 53-56): These movies are
4 | not comparable to the charged videos. The defense wants to
5 | offer clips of Team America, South Park the Movie, and Jackass
6 | the Movie. None of these movies resemble what is on the three
7 | charged videos. These movies are animated depictions, cartoons,
8 | or staged extreme stunts. They do not reasonably resemble the
9 | sexual acts in the charged movies which include a woman
10 | performing sex acts on a horse, sex between a man and a woman
11 | incorporating feces and urine into the acts, or acts of extreme
12 | sadomasochistic sex acts. Even if a segment of the films
13 | involved some activity resembling that which is depicted in the
14 | three videos at issue, it is of such a small portion of the
15 | videos, that it is not sufficiently comparable or having a
16 | reasonable resemblance to actual conduct versus animated
17 | cartoonish conduct or staged stunts for a movie.

18 |   You Tube Video and Reaction Videos (Items 52, 57A-G):
19 | Exhibit 52 is a homemade video by the defendant that includes
20 | the video titled "2 girls 1 cup" which is a video where two
21 | women defecate in a cup, consume the excrement, and vomit in
22 | each other's mouths. The additional clips in Exhibit 52 are
23 | supposed reaction videos of viewers who have not seen the film
24 | before and are alleged to be viewing the video and capturing
25 | their initial reaction. Exhibit 52 incorporates "web surfing"

1   and commentary from the defendant relating to the videos.
2   Exhibit 57 A-G seems to be an index of the reaction videos
3   relating to the video and memorializes which reaction videos
4   were placed on Exhibit 52.  These videos do not reasonably
5   resemble the sex acts in the charged films.  Although one of the
6   exhibits involves feces, the videos do not involve any sex acts
7   similar to the charged films.  The majority of these clips are
8   focused on a viewer and it is unclear exactly what the person is
9   viewing. However, even if the exhibits are considered to
10  reasonably resemble the charged films, they should still be
11  precluded as they fail the second prong of the *Womack* test, in
12  that there is no proof or evidence whatsoever to suggest that
13  these exhibits were accepted within the community at the time
14  that the defendant distributed and sold the charged videos.
15  Furthermore, the video is wholly irrelevant.  How other people,
16  or a Kermit the Frog puppet, might react to this video has no
17  bearing on any issues in this case.  It is hearsay,
18  unauthenticated, and introduction of these exhibits could
19  confuse the jury and would definitely be a waste of the Court's
20  time.

21      Books (Items 31-32, 34):  The books offered by the defense
22  do not reasonably resemble the charged videos.  These books do
23  not visually depict any of the sex acts in the charged videos.
24  The books are irrelevant, confusing, misleading, and if admitted
25  into evidence would be a waste of the Court's time.

1        Copy of Philosophy Talk Radio Show (Item 58):  This exhibit
2    is a copy of a radio talk show discussing art.  It is
3    approximately 50 minutes long.  It is irrelevant to the issues
4    before the jury.  All this exhibit shows is what these people,
5    who are totally unrelated to the case at hand, like to discuss
6    the topic of art.  However, their opinion on what is or isn't
7    art is not at all relevant to the issues before this jury.  It
8    is the jury who will decide whether or not the charged material
9    lacks serious artistic value.  *See Paris Adult Theatre I v.*
10   *Slaton*, 413 U.S. 49, 56 (1973)(explaining whether something is
11   obscene can be decided by viewing the materials alone because
12   expert testimony is not required or necessary when the materials
13   or film are in evidence).  Lastly, this exhibit is hearsay and
14   will only confuse the pertinent issues and waste the Court's
15   time.

16       IV.  Conclusion

17       Based on the existing law and the arguments above, the
18   Government respectfully requests the Court preclude the
19   introduction of the items offered by the defense.

20

21

22

23

24

25

**GOVERNMENT'S MOTION IN LIMINE REGARDING MOTIVE OF THE GOVERNMENT**

The United States of America, by and through its undersigned attorney, hereby submits this motion requesting this Honorable Court to instruct the defendant, his attorney, and all defense witnesses not to use testimony, remarks, tangible evidence, exhibits, questions or arguments which relate, either directly or indirectly, to any alleged motive of the Government in bringing this prosecution other than the enforcement of federal statutes.

I.   Introduction

This motion is based upon the fact that the evidence set forth herein will be inadmissible and unfairly prejudicial under the laws of evidence.  Also, such evidence will confuse and mislead the jury on critical legal issues which will be discussed by the Court in its instructions to the jury. Moreover, if such evidence is heard by the jury, the damage to the Government's case will be irreparable in that a motion to strike or cautionary instructions will be inadequate.

II.   Facts

The defendant has been charged with three counts of knowingly using a facility of interstate commerce or interactive computer service to sell and distribute obscene material in violation of 18 U.S.C. § 1465 and one count of knowingly using an express company, common carrier, or interactive computer

1  service in interstate commerce to transport obscene material in

2  violation of 18 U.S.C. § 1462.  *See* Docket No. 1.

3      On June 9, 2008, the case *United States v. Isaacs* was

4  called by the Honorable Alex Kozinski.  During defense counsel's

5  opening statement, he stated "I anticipate that the government

6  may call a couple of witnesses to create the impression that

7  this was some great detective work, and suddenly through great

8  work they found the culprit and then they have gone forward for

9  whatever political purpose."  *See* Trial Tr. 23:5-9 June 11,

10  2008, at Attachment 3.  The Government objected to the statement

11  and the judge instructed defense counsel to "…stick to the

12  facts."  *See* Trial Tr. 23:10-14 June 11, 2008 at Attachment 3.

13  For an unrelated reason, Judge Kozinski subsequently declared a

14  mistrial.  The case is now reset for trial on May 17, 2011

15  before the Honorable George H. King.

16      III.  Law

17      To support a claim of selective or discriminatory

18  prosecution, a defendant bears the burden of establishing

19  unconstitutional discrimination in the administration of a penal

20  statute.  *See United States v. Oaks*, 527 F.2d 937, 940 (9th Cir.

21  1975).

22      In order to establish a prima facie case of selective

23  prosecution, a defendant must show both (1) that "others

24  similarly situated have not been prosecuted," and (2) "that the

25  prosecution is based on an impermissible motive," i.e.,

1   discriminatory purpose or intent.  *United States v. Bourgeois*,

2   964 F.2d. 935, 938 (9th Cir. 1992) (citing *United States v.*

3   *Wayte*, 710 F.2d 1385 (9th Cir. 1983)), *aff'd* 470 U.S. 598, 84 L.

4   Ed. 2d 547, 105 S. Ct. 1524 (1985). Selective prosecution claims

5   are evaluated according to ordinary equal protection standards.

6   *See Bourgeois*, 94 F.2d at 938.

7        Similarly, in order to establish a prima facie case of

8   vindictive prosecution, a defendant must make a "showing that

9   charges of increased severity were filed because the accused

10  exercised a statutory, procedural, or constitutional right in

11  circumstances that give rise to an appearance of

12  vindictiveness."  *United States v. Gallegos-Curiel*, 681 F.2d

13  1164, 1168 (9th Cir. 1982).

14       Relevant evidence is defined as "having any tendency to

15  make the existence of any fact that is of consequence to the

16  determination of the action more probable or less probable than

17  it would be without the evidence."  Federal Rule of Evidence

18  401.  Although relevant, evidence may be excluded if its

19  probative value is substantially outweighed by the danger of

20  unfair prejudice, confusion of the issues, misleading the jury,

21  or if a waste of time. *See* Fed. R. Evid. 403.

22  IV.  Argument

23       The defense should be precluded from mentioning, in any

24  form or manner, any alleged motive by the Government in bringing

25  this prosecution other than the enforcement of the charged

34

1   federal statute.  There is absolutely no evidence to suggest any
2   improper reason or motive for bringing the present charges.  Any
3   mention of any alleged impermissible motive (i.e. political
4   purposes) would be totally frivolous, baseless, and speculative.
5   Furthermore, during the trial, any mention of motive or
6   political purpose would be wholly irrelevant to whether or not
7   the defendant is guilty of transporting and/or distributing
8   obscene materials.  Any mention of motive or political purpose
9   would serve no function but to mislead the jury, confuse the
10   issues, and would result in an absolute waste of the Court's
11   time.

12      V.   Conclusion

13      For the foregoing reasons, the Government requests that the
14   Court enter an Order precluding the defense from introducing
15   evidence, making statements, or eliciting testimony relating to
16   a claim that the defendant is a victim of selective or
17   vindictive prosecution, or that there is some "political
18   purpose" for bringing the current charges and lastly for an
19   Order barring the defense from raising or arguing these issues
20   at trial.

35

1

2                                     Respectfully Submitted,

3

4

5                                     _____/s/_____

6                                     ROGER JON DIAMOND
                                      Attorney for Defendant
7                                     IRA ISAACS

8

9

10                                    _____/s/_____
                                      MICHAEL W. GRANT
11                                    U.S. Department of Justice
                                      Trial Attorney
12                                    Child Exploitation and
                                      Obscenity Section
13                                    1400 New York Avenue, NW
                                      Sixth Floor
14                                    Washington, DC 20530
                                      (202)307-1982 (phone)
15                                    (202)514-1793 (fax)
                                      Michael.Grant@usdoj.gov

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF SERVICE

I, Michael W. Grant, Trial Attorney with the United States Department of Justice, Criminal Division, hereby certify that the foregoing Parties Joint Consolidated Brief Containing Pretrial Motions and Memoranda of Law was filed on April 1, 2011 by CM/ECF which will send electronic copies to counsel for the defendant, Roger Jon Diamond, 2115 Main Street, Santa Monica, California 90405.  As this is a joint filing, defense counsel already has a paper copy.

_____/s/_____
MICHAEL W. GRANT
U.S. Department of Justice
Trial Attorney,
Child Exploitation and
Obscenity Section
1400 New York Avenue, NW
Sixth Floor
Washington, DC 20530
(202) 514-6715 (phone)
(202) 514-1793 (fax)
michael.grant@usdoj.gov