MICHAEL W. GRANT
michael.grant@usdoj.gov
Trial Attorney
United States Department of Justice
1400 New York Avenue, NW, Suite 6000
Washington, D.C. 20005

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>IRA ISAACS,<br><br>Defendant. | CR-07-732(A)-GHK<br><br>**GOVERNMENT'S TRIAL MEMORANDUM** |

Plaintiff United States of America, by and through the undersigned attorneys, hereby submits its trial memorandum. The government respectfully reserves the right to submit additional memoranda, if appropriate, to address issues that may arise at trial.

//
//
//
//

1

**CASE SCHEDULING MATTERS**

1. A jury trial in this matter is set for February 28, 2012, at 9:30 a.m., before the Honorable George H. King, United States District Court Judge.
2. The estimated time for the government's case-in-chief is approximately 3 days.
3. The government anticipates, due to the agreed upon stipulations by the parties, calling approximately 4 witnesses in its case-in-chief.
4. The government intends on calling Matthew Goward, a computer forensic specialist, to testify as an expert in its case-in-chief, regarding his forensic examination of the data identified in the parties "Second Stipulation of Fact."
5. The government intends on using a television and DVD player during trial to display the charged videos to the jury. The government also intends on using an Elmo during trial to display evidence to the jury.
6. The defendant is not in custody.

**THE FIRST SUPERSEDING INDICTMENT**

Defendant is charged in a ten-count superseding indictment. Count One charges defendant with engaging in a business of producing with intent to distribute and sell, and selling obscene matter in violation of 18 U.S.C. § 1466(a). Counts Two through Four charge defendant with knowingly using a

facility or means of interstate or foreign commerce for the purpose of sale or distribution of obscene films, in violation of 18 U.S.C. § 1465.  Count Five charges defendant with knowingly using a common carrier to transport obscene material in interstate commerce, in violation of 18 U.S.C. § 1462. Counts Six through Ten charge defendant with knowingly sending or causing to be sent, via United States mail, obscene material, in violation of 18 U.S.C. § 1461.

**STATEMENT OF FACTS**

From at least May 2004 continuing to at least April 14, 2011, in the state of California, the defendant, Ira Isaacs, operated a business engaging in the producing, distributing, transporting, and selling of obscene video and movies.  During this time, the defendant, utilizing the Internet and websites he owned, maintained, and operated, sold and shipped via United Parcel Service ("UPS") and the United States Mail, sexually explicit movies which violates the obscenity laws of the United States.

On or about June 11, 1999, the defendant filed a "Fictitious Business Name Statement" with the Office of the County Clerk in Los Angeles, California providing notice of his intent to conduct business under the fictitious name "L.A. Media."  On or about June 22, 1999, the defendant, doing business as L.A. Media and Stolen Car Films, registered the domain name "scatmovies.com" with Network Solutions, a Virginia

operated business who registers second-level domain names to consumers interested in the domain name. The defendant purchased the exclusive rights of control, access, and creative use of the domain name www.scatmovies.com. The defendant has been the exclusive registered owner and operator of the domain name "scatmovies.com" since on or about June 22, 1999, to the present.

On or about February 11, 2004, the defendant, doing business as L.A. Media and Stolen Car Films, registered the domain name "stolencarfilms.com" with Wild West Domains, an Arizona operated business who registers second-level domain names to consumers interested in the domain names. The defendant purchased the exclusive rights of control, access, and creative use of the domain name www.stolencarfilms.com. The defendant has been the exclusive registered owner and operator of the domain name "stolencarfilms.com" since on or about February 11, 2004, to the present.

On or about May 11, 2004, FBI Special Agent Mark Hunter, in an undercover capacity, using an interactive computer service in California, accessed the Internet in order to make an on-line order from the Internet website www.scatmovies.com. SA Hunter used an undercover credit card and an undercover name and address and ordered/purchased three DVD movies, one of which was "Gang Bang Horse, 'Pony Sex Game'" from the internet site www.scatmovies.com, which at the time of purchase was a website

4

owned and maintained by the defendant and his solely owned California-based business L.A. Media. Thereafter, the defendant, through his company L.A. Media, shipped the three ordered DVDs, via UPS, from his business in Los Angeles to the undercover address in Huntington Beach, California. On or about June 2, 2004, the videos were received by law enforcement.

On or about July 21, 2006, FBI Special Agent William McDermott, while acting in an undercover capacity, using an interactive computer service in Virginia, accessed the Internet in order to make an on-line purchase from the Internet website www.scatmovies.com. SA McDermott used an undercover credit card and an undercover name and address and ordered/purchased four DVDs, one of which was "Mako's First Time Scat," from the internet site www.scatmovies.com, which at the time of purchase was a website owned, operated, and maintained by the defendant and his solely owned California-based company, L.A. Media. Thereafter, the defendant, through his company L.A. Media, shipped the four ordered DVDs, via UPS, from his business in Los Angeles to the undercover address in Huntington Beach, California. On or about August 3, 2006, the videos were received by law enforcement.

On or about October 6, 2006, the defendant filed a "Fictitious Business Name Statement" with the Office of the County Clerk in Los Angeles, California providing notice of his

intent to conduct business under the fictitious name "Stolen Car Films."

On or about October 20, 2006, FBI Special Agent James Myrick, while acting in an undercover capacity, purchased five DVDs from www.stolencarfilms.com utilizing an undercover credit card, name, and shipping address. SA Myrick directed the DVDs be shipped to an undercover address in Alexandria, Virginia. One of the videos that SA Myrick ordered was "Hollywood Scat Amateurs No. 7." Thereafter, the defendant, through his Los Angeles based companies L.A. Media and Stolen Car Films, shipped the five ordered DVDs, via UPS, from California to an undercover address in Alexandria, Virginia. On or about October 23, 2006, the videos were received by law enforcement in Alexandria, Virginia.

On or about January 25, 2011, LAPD Vice Detective Kyle Lewison, logged onto the website www.scatmovies.com, which redirected to www.scatmoviez.com, and checked the site for obscene matter. After observing several sexually explicit DVDs for sale involving bestiality, urination, defecation, and fisting, he made an undercover purchase. Detective Lewison used an undercover credit card and an undercover name and address and ordered/purchased two DVDs, one titled "Hollywood Scat Amateurs No. 38" and one titled "Hollywood Scat Amateurs No. 7," from the internet site www.scatmoviez.com, which at the time of the purchase was a website owned and operated by the defendant and

his solely owned California-based businesses, L.A. Media and Stolen Car Films. Thereafter, the defendant, through L.A. Media and Stolen Car Films, shipped the two DVDs, via United States Mail, to the undercover address in Granada, Hills, California. On or about January 28, 2011, the videos were received by law enforcement. When the package was opened, there was also a DVD titled "Trailers," which contained approximately one-hour of numerous trailers of videos both available for sale and produced by "Stolen Car Films." The videos depict sex acts involving feces and urine.

On March 23, 2011, Detective Lewison again visited the website www.scatmovies.com, which redirected him to www.scatmoviez.com. After observing several sexually explicit DVDs for sale involving bestiality, urination, defecation, and fisting, he made an undercover purchase. Detective Lewison used an undercover credit card and an undercover name and address and ordered/purchased two DVDs, one titled "Hollywood Scat Amateurs No. 10" and one titled "Japanese Doggy 3 Way," from the internet site www.scatmoviez.com, which at the time of the purchase was a website owned and operated by the defendant and his solely owned California-based businesses, L.A. Media and Stolen Car Films. Thereafter, the defendant, through L.A. Media and Stolen Car Films, shipped the two DVDs, via United States Mail, to the undercover address in Granada, Hills, California. On or about April 8, 2011, law enforcement received the ordered videos.

**ELEMENTS OF THE CRIMES CHARGED**

<u>Count One:   Engaging in the Business of Selling Obscene Matter</u>

    (1) Defendant was engaged in the business of producing with intent to distribute or sell obscene matter, or was engaged in the business of selling obscene matter;

    (2) Defendant knew, at the time of engaging in such business, that the materials were of a sexually oriented nature;

    (3) The material had been shipped or transported in interstate or foreign commerce; and

    (4) The material was obscene.

<u>Counts Two-Four:   Production and Transportation of obscene matter for sale or distribution</u>

    (1) Defendant knowingly used a facility or means of interstate or foreign commerce to transport certain materials as described in the indictment;

    (2) Defendant transported such materials for the purpose of selling or distributing them;

    (3) Defendant knew, at the time of such transportation, that the materials were of a sexually oriented nature; and

    (4) The materials were obscene.

<u>Count Five: Importation or Transportation of Obscene Matter</u>
  (1) Defendant knowingly used a common carrier to transport certain materials as described in the indictment in interstate commerce;
  (2) Defendant knew, at the time of such transportation, that the materials were of a sexually oriented nature; and
  (3) The materials were obscene.

<u>Counts Six-Ten: Mailing Obscene Matter</u>
  (1) Defendant knowingly sent or caused to be sent certain material using the United States Mail;
  (2) Defendant knew, at the time of the mailing, that the materials were sexually oriented in nature; and
  (3) The materials were obscene.

**RELEVANT LEGAL DEFINITIONS**

A. To prove a matter is "obscene" the government must satisfy a three-part test:  (1) that the work appeals predominantly to the prurient interest; (2) that it depicts or describes sexual conduct in a patently offensive way; and (3) that the material, taken as a whole, lacks serious literary, artistic, political, or scientific value. *See* <u>Miller v. California</u>, 413 U.S. 15 (1973).

B. An appeal to a "prurient" interest is an appeal to a morbid, degrading, and unhealthy interest in sex, as distinguished from a mere candid interest in sex.  *See* <u>Roth v.

1 United States, 354 U.S. 476, 487 n.20 (1957); *see also* Brockett
2 v. Spokane Arcades, Inc., 472 U.S. 491, 500 n.10 (1985).
3    C. Applying "contemporary community standards" means that
4 jurors should make the decision in the light of contemporary
5 standards that would be applied by the average person in this
6 community, with an average and normal attitude toward, and
7 interest in, sex. *See* Hamling v. United States, 418 U.S. 87,
8 104-06 (1974); *see also* Smith v. United States, 431 U.S. 291,
9 302-03 (1977).
10    D. Matter is "patently offensive" by contemporary community
11 standards if it so exceeds the generally accepted limits of
12 candor in the entire community as to be clearly offensive. *See*
13 Jacobellis v. Ohio, 378 U.S. 184, 191-92 (1964); *see also* Manual
14 Enterprises v. Day, 370 U.S. 478, 482 (1962)(stating to be
15 "patently offensive," material should be "so offensive on their
16 face as to affront current community standards of decency.").
17    E. "Pandering" is the business of purveying textual or
18 graphic matter openly advertised to appeal to the erotic
19 interest of the customer. *See* Ginzburg v. United States, 383
20 U.S. 463, 467 (1966); *see also* United States v. Hamling, 481
21 F.2d 307 (9th Cir. 1973), aff'd 418 U.S. 87 (1974).

**EVIDENTIARY ISSUES**

Stipulations

24    The parties have agreed to three stipulations in this
25 case. Stipulations One and Two are stipulations of fact and the

third stipulation relates to admissibility of evidence.  At this time, the defense has stipulated to the following elements and relevant facts:

    (1)    That at all times alleged in the indictment, the defendant owned and operated the businesses L.A. Media and Stolen Car Films;

    (2)    That at all time alleged in the indictment, the defendant owned, operated, and maintained the websites www.scatmovies.com, www.stolencarfilms.com, and www.scatcinemax.com.

    (3)    That the defendant has used the web hosting service "The Planet" to maintain, store, and host information relating to the domain names "scatmovies.com," "scatcinemax.com," and "stolencarfilms.com" from on or about November 14, 2003 to the present.  At all times relevant to the charges, when the agents accessed and viewed defendant's websites and the materials associated with the websites, the materials were stored and hosted on computer servers maintained by The Planet in Texas.

    (4)    That on the dates alleged in Counts Two and Three, the defendant knowingly used the United Parcel Service ("UPS") to transport the movies/videos described in the indictment;

  (5) That the defendant transported the movies/videos in Counts Two and Three after receiving payment for the ordered movies/videos;

  (6) On or about January 17, 2007, a federal search warrant was executed on the premises of L.A. Media located at 3699 Wilshire Blvd, 1290 A, Los Angeles, CA 90010.  During the execution of the search warrant, members of the FBI created complete, exact, and accurate duplicates of computers belonging to the defendant, doing business as L.A. Media.

At this time, the defendant has further stipulated, without objection, to the admission into evidence, and the use during all stages of the on-going proceedings, the evidence identified in Government and Defendant's Stipulation Regarding Admissibility of Evidence.

## LEGAL ISSUES

A. Knowledge Requirement

The United States Supreme Court and Ninth Circuit have held that it is not necessary for the government to prove that the defendant knew the offending materials to be legally obscene, or believed them to be, in fact obscene.  It is sufficient to satisfy the knowledge element if the jury finds that the defendant was aware of the general contents, character and sexually explicit nature of the materials shipped.  *See* Hamling v. United States, 418 U.S. 87, 123-24 (1974); *see also*

United States v. Hurt, 795 F.2d 765, 773-74 (9th Cir. 1986), *modified on other grounds*, 808 F.2d 707 (9th Cir. 1987); United States v. Sherwin, 572 F.2d 196, 201-02 (9th Cir. 1977).

B. Pandering Evidence

Evidence of "pandering" may be relevant evidence in the determination of whether a work, taken as a whole, is obscene. Evidence of pandering may undermine a claim of serious literary, artistic, political, or scientific value in the work and support a finding of obscenity. As a matter of obscenity law, evidence of pandering to prurient interests in the creation, promotion, or dissemination of material is relevant in determining whether the material is obscene. *See* Splawn v. California, 431 U.S. 595, 598-99 (1977); *see also* Hamling v. United States, 418 U.S. 87, 130-31 (1974); Ginzburg v. United States, 383 U.S. 463, 465-76 (1966); Pinkus v. United States, 436 U.S. 293, 303-04 (1978).

C. Expert Testimony Unnecessary

There is no requirement that the parties prove or disprove the obscenity of the material by expert testimony when the material itself is placed into evidence. The material is the best evidence of what it represents. *See* Paris Adult Theatre I v. Slaton, 413 U.S. 49, 56 (1973); *see also* Kaplan v. California, 413 U.S. 115, 121 (1973).

D. Cross Examination of Defendant

A defendant who testifies at trial waives his right against self-incrimination and subjects himself to cross-

examination concerning all matters reasonably related to the subject matter of his testimony. "The scope of the defendant's waiver is coextensive with the scope of relevant cross-examination." United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992)(citations omitted); United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985)(stating "[w]hat the defendant actually discusses on direct does not determine the extent of permissible cross-examination or of his waiver. Rather, the inquiry is whether 'the government's questions are reasonably related to the subjects covered by the defendant's testimony.'")(citations omitted).

Moreover, Federal Rule of Evidence 404(b) "restricts the use of evidence solely for purposes of demonstrating a criminal proclivity. It does not proscribe the use of other act evidence as an impeachment tool during cross-examination." United States v. Gay, 967 F.2d 322, 328 (9th Cir. 1992).

## SUMMARY OF PRETRIAL RULINGS

A. *Daubert* Ruling

A *Daubert* hearing was held on January 19, 2011. The matter before the Court, on defendant's motion, was defendant's notice of his intent to testify as an expert to designate himself as an expert and the government's motion to exclude the intended "expert" testimony of the defendant. On March 2, 2011, the Court ruled that the defendant's proposed testimony does not meet the required standards for expert testimony and therefore

precluded the defendant from testifying as an expert about the alleged artistic value of the videos.  The Court further explained that the defendant may still be able to testify as a lay-witness about his films and ruled that the defendant's lay testimony would be limited to what he aimed to achieve in creating the videos that he produced.

### B. Relevant Community Standard

On April 1, 2011, the government filed a motion to define the relevant community that applies in this case as the community of the Central District of California. Also, the government respectfully requested the Court define "contemporary community standards" as contemporary standards that would be applied by the average person in the Central District of California, with an average and normal attitude toward, and interest in, sex.  On May 2, 2011, the Court granted the government's motion.

### C. Fair Warning

On April 1, 2011, the government filed a motion requesting the Court instruct defendant, his attorney, and any defense witness to refrain from arguing to the jury, making comments in the presence of the jury, or eliciting testimony suggesting that (1) the defendant did not have "fair warning" and therefore relied on a non-obscene classification of his behavior or (2) the lack of "fair warning" is a permissible

defense to obscenity. On May 2, 2011, the Court granted the government's motion.

### D. Consenting Adults

On April 1, 2011, the government filed a motion requesting the Court instruct the defendant, his attorney, and any defense witness to refrain from making any comment in the presence of the jury, that would directly or indirectly contradict the established rule of law that it is not a defense to a crime of distributing or transporting obscene material that the business sold material only to consenting adults. On May 2, 2011, the Court granted the government's motion.

### E. Imprisonment or Punishment

On April 1, 2011, the government filed a motion requesting the Court instruct the defendant, his attorney, and any defense witness to refrain from making any comment in the presence of the jury that would directly or indirectly contradict the established rule of law that juries are not to consider the possible sentence of a defendant. On May 2, 2011, the Court granted the government's motion.

### F. Alleged Comparable Material

On April 1, 2011, the government filed a motion in opposition of the defendant's intention to use certain evidence at trial and moved the Court to preclude the introduction of any alleged "comparable" material offered by the defendant. The government further identified specific items of evidence,

identified by defendant for use at trial, that the government contended should be excluded as irrelevant, unauthenticated, hearsay, and/or not comparable as defined by law.  On May 2, 2011, the Court granted the government's motion.

G. Motive of the Government

On April 1, 2011, the government filed a motion requesting the Court instruct the defendant, his attorney, and all defense witnesses not to use testimony, remarks, tangible evidence, exhibits, questions or arguments which relate, either directly or indirectly, to any alleged motive of the government in bringing this prosecution, other than the enforcement of federal statutes.  On May 2, 2011, the Court granted the government's motion.

**STIPULATED LEGAL ISSUES**

On October 11, 2011, the parties filed a Joint Consolidated Brief as required by the Court.  The defense agreed, in lieu of government filing applicable motions, to not mention that government counsel were from Washington D.C. nor to offer any evidence, testimony, or argument regarding any suspected political motivation for indicting the defendant on the charged offenses.  *See* Parties Joint Consolidated Brief at Docket 173.

**CONCLUSION**

The government respectfully requests permission to file supplemental trial memoranda as appropriate during trial.

Respectfully Submitted,


_____/s/_____
DAMON A. KING
Deputy Chief
U.S. Department of Justice
Child Exploitation and
Obscenity Section
1400 New York Avenue, NW
Sixth Floor
Washington, DC 20530
(202)307-1982 (phone)
(202)514-1793 (fax)
Damon.king@usdoj.gov


_____/s/_____
MICHAEL W. GRANT
U.S. Department of Justice
Trial Attorney
Child Exploitation and
Obscenity Section
1400 New York Avenue, NW
Sixth Floor
Washington, DC 20530
(202)307-1982 (phone)
(202)514-1793 (fax)
Michael.Grant@usdoj.gov

**CERTIFICATE OF SERVICE**

   I, Michael W. Grant, Trial Attorney with the United States Department of Justice, Criminal Division, hereby certify that the foregoing Government's Trial Memorandum was filed on January 27, 2012, by CM/ECF which will send electronic copies to counsel for the defendant, Roger Jon Diamond, 2115 Main Street, Santa Monica, California 90405.  Also, on January 27, 2012, the Government mailed a paper copy to the counsel of defendant, Roger Jon Diamond, at 2115 Main Street, Santa Monica, California 90405.

                                          _____/s/_____
                                          MICHAEL W. GRANT
                                          U.S. Department of Justice
                                          Trial Attorney,
                                          Child Exploitation and
                                          Obscenity Section
                                          1400 New York Avenue, NW
                                          Sixth Floor
                                          Washington, DC 20530
                                          (202) 514-6715 (phone)
                                          (202) 514-1793 (fax)
                                          michael.grant@usdoj.gov