MICHAEL W. GRANT
michael.grant@usdoj.gov
Trial Attorney
United States Department of Justice
1400 New York Avenue, NW, Suite 6000
Washington, D.C. 20005

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> IRA ISAACS, <br><br> Defendant. | **CR-07-732-GHK** <br><br> **PARTIES JOINT STATUS REPORT REGARDING VULNERABLE VICTIM ADJUSTMENT** |

Pursuant to the Court's Order, dated August 30, 2012, Plaintiff United States of America, through the undersigned counsel, and the Defendant, Ira Isaacs, by and through his counsel of record, Roger Jon Diamond, submit the following joint consolidated brief.

**Government's Position on Vulnerable Victim Adjustment**

Pursuant to the Federal Sentencing Guidelines Manual (November 1, 2011), a "vulnerable victim" is defined as "a person (A) who is a victim of the offense of conviction and any

1

conduct for which the defendant is accountable under § 1.B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1, Application Note 2.[1]

The term "vulnerable victim" therefore includes any individual who suffers harm from not only the offense of conduct but from any relevant conduct from which the defendant is accountable. *See United States v. Haggard*, 41 F.3d 1320, 1326 (9th Cir. 1994)(holding no nexus is required between the identity of the victim and the elements of the crime charged and family members who suffered psychological harm as a result of defendant's lying to them were vulnerable victims even though lying was not an element of any of the crimes defendant was convicted of.); *see also United States v. Zats*, 298 F.3d 182, 187 (3d Cir. 2002) (stating "the drafters of [Application Note 2] obviously intended to define 'victim' to mean anyone hurt by conduct for which the defendant is accountable under § 1B1.3."); *United States v. Yount*, 960 F.2d 955, 956-58 (11th Cir. 1992)

---

[1] Courts have not interpreted the "and" language to require that the victim be harmed by both the underlying conviction and relevant conduct. *See United States v. Zats*, 298 F.3d 182, 187 (3d Cir. 2002)(explaining that the [and] language should not be construed to require harm from the offense of conviction and relevant conduct because the Sentencing Commission "could not have intended to define 'victim' for sentencing purposes more narrowly that for the offense of conviction itself"); *see also United States v. Salahmand*, 651 F.3d 21, 27 (D.C. Cir 2011)("[the defendant] appears to [be arguing] that the 'and' in that sentence requires vulnerable victims to be victims of both the offense of conviction and the relevant conduct. That interpretation, however, directly contradicts the Sentencing Commission's own explanation of why that sentence was added to the Application note.").

(holding that "the 'vulnerable victim' provision does not require a vulnerable victim who is a victim of the offense of conviction.").

The term "Relevant Conduct" is defined by U.S.S.G. § 1B1.3(a)(1)and(3) as "all acts and omissions conducted, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant…that occurred during the commission of the offense of conviction, in preparation of that offense, or in the course of attempting to avoid detection or responsibility for that offense…and all harm that resulted from the acts and omissions specified [above] that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(1)and(3).

Additionally, a person is considered a "vulnerable victim" if that person is unusually vulnerable due to age, physical or mental condition, or is otherwise particularly susceptible to the criminal conduct.  The defendant needs to know or should have known of the victim's unusual vulnerability.  The adjustment would apply, for example, "in a fraud case in which the defendant marketed an ineffective cancer cure or in a robbery in which the defendant selected a handicapped victim." U.S.S.G. § 3A1.1, Application Note 2.

Pursuant to the authority above, it is the government's position that the acts of recruiting, enticing, inducing, instructing, and filming Ms. Tibbetts and Ms. Gray were acts

3

conducted by the defendant in preparation of two of the offenses of conviction, and acts conducted by the defendant that occurred during the commission of one of the offenses of conviction. Specifically, those acts were conducted by the defendant in preparation of: (1) Count Three, knowingly using a common carrier to deliver in interstate commerce obscene matter (Hollywood Scat Amateurs #7 – hereinafter "HSA#7") on or about October 20, 2006; and (2) Count Five, knowingly causing obscene matter (Hollywood Scat Amateurs #10 – hereinafter "HSA#10") to be delivered by mail on or about April 7, 2011.  Those acts were also acts conducted by the defendant that occurred during the commission of Count One, engaging in the business of producing with intent to sell and distribute obscene matter (HSA#7). Therefore, those acts are considered relevant conduct and any harm that came from those acts should be considered in applying the vulnerable victim adjustment.

It is the government's position that Ms. Tibbetts and Ms. Gray are unusually vulnerable victims, pursuant to U.S.S.G. § 3A1.1, because at the time the defendant recruited, enticed, induced, instructed, and filmed Ms. Tibbetts and Ms. Gray, both women were severely addicted to methamphetamine and the defendant not only knew that they were drug addicts, but exploited this mental and physical vulnerability by promising and providing the women with drugs and alcohol in an effort to recruit, entice, and induce them – efforts that were successful.

4

**Government's Evidence**

The government intends to offer the following evidence in support of the position that the vulnerable victim adjustment should apply:

Testimony of Amanda Tibbetts

First, the government will offer the testimony of Ms. Amanda Tibbetts. Ms. Tibbetts will testify, in summary, that she moved to Los Angeles, California in 2004. That once she arrived in Los Angeles, she met Ms. Sarah Gray. At that time, both Ms. Tibbetts and Ms. Gray were addicted to methamphetamine and used other drugs to include marijuana and alcohol. Ms. Gray introduced Ms. Tibbetts to the pornography industry and ultimately to the defendant. The defendant discovered that Ms. Tibbetts was addicted to methamphetamine and frequently used both marijuana and alcohol. After learning this, the defendant began to provide methamphetamine, marijuana, and alcohol to Ms. Tibbetts. Ms. Tibbetts will testify that every time she went to the defendant's house, he provided as much methamphetamine and marijuana as she wanted. She will testify that she smoked methamphetamine in the defendant's house, that he had what seemed to be an endless supply of methamphetamine, and that he did not charge her money for the methamphetamine he supplied her.

Ms. Tibbetts will further testify that initially she refused the defendant's request to take part in scat videos.

1  However, since the defendant continued to provide her with
2  methamphetamine, she agreed to film a scat scene for the
3  defendant.  Ms. Tibbetts will testify that she went to the
4  defendant's house to film HSA#10, with Ms. Gray, and when she
5  arrived, the defendant provided her and Ms. Gray with
6  methamphetamine, marijuana, and alcohol.  At that time, she
7  smoked the methamphetamine provided to her by the defendant.
8  The defendant subsequently asked her and Ms. Gray if they were
9  "high enough" and had enough drugs to take part in the filming
10 of HSA#10.  Ms. Tibbetts will testify that the defendant told
11 her that "he had drugs in his house specifically for the girls
12 so they can get through it."  Ms. Tibbetts will testify that at
13 the time of filming HSA#10, that she was an everyday
14 methamphetamine user and that the defendant knew this and
15 constantly supplied her with large quantities of
16 methamphetamine.
17      Ms. Tibbetts will further testify that once she was under
18 the influence of methamphetamine, marijuana, and alcohol, she
19 filmed the scat video HSA#10.  Ms. Tibbetts will testify that
20 she would have never taken part in the sexual acts filmed in
21 HSA#10 if she had not been addicted to methamphetamine and
22 "high" at the time of the filming.
23      Ms. Tibbetts will testify that she has experienced mental
24 anguish since she took part in HSA#10.  Furthermore, that for
25 years after, she feared going out in public.  She was afraid

people were looking at her and thinking "there is the girl who ate feces." She will testify that she subsequently had to seek professional counseling for her shame, anguish, and fear. Ms. Tibbetts will also testify that she has not spoken to Ms. Gray in years and has never discussed with her the case against the defendant. Ms. Tibbetts will further testify that she never took part in another scat video, is no longer addicted to drugs, and is pursuing a nursing degree.

<u>Detective Kyle Lewison</u>

The government also intends to call Detective Kyle Lewison to testify regarding his interview of Ms. Sarah Gray. Det. Lewison will testify that he interviewed Ms. Gray on June 9, 2011. During the interview, Ms. Gray stated that she moved to Los Angeles in December 2002 and started using marijuana and methamphetamine. By April 2003, she began performing in adult pornography movies in order to support herself and her drug habit. In late 2003, Ms. Gray met the defendant after she responded to a newspaper ad for LA Media. At her first meeting with the defendant at his office, the defendant provided her with marijuana which she smoked in his office. Ms. Gray agreed to film pornographic movies for the defendant at his house. Once she arrived at the defendant's house, he provided her with marijuana and alcohol.

In January or February of 2004, Ms. Gray agreed to participate in scat videos for the defendant. When she arrived

at the defendant's house, the defendant provided her with alcohol, marijuana, and crystal methamphetamine and stated that she could use as much as she needed.  The defendant told Ms. Gray that the drugs were "for the girls."  Ms. Gray stated to Det. Lewison that she felt the defendant "knew she was vulnerable because he knew she was an addict."  After consuming the drugs and alcohol, Ms. Gray took part in the filming of a scat video.

Over the next six months, Ms. Gray made between five to seven scat videos for the defendant (to include HSA#7 and HSA#10).  Ms. Gray performed with different woman and with the defendant in the videos. Each time prior to filming these videos, the defendant provided Ms. Gray with marijuana, methamphetamine, and alcohol.

Det. Lewison will also testify that Ms. Gray informed him that in 2004, she lived with Ms. Tibbetts and at that time they both were drug addicts.  She introduced Ms. Tibbetts to the pornographic industry and to the defendant and they both appeared together in the defendant's video HSA#10.

Ms. Gray informed Det. Lewison that she has since left the pornography industry and no longer uses illegal drugs.  Ms. Gray explained that she does not want to attend court because she is ashamed, and is afraid that her family, her fiancé, and her child will someday learn about what she did.  She told Det. Lewison that she hopes that there will be a time where she can

put this sad chapter of her life behind her. She further informed Det. Lewison that she has not spoken to Ms. Tibbetts in years and has never discussed with her the case against the defendant.

Det. Lewison's report memorializing his interview of Ms. Gray was initially provided to the defense in discovery on October 24, 2011, and was again provided to the defense on September 10, 2012.

### Charged Videos

The government further requests the Court consider the videos HSA#7 and HSA#10 admitted at trial as Government Exhibit 19 and Government Exhibit 37 respectively.  Specifically, the government requests the Court consider the manner in which the women interacted with others in the videos, their lack of coordination and balance, their speech, and their overall affect, as evidence corroborating the testimony and statements of Ms. Tibbetts and Ms. Gray.

### **Defendant's Response**

The defense has provided the following information to the government, via email, to include as the defense's submission.

In response to the Court directives and pursuant to our meet and confer telephone conference of September 10, 2012 please be advised that the defendant objects to the proposed testimony and evidence.

1  The obscenity law focuses on the nature and character of
2 the material distributed.  The participants in the making of an
3 obscene movie are not the victims.  The victim in an obscenity
4 case would be at most the recipient of the obscene movies if the
5 movies are distributed to people who have not ordered or
6 requested them.
7  Other than the recipient, there are no identifiable
8 victims in obscenity cases.  The theoretical basis for the
9 obscenity law is the protection of the public morality.  The
10 theory is that society as a whole suffers.
11  By calling Amanda Tibbetts and Sarah Gray, the government
12 would be attempting to utilize the consenting adults in the
13 movie as so called "victims."
14  Defendant Isaacs is not charged with rape or committing
15 any crimes upon Tibbetts or Gray.  Neither one comes within the
16 sentencing guideline theory upon which you intend to call these
17 witnesses.
18  With respect to witnesses, time does not permit searching
19 for, locating, and interviewing potential witnesses to discredit
20 Amanda Tibbetts and Sarah Gray.  The government should not be
21 able to convert an obscenity trial into a totally different
22 trial involving unfounded accusations against Mr. Isaacs.
23  I cannot even determine when the movies were made and
24 therefore which particular sentencing guidelines even apply.
25 //

1          With respect to alleged subsequent sales of movies, the
2   defense objects on the ground that the subsequent sale of a
3   movie does not detract from acceptance of responsibility.  The
4   movies were not the titles which were the subject of the
5   indictment.  In any event, the web site has been taken down as
6   far as I know and there have been no further distributions of
7   any similar movies.  As far as I can determine defendant Isaacs
8   has not yet been convicted of a crime because he has not yet
9   been sentenced.  A number of years ago then Lt. Governor Ed
10  Reinecke was found guilty by a jury in the federal court in
11  Washington, D.C. but until he was sentenced he was not
12  considered to have been convicted of a crime in California, at
13  least with respect to the question of whether he was eligible to
14  continue occupying the office of Lt. Governor.  See Helena
15  Rubenstein International v. Younger, 71 Cal.App.3d 406 (1977).
16  In this particular case there have been additional sales of any
17  type of movie that arguably would be covered by the verdict.
18         As stated earlier, when the FBI conducted the raid of Mr.
19  Isaacs' office he readily admitted at that time that he was
20  responsible for the distribution of the movies.  He reiterated
21  that position in court a few times when he testified in pretrial
22  proceedings and at two trials.  He has always accepted
23  responsibility.
24  //
25  //

**Witnesses and Cross-Examination**

The government plans to call Amanda Tibbetts and Det. Kyle Lewison as witnesses. The defense reserves the right to call the defendant as a witness. Both parties intend to cross-examine witnesses offered by the opposing party.

Respectfully Submitted,

_____/s/_____
ROGER JON DIAMOND
Attorney for Defendant
IRA ISAACS


_____/s/_____
DAMON A. KING
U.S. Department of Justice
Deputy Chief
Child Exploitation and
Obscenity Section
1400 New York Avenue, NW
Sixth Floor
Washington, DC 20530
(202) 514-6715 (phone)
(202) 514-1793 (fax)
damon.king@usdoj.gov


_____/s/_____
MICHAEL W. GRANT
U.S. Department of Justice
Trial Attorney
Child Exploitation and
Obscenity Section
1400 New York Avenue, NW
Sixth Floor
Washington, DC 20530
(202)307-1982 (phone)
(202)514-1793 (fax)
Michael.Grant@usdoj.gov

**CERTIFICATE OF SERVICE**

I, Michael W. Grant, Trial Attorney with the United States Department of Justice, Criminal Division, hereby certify that the foregoing Parties Joint Status Report Regarding Vulnerable Victim Adjustment was filed on September 20, 2012, by CM/ECF which will send electronic copies to counsel for the defendant, Roger Jon Diamond, 2115 Main Street, Santa Monica, California 90405. Also, on September 20, 2012, the Government mailed a paper copy to the counsel of defendant, Roger Jon Diamond, at 2115 Main Street, Santa Monica, California 90405.

```
_____/s/_____
```
MICHAEL W. GRANT
U.S. Department of Justice
Trial Attorney,
Child Exploitation and
Obscenity Section
1400 New York Avenue, NW
Sixth Floor
Washington, DC 20530
(202) 514-6715 (phone)
(202) 514-1793 (fax)
michael.grant@usdoj.gov