1  MICHAEL W. GRANT
   michael.grant@usdoj.gov
2  Trial Attorney
   United States Department of Justice
3  1400 New York Avenue, NW, Suite 6000
   Washington, D.C. 20005

4

5

6                    UNITED STATES DISTRICT COURT

7                  CENTRAL DISTRICT OF CALIFORNIA

8
                                      )
9      UNITED STATES OF AMERICA,      )
                                      )
10           Plaintiff,               )
                                      )  **CR-07-732-GHK**
11              vs.                    )
                                      )  **DECLARATION OF EXPECTED**
12     IRA ISAACS,                     )  **TESTIMONY BY AMANDA TIBBETTS**
                                      )
13           Defendant.               )
                                      )
14                                     )
                                      )
15 ──────────────────────────────────)

16
       Pursuant to the Court's Order, dated August 30, 2012,
17
   Plaintiff United States of America, through the undersigned
18
   counsel, submits the following Declaration of Expected Testimony
19
   for Amanda Tibbetts. When called to testify at the defendant's
20
   sentencing hearing, Ms. Amanda Tibbetts is expected to testify
21
   as follows:
22

23      She is 30-years-old and currently resides in Los Angeles,
24
   California. She moved to Los Angeles at the end of 2003 and has
25
   lived in the Los Angeles area for approximately ten years.  She

                                 1

1  is a high school graduate and is currently attending college and

2  taking nursing classes.  She hopes to complete her classes and

3  to secure a nursing degree.  Her current profession is as a

4  student.

5        Prior to arriving in Los Angeles, she lived in Atlanta,

6  Georgia with her grandparents who raised her after her parents

7  abandoned her when she was six-months-old.

8        When she arrived in Los Angeles, Ms. Tibbetts was

9  introduced to the drug culture and started regularly using drugs

10  to include methamphetamine, marijuana, and alcohol.  At that

11  time, she also met Ms. Sarah Gray.  Shortly after meeting, she

12  moved in with Ms. Gray and they became full-time roommates.  At

13  that time, both Ms. Gray and Ms. Tibbetts were addicted to

14  methamphetamine and used other drugs.  Once the friendship

15  started, Ms. Gray confided in Ms. Tibbetts that she was in the

16  pornography industry.  Ms. Gray then introduced Ms. Tibbetts to

17  the pornography industry.  Ms. Tibbetts became involved in the

18  pornography business for the money.

19        Initially, Ms. Tibbetts took part in five or six "main

20  stream" pornography films.  These included traditional sex

21  scenes.  Then Ms. Gray suggested that she meet the defendant who

22  Ms. Gray told her filmed pornography films, to include scat

23  videos.  Ms. Gray told Ms. Tibbetts that the defendant paid for

24  "regular" scenes but paid more for scat videos.  At that time,

25  Ms. Tibbetts needed money to pay her bills and to maintain her

1  drug habit.

2      Ms. Gray introduced Ms. Tibbetts to the defendant by

3  taking her to his office, L.A. Media, in Los Angeles.  When they

4  arrived, they discussed the porn industry.  The defendant

5  provided both Ms. Gray and Ms. Tibbetts with marijuana, which

6  they smoked in the defendant's office.  At that time, the

7  defendant learned that Ms. Tibbetts, like Ms. Gray, was addicted

8  to methamphetamine.  At that meeting, she agreed to film a

9  "regular" sex scene with the defendant.

10      Ms. Tibbetts went over to the defendant's house on

11  numerous occasions to "hang out" including prior to the

12  defendant filming videos in which Ms. Tibbetts took part in.

13  During these visits the defendant always provided her and Ms.

14  Gray with methamphetamine, marijuana, and alcohol.  Ms. Tibbetts

15  smoked methamphetamine in the defendant's house and the

16  defendant had what seemed to be an endless supply of

17  methamphetamine.  The defendant did not charge her money for the

18  methamphetamine he gave to her.

19      A short time after she met the defendant, she went to his

20  house in the Hollywood Hills to film a "regular" porn scene.

21  The defendant paid her to film two "regular" scenes with the

22  defendant and Ms. Gray assisted with the camera.  After filming

23  the scenes, the defendant asked her to film scat scenes.

24      Ms. Tibbetts initially refused the defendant's request to

25  take part in scat videos.  However, since the defendant

1  continued to provide her with methamphetamine, she agreed to

2  film a scat scene for the defendant.  Ms. Tibbetts had a

3  conversation with the defendant in which he stated the following

4  or words to the effect of the following: "It isn't that bad.

5  There are a lot of sick folks out in the world and nobody is

6  catering to them.  I have a corner on this market.  I can make

7  these films and make millions.  I can't imagine why they want

8  it, but they do."  After this conversation and others, Ms.

9  Tibbetts agreed to film a scat scene.

10       Ms. Tibbetts went to the defendant's house to film HSA#10

11  with Ms. Gray.  When Ms. Tibbetts arrived the defendant provided

12  her and Ms. Gray with methamphetamine, marijuana, and alcohol.

13  At that time, Ms. Tibbetts smoked the methamphetamine provided

14  to her by the defendant.  The defendant subsequently asked her

15  and Ms. Gray if they were "high enough" and had enough drugs to

16  take part in the filming of HSA#10.  The defendant told her that

17  "he had drugs in his house specifically for the girls so they

18  can get through it."  At the time of filming HSA#10, Ms.

19  Tibbetts was an everyday methamphetamine user.  The defendant

20  knew this fact and constantly supplied her with large quantities

21  of methamphetamine.  The defendant did not charge her for any of

22  the methamphetamine that he provided her.

23       Once Ms. Tibbetts was under the influence of

24  methamphetamine, marijuana, and alcohol, she and Ms. Gray filmed

25  the scat video HSA#10.  Ms. Tibbetts would have not taken part

4

1  in the acts filmed in HSA#10 if she had not been addicted to

2  methamphetamine and been "high" at the time of the filming.

3        After the filming of HSA#10, she never participated in

4  any other films or scenes with the defendant.  Shortly after the

5  filming, Ms. Tibbetts spoke to the defendant on behalf of Ms.

6  Gray.  Ms. Tibbetts asked the defendant if he would loan Ms.

7  Gray $1000 to pay rent and outstanding bills.  The defendant

8  made the loan and subsequently asked Ms. Tibbetts to make

9  payment on Ms. Gray's behalf.  Ms. Tibbetts declined and her

10 relationship with the defendant ceased.  Ms. Tibbetts then went

11 on to work in the "main stream" pornography industry and went by

12 the stage name "Veronica Jett".  Ms. Tibbetts never again did

13 any scat scenes.  Ms. Tibbetts later learned that the defendant

14 was selling HSA#10 under her stage name Veronica Jett, had

15 purchased the website www.veronicajett.com, and had started

16 selling HSA#10 on that website.  Ms. Tibbetts contacted the

17 defendant and asked him to stop selling the videos on

18 veronicajett.com, at which time the defendant said he would only

19 stop selling the video under "Veronica Jett" if Ms. Tibbetts

20 would pay him $10,000.  Ms. Tibbetts refused to pay the

21 defendant and the defendant continued to sell the videos on his

22 websites, to include veronicajett.com.

23       Ms. Tibbetts has experienced emotional distress since she

24 took part in HSA#10.  For years afterward, she feared going out

25 in public because she was afraid people were looking at her and

5

1   thinking "there is the girl who ate feces."  Ms. Tibbetts

2   subsequently sought professional counseling for her shame,

3   anguish, and fear.  Ms. Tibbetts has not spoken to Ms. Gray in

4   years and has never discussed with her the case against the

5   defendant.  Ms. Tibbetts never took part in another scat video,

6   is no longer in the pornography industry, is not now addicted to

7   drugs, and is pursuing a nursing degree.

8

9                                    Respectfully Submitted,

10                                   _____/s/_____
                                     DAMON A. KING
11                                   U.S. Department of Justice
                                     Deputy Chief
12                                   Child Exploitation and
                                     Obscenity Section
13                                   1400 New York Avenue, NW
                                     Sixth Floor
14                                   Washington, DC 20530
                                     (202) 514-6715 (phone)
15                                   (202) 514-1793 (fax)
                                     damon.king@usdoj.gov
16

17

18                                   _____/s/_____
                                     MICHAEL W. GRANT
19                                   U.S. Department of Justice
                                     Trial Attorney
20                                   Child Exploitation and
                                     Obscenity Section
21                                   1400 New York Avenue, NW
                                     Sixth Floor
22                                   Washington, DC 20530
                                     (202)307-1982 (phone)
23                                   (202)514-1793 (fax)
                                     Michael.Grant@usdoj.gov
24

25

**CERTIFICATE OF SERVICE**

I, Michael W. Grant, Trial Attorney with the United States Department of Justice, Criminal Division, hereby certify that the foregoing Declaration of Expected Testimony by Amanda Tibbetts was filed on September 26, 2012, by CM/ECF which will send electronic copies to counsel for the defendant, Roger Jon Diamond, 2115 Main Street, Santa Monica, California 90405. Also, on September 26, 2012, the Government mailed a paper copy to the counsel of defendant, Roger Jon Diamond, at 2115 Main Street, Santa Monica, California 90405.

_____/s/_____
MICHAEL W. GRANT
U.S. Department of Justice
Trial Attorney,
Child Exploitation and
Obscenity Section
1400 New York Avenue, NW
Sixth Floor
Washington, DC 20530
(202) 514-6715 (phone)
(202) 514-1793 (fax)
michael.grant@usdoj.gov