1           **UNITED STATES DISTRICT COURT**

2           **CENTRAL DISTRICT OF CALIFORNIA**

3           **WESTERN DIVISION**

4    **THE HONORABLE GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE**

5

6 **UNITED STATES OF AMERICA,**    )
                           )

7        **PLAINTIFF,**    )
                           )

8      **VS.**        )    **NO. CR 07-732(A)-GHK**
                           )

9 **IRA ISAACS,**          )
                           )

10        **DEFENDANT.**    )
_____)

11

12

13       **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

14         **LOS ANGELES, CALIFORNIA**

15    **WEDNESDAY, JANUARY 16, 2013; A.M. SESSION**

16          <u>**SENTENCING TRANSCRIPT**</u>

17      **PAGES 1 THROUGH 58, INCLUSIVE**

18

19

20

21

22

23                   **MARY RIORDAN RICKEY**
                      **OFFICIAL COURT REPORTER**

24                   **255 EAST TEMPLE STREET**
                      **ROOM 181-G**

25                   **LOS ANGELES, CA  90012**
                      **MARY.USDC@YAHOO.COM**

1    APPEARANCES OF COUNSEL:

2    FOR PLAINTIFF:

3         UNITED STATES DEPARTMENT OF JUSTICE
          CHILD EXPLOITATION AND OBSCENITY SECTION
4         BY:  MICHAEL W. GRANT, DEPUTY ATTORNEY GENERAL
               JEANETTE GUNDERSON, TRIAL ATTORNEY
5         1400 NEW YORK AVENUE NW
          SIXTH FLOOR
6         WASHINGTON, DC  20005
          202-353-7304

7

8    FOR DEFENDANT:

9         ROGER J. DIAMOND LAW OFFICES
          BY:  ROGER JON DIAMOND, ATTORNEY AT LAW
10        2115 MAIN STREET
          SANTA MONICA, CALIFORNIA  90405
11        310-399-3259

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                     **I N D E X**

2  **PROCEEDINGS**                                    **PAGE**

3  CASE CALLED                                          4

4  DISCUSSION RE UNDER-SEAL ITEM                        5

5  COURT ADDRESSES DEFENDANT                            9

6  DEFENSE OBJECTIONS                                   12

7  DEFENSE ARGUMENT                                     13

8  COURT ADDRESSES DEFENDANT                            25

9  GOVERMENT'S ARGUMENT RE SENTENCE                     26

10  DEFENSE ARGUMENT RE SENTENCE                        38

11  GOVERNMENT'S FURTHER ARGUMENT RE SENTENCE           41

12  DISCUSSION RE FORFEITURE ORDER                      42

13  COURT DENIES REQUEST FOR 2-LEVEL DECREASE           42

14  COURT SUSTAINS OBJECTION RE P.S.R. CORRECTION       44

15  SENTENCE PRONOUNCED                                 50

16  TERMS AND CONDITIONS OF SUPERVISED RELEASE          52

17  ADVISEMENT OF DEFENDANT'S APPEAL RIGHTS             55

18

19

20

21

22

23

24

25

JANUARY 16, 2013
SENTENCING PROCEEDINGS

```
 1          LOS ANGELES, CALIFORNIA, WEDNESDAY, JANUARY 16, 2013

 2                          9:37 A.M.

 3                          -oOo-

 4          THE CLERK:  CALLING ITEM NO. 1 ON THE COURT'S

 5   CALENDAR, CRIMINAL 07-732(A)-GHK, UNITED STATES OF AMERICA

 6   VERSUS IRA ISAACS.

 7          COUNSEL, WOULD YOU PLEASE STATE YOUR APPEARANCES

 8   FOR THE RECORD.

 9          MR. GRANT:  GOOD MORNING, YOUR HONOR.

10   MICHAEL GRANT AND JEANETTE GUNDERSON ON BEHALF OF THE

11   UNITED STATES.

12          THE COURT:  YES, GOOD MORNING.

13          MR. DIAMOND:  GOOD MORNING, YOUR HONOR.

14   ROGER DIAMOND WITH IRA ISAACS, WHO IS PRESENT.

15          THE COURT:  YES, GOOD MORNING.

16          ALL RIGHT.  THIS MATTER'S ON THE COURT'S CALENDAR

17   TO CONSIDER THE PRESENTENCE REPORT AND FOR IMPOSITION OF

18   SENTENCE.

19          ANY LEGAL CAUSE WHY SENTENCE SHOULD NOT NOW BE

20   PRONOUNCED?

21          MR. GRANT?

22          MR. GRANT:  NO, YOUR HONOR.

23          THE COURT:  MR. DIAMOND?

24          MR. DIAMOND:  NO, YOUR HONOR.

25          THE COURT:  ALL RIGHT.  LET ME FIRST MAKE SURE I
```

1  UNDERSTAND WHERE WE ARE.

2          FIRST OF ALL, LET ME ASK YOU, MR. DIAMOND:

3          THE GOVERNMENT HAD FILED ON SEPTEMBER 12, 2012, A

4  FILING CALLED "GOVERNMENT'S RESPONSE TO THE COURT'S ORDER RE

5  DEFENDANT'S POST-VERDICT SALES OF OBSCENE VIDEOS."

6          AND IN THAT FILING, THE GOVERNMENT HAD SET FORTH A

7  PROFFER OF WHAT DETECTIVE LEWISON WOULD SAY IN TERMS OF HIS

8  PURCHASE FROM YOUR CLIENT OF VARIOUS VIDEOS SUBSEQUENT TO

9  HIS CONVICTION, AND THERE ARE ALSO CERTAIN ATTACHMENTS TO

10 THE GOVERNMENT'S RENDITION OF IT.

11         DO YOU CHALLENGE THE FACTS OF THOSE SALES AND

12 PURCHASES?

13         **MR. DIAMOND:** NO, YOUR HONOR.

14         **THE COURT:** OKAY.  ALL RIGHT.

15         THEN THE OTHER THING IS -- I DON'T KNOW WHETHER

16 YOU'VE SEEN IT.  I SUSPECT THAT YOU HAVE.

17         THERE WAS AN UNDER-SEAL FILING JUST LAST WEEK BY

18 THE GOVERNMENT RELATING TO ONE OF THE PERFORMERS IN ONE OF

19 THE VIDEOS, AND IT MAKES CERTAIN ASSERTIONS OF FACT AS

20 AGAINST YOUR CLIENT.

21         THESE ARE NOT BEING PRESENTED IN SUPPORT OF ANY

22 KIND OF A VULNERABLE VICTIM ENHANCEMENT BECAUSE THE

23 GOVERNMENT HAS WITHDRAWN THAT REQUEST, AND I CAN TELL YOU I

24 DO NOT INTEND TO ASSESS THAT.  SO THAT'S REALLY MOOT.

25         BUT, NEVERTHELESS, IT APPEARS THAT PERHAPS IT'S

1    BEING PROFFERED GENERALLY ON THE 3553(A) FACTORS.

2              DO YOU HAVE ANY OBJECTION TO THAT?

3         **MR. DIAMOND:**  WE DO OBJECT TO THE STATEMENTS BY

4    THE ALLEGED VICTIM BECAUSE WE DON'T BELIEVE IT HAS ANY ROLE

5    OR PLACE IN THIS PARTICULAR CASE.

6         **THE COURT:**  WELL, DO YOU CHALLENGE THE FACTUAL

7    ASSERTIONS?  BECAUSE THERE ARE TWO DIFFERENT THINGS.

8              ONE IS WHETHER YOU CHALLENGE THE FACTUAL

9    ASSERTIONS; THE OTHER IS WHETHER YOU CHALLENGE THAT,

10   LEGALLY, IT IS NOT RELEVANT.

11             I THINK IF YOU CHALLENGE IT AS LEGALLY NOT

12   RELEVANT, YOU'RE WRONG BECAUSE IT IS RELEVANT FOR THE

13   3553(A) FACTORS, WHICH WOULD INCLUDE BUT NOT BE LIMITED TO

14   THOSE THINGS AS THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

15   AS WELL AS THE RELEVANT CONDUCT, THE BACKGROUND, HISTORY,

16   AND CHARACTERISTICS OF YOUR CLIENT, INCLUDING PERHAPS OTHER

17   FACTORS UNDER 3553(A) INCLUDING JUST PUNISHMENT, DETERRENCE,

18   PROTECTING THE PUBLIC.

19             SO TO THE EXTENT IF YOU ARE MAKING THAT LEGAL

20   ARGUMENT, I'M GOING TO OVERRULE THAT BECAUSE I THINK IT IS

21   NOT IRRELEVANT; BUT IF YOU CHALLENGE THE FACTS, THAT'S A

22   DIFFERENT MATTER.

23             DO YOU CHALLENGE ANY OF THE FACTUAL ASSERTIONS?

24        **MR. DIAMOND:**  YES.

25        **THE COURT:**  WELL, I DON'T SEE ANYTHING THAT YOU

1    HAVE PROPOSED THAT PUTS IT AT ISSUE.  I DON'T HAVE ANYTHING

2    FROM YOUR CLIENT THAT SAYS THE CONTRARY.  I DON'T HAVE, YOU

3    KNOW, MUCH LESS ANY KIND OF A DECLARATION.  EVEN WITHOUT A

4    DECLARATION, I HAVE NOTHING FROM HIM.

5         **MR. DIAMOND:**  WE DID NOT KNOW FOR CERTAIN HOW THE

6    COURT WOULD RULE ON THE RELEVANCE ISSUE, AND THEREFORE WE

7    DID NOT WANT TO PUT ANY FACTUAL STATEMENT IN IF IT WERE NOT

8    NECESSARY TO DO SO.  BUT SINCE THE COURT HAS NOW DETERMINED

9    THAT IT IS RELEVANT --

10        **THE COURT:**  OR IT CAN BE RELEVANT FOR PURPOSES OF

11   MY ANALYSIS UNDER THE 3553(A) FACTORS.

12        **MR. DIAMOND:**  FIRST, I WOULD LIKE TO INQUIRE OF

13   THE COURT AS TO WHETHER, SINCE IT WAS FILED UNDER SEAL, WE

14   ARE PERMITTED TO DISCUSS IT IN OPEN COURT.  I'M NOT SURE

15   WHETHER THEY SHOULD DO THAT.

16        **THE COURT:**  WELL, I DON'T THINK WE SHOULD BE

17   DISCUSSING IT IN OPEN COURT WITH RESPECT TO THE PARTICULARS

18   FOR WHICH WE PUT IT UNDER SEAL.

19        THE GENERAL SUBJECT IN TERMS OF THE STATEMENT, NOT

20   THE NATURE OF THE STATEMENT, BUT THE FACT THAT THERE WAS A

21   STATEMENT AND THE STATEMENT ASSERTED CERTAIN FACTS, THAT'S A

22   SEPARATE ISSUE.

23        LET ME FIRST INQUIRE OF MR. GRANT WHETHER OR NOT

24   YOU REALLY INTEND TO -- BECAUSE IT SOUNDS LIKE, IF

25   NECESSARY, MR. ISAACS IS WILLING TO PUT CERTAIN MATTERS AT

1  ISSUE; AND THEN, ONCE IT'S AT ISSUE, IF YOU WANT THE COURT

2  TO MAKE A FACTUAL FINDING ON THAT, WE CERTAINLY WOULD HAVE

3  TO HAVE AN EVIDENTIARY HEARING.  WE WOULD CERTAINLY HAVE TO

4  HAVE CROSS-EXAMINATION.

5  　　　　　FRANKLY, I'M NOT SO SURE THAT ALL OF THAT IS

6  NECESSARY.  I HAVEN'T REALLY DECIDED WHETHER THAT REALLY IS

7  NECESSARY, BUT I WANT TO SEE WHAT YOUR POSITION IS ON THAT.

8  　　　　　**MR. GRANT:**  YOUR HONOR, HAVING FILED THAT DOCUMENT

9  UNDER SEAL AND NOT RECEIVING A RESPONSE FROM MR. DIAMOND, WE

10  ALSO INFORMED HIM VIA TELEPHONE THAT THAT WAS GOING TO

11  HAPPEN.

12  　　　　　IT'S THE GOVERNMENT'S POSITION THAT IT'S PROPERLY

13  IN FRONT OF THE COURT UNDER 18 U.S.C. 3553(A).  WE HAVE THE

14  PERSON AVAILABLE IF WE NEED TO GO DOWN THAT ROAD, BUT I

15  DON'T SEE WHERE THE LEGAL ARGUMENT OF WHY WE NEED TO DO

16  THAT.

17  　　　　　I MEAN, IT'S BEEN SUBMITTED TO THE COURT.  AND,

18  YOU KNOW, YOUR HONOR, UNDER NINTH CIRCUIT LAW, YOU HAVE

19  UNFETTERED DISCRETION TO CONSIDER THAT STATEMENT, AND I'M

20  POINTING TO U.S. V. GAMMA TECH INDUSTRIES.

21  　　　　　**THE COURT:**  WELL, I CAN CERTAINLY REFER TO THAT

22  STATEMENT, I CAN CONSIDER THAT STATEMENT IF I WANT AS LONG

23  AS I DETERMINE THAT IT IS REASONABLY RELIABLE; BUT ONCE IT

24  IS CHALLENGED AND SPECIFICALLY CHALLENGED AS TO DISCRETE

25  FACTUAL ASSERTIONS, I THINK IT'S ONLY FAIR THAT THE

```
1   DEFENDANT WOULD HAVE AN OPPORTUNITY TO CROSS-EXAMINE SO THAT

2   THE COURT COULD DETERMINE THAT.

3           YOU KNOW, IF THERE IS NO OPPOSITION, NO CONTRARY

4   ASSERTION, THEN CERTAINLY, I CAN RELY ON IT BECAUSE I CAN

5   DETERMINE THAT TO BE REASONABLY RELIABLE.  BUT YOU KNOW

6   WHAT, THIS CASE HAS BEEN GOING ON FOR A LONG TIME.  I'M NOT

7   INCLINED TO GO AHEAD AND CONTINUE IT AND HAVE ANOTHER

8   HEARING AND SO FORTH.

9           WHAT I'M GOING TO DO IS, FOR PRESENT PURPOSES, I'M

10  NOT GOING TO CONSIDER THE STATEMENT OF THE INDIVIDUAL

11  BECAUSE IT WOULD BE UNFAIR FOR ME TO CONSIDER IT WITHOUT

12  GIVING YOU FOLKS A CHANCE TO CHALLENGE IT ON A FACTUAL

13  BASIS.  AND TO IGNORE THE NEED FOR THAT, I'M NOT CONSIDERING

14  THAT AT ALL WITH RESPECT TO ANY OF THE 3553(A) FACTORS.

15          ALL RIGHT.  SO LET'S GO AHEAD AND PROCEED WITH

16  SENTENCING AT THIS TIME, AND WOULD YOU AND YOUR CLIENT

17  PLEASE APPROACH THE LECTERN.

18          ALL RIGHT.  IS IRA ISAACS YOUR TRUE NAME?

19          THE DEFENDANT:  I'M SORRY?

20          THE COURT:  IS IRA ISAACS YOUR TRUE NAME?

21          THE DEFENDANT:  YES.

22          THE COURT:  PULL THE MICROPHONE CLOSER TO YOU AND

23  SPEAK INTO IT.

24          MR. ISAACS, HAVE YOU HAD AN OPPORTUNITY TO REVIEW

25  THE PRESENTENCE REPORT PREPARED BY THE PROBATION OFFICER,
```

1    INCLUDING THE ADDENDUM, AS WELL AS ALL OF THE PAPERS FILED

2    BY THE PARTIES REGARDING SENTENCING?

3              **THE DEFENDANT:**  YES, YOUR HONOR.

4              **THE COURT:**  AND HAVE YOU HAD A FULL OPPORTUNITY TO

5    DISCUSS ALL OF THE SENTENCING MATTERS WITH YOUR LAWYER?

6              **THE DEFENDANT:**  YES, YOUR HONOR.

7              **THE COURT:**  AND ARE YOU READY TO PROCEED WITH

8    SENTENCING AT THIS TIME?

9              **THE DEFENDANT:**  YES, YOUR HONOR.

10             **THE COURT:**  MR. DIAMOND, I ASSUME THAT YOU HAVE,

11   OF COURSE, READ ALL OF THE SENTENCING PAPERS WHETHER FILED

12   BY THE PROBATION OFFICER OR THE PARTIES.  RIGHT?

13             **MR. DIAMOND:**  YES, YOUR HONOR.

14             **THE COURT:**  AND HAVE YOU HAD A FULL OPPORTUNITY TO

15   REVIEW THESE MATTERS WITH YOUR CLIENT?

16             **MR. DIAMOND:**  YES, YOUR HONOR.

17             **THE COURT:**  AND TO THE EXTENT THAT HE MAY HAVE HAD

18   ANY OBJECTIONS, MODIFICATIONS, OR ADDITIONS TO ANY OF THE

19   SENTENCING PAPERS, YOU WOULD HAVE REFLECTED THOSE IN YOUR

20   OWN POSITION PAPERS.  CORRECT?

21             **MR. DIAMOND:**  YES, YOUR HONOR.

22             **THE COURT:**  LET ME JUST SORT OF BRIEFLY REVIEW FOR

23   YOU WHAT -- OR SUMMARIZE FOR YOU WHAT I BELIEVE TO BE YOUR

24   POSITION.  AND THEN, OF COURSE, I WILL GIVE YOU A FULL

25   OPPORTUNITY TO SPEAK ON BEHALF OF YOUR CLIENT.  AND THEN, OF

1    COURSE, I'LL HEAR FROM HIM AS WELL BEFORE WE IMPOSE

2    SENTENCE.

3              YOUR POSITIONS ARE AS FOLLOWS FROM MY REVIEW OF

4    YOUR PAPERS:

5              THAT YOU BELIEVE THAT MR. ISAACS SHOULD

6    NEVERTHELESS BE GIVEN A MINUS-2 FOR ACCEPTANCE OF

7    RESPONSIBILITY, LARGELY BASED UPON THE ARGUMENT THAT WHILE

8    HE DID GO TO TRIAL, HE NEVERTHELESS ADMITTED ALL OF THE

9    FACTUAL UNDERPINNINGS;

10             THAT IS, THE FACT THAT HE HAD BEEN IN CONTROL OF

11   THE BUSINESS; THAT HE HAD PRODUCED SOME OF THESE VIDEOS;

12   THAT HE HAD SENT THEM IN THE MAIL AND BY OTHER CARRIERS AND

13   SO FORTH; AND THAT THE ONLY ISSUE REMAINING FOR TRIAL WAS

14   JUST WHETHER OR NOT THESE VIDEOS WERE LEGALLY OBSCENE.

15             SECOND, YOU BELIEVE THAT THERE SHOULD NOT BE AN

16   ENHANCEMENT OF PLUS-4 FOR ROLE BECAUSE YOU MAKE A CERTAIN

17   ARGUMENT THAT HE NEVER HAD FIVE OR MORE PARTICIPANTS IN THIS

18   OFFENSE AT ANY ONE TIME.

19             YOU SAID THAT BETWEEN '05 AND '07, HE EMPLOYED

20   ONLY TWO TO THREE EMPLOYEES AT ANY ONE TIME; 07 TO '11, ONLY

21   ONE PERSON EMPLOYED; AND THAT THE PERFORMERS WERE

22   PURPORTEDLY INDEPENDENT CONTRACTORS, NOT EMPLOYEES.

23             NEXT, YOU SEEK PROBATION ON BEHALF OF YOUR CLIENT

24   BECAUSE OF THE VARIOUS ARGUMENTS UNDER 3553(A).

25             AND LASTLY, YOU HAVE A MINOR OBJECTION BECAUSE THE

1    PROBATION OFFICER MISTAKENLY SAID THAT HE HAD GRADUATED FROM

2    N.Y.U. AS OPPOSED TO A STATE UNIVERSITY COLLEGE.

3              **MR. DIAMOND:**  YES, YOUR HONOR.

4              **MR. ISAACS:**  YES.

5              **THE COURT:**  AND SO THAT'S YOUR OBJECTION.

6              DOES THAT ADEQUATELY SUMMARIZE YOUR PAPERS THAT

7    YOU HAVE SUBMITTED?

8              **MR. DIAMOND:**  YES, YOUR HONOR.

9              **THE COURT:**  THEN LET ME ALSO ASK YOU WHETHER OR

10   NOT YOU HAVE ANY OBJECTION TO THE PROBATION OFFICER'S

11   ASSESSMENT OR RECOMMENDATION THAT IN ADDITION TO ANY TERM OF

12   IMPRISONMENT, IF ANY, THAT THERE SHOULD ALSO BE A THREE-YEAR

13   TERM OF SUPERVISED RELEASE UNDER CERTAIN CONDITIONS.

14             SO MY QUESTION IS:  DO YOU OBJECT TO THE LENGTH OF

15   THE TERM AND THE CONDITIONS OF THE TERM OF COMMUNITY

16   SUPERVISION?

17             **MR. DIAMOND:**  YES.

18             **THE COURT:**  WHAT DO YOU OBJECT TO?

19             **MR. DIAMOND:**  THERE SHOULD BE NO SUPERVISION.  IF

20   MR. ISAACS SHOULD RECEIVE ANY PRISON TIME, UPON HIS RELEASE,

21   HE SHOULD NOT BE UNDER SUPERVISION, ALTHOUGH WE ARE ARGUING

22   THAT HE SHOULD NOT RECEIVE ANY PRISON TIME AT ALL.

23             **THE COURT:**  WHY DIDN'T YOU PUT THAT IN YOUR

24   PAPERS?

25             **MR. DIAMOND:**  WHY DID I?

```
 1            THE COURT:  WHY DID YOU NOT?

 2            IT'S NOT A SECRET THAT THE PROBATION OFFICER HAD

 3   PROPOSED NOT ONLY A TERM OF IMPRISONMENT BUT ALSO A

 4   THREE-YEAR TERM OF SUPERVISED RELEASE UNDER SIX CONDITIONS.

 5   THIS IS NOT A SECRET.  IT WAS DISCLOSED MONTHS AND MONTHS

 6   AND MONTHS AGO.

 7            MR. DIAMOND:  WE'RE NOT ARGUING THAT, LEGALLY,

 8   THAT OPTION IS NOT AVAILABLE TO THE COURT.  WE'RE SIMPLY

 9   SAYING, AS A MATTER OF --

10            THE COURT:  SO YOU DON'T HAVE AN OBJECTION TO ITS

11   IMPOSITION AS IMPROPER.  YOUR ARGUMENT IS, AS A MATTER OF

12   3553(A), WE SHOULD FOREGO THE SUPERVISION?

13            MR. DIAMOND:  YES.

14            THE COURT:  OKAY.  VERY GOOD.  I'LL HEAR FROM YOU,

15   THEN, ON BEHALF OF YOUR CLIENT AT THIS TIME.

16            MR. DIAMOND:  YES, YOUR HONOR.

17            I UNDERSTAND, OF COURSE, THAT EVEN THOUGH THE

18   FIRST AMENDMENT SAYS THAT CONGRESS SHALL MAKE NO LAW

19   ABRIDGING THE FREEDOM OF SPEECH, I UNDERSTAND, OBVIOUSLY,

20   THE U.S. SUPREME COURT, YEARS AGO, SPOKE ON THE SUBJECT OF

21   OBSCENITY WITH ALL OF ITS DECISIONS -- MILLER AND SO

22   FORTH -- AND CAME TO THE CONCLUSION THAT OBSCENITY IS NOT

23   SPEECH, NOT PROTECTED BY THE FIRST AMENDMENT; AND THEREFORE,

24   THE FIRST AMENDMENT HAS NO ROLE TO PLAY IN AN OBSCENITY

25   CASE, AS WEIRD OR AS IRONIC AS THAT MIGHT SOUND TO THE
```

1    AVERAGE PERSON ON THE STREET WHEN DISCUSSING FREEDOM OF

2    SPEECH, OBSCENITY, AND SO FORTH.

3           BUT I UNDERSTAND, TECHNICALLY, A COURT COULD SAY

4    THAT THE ISSUE OF FREEDOM OF SPEECH UNDER THE FIRST

5    AMENDMENT IS NOT RELEVANT AT ALL IN AN OBSCENITY TRIAL.

6           THAT MAY BE TRUE WITH RESPECT TO THE TRIAL ITSELF.

7    ALTHOUGH WE DID RAISE CERTAIN OBJECTIONS TO THAT POSITION,

8    WE ALL KNOW THAT WE'RE BOUND BY WHAT THE U.S. SUPREME COURT

9    SAYS.

10          IN TERMS OF SENTENCING, NOT IN TERMS OF WHAT THE

11   LAW IS FOR GUILT OR INNOCENCE, BUT IN TERMS OF SENTENCING, I

12   THINK THE COURT DOES HAVE THE POWER AND AUTHORITY TO

13   CONSIDER THE CASE IN THE CONTEXT OF HISTORY, TRADITION, THE

14   ROLE OF CENSORSHIP IN GOVERNMENTS IN GENERAL THROUGHOUT

15   SOCIETY, THROUGHOUT HISTORY, IN TERMS OF WHAT WOULD BE AN

16   APPROPRIATE SENTENCE IN THIS TYPE OF A CASE.

17          SO I DO NOT BELIEVE THAT A COURT CAN SEPARATE THE

18   FIRST AMENDMENT INTERESTS REFLECTED IN THE CONSTITUTION FROM

19   THIS TYPE OF A CASE FOR SENTENCING PURPOSES.  KEEPING IN

20   MIND, AGAIN, THAT WE'RE NOT HERE FOR THE TRIAL, WE'RE ONLY

21   HERE FOR SENTENCING.

22          AND I HAVE COLLECTED, OVER TIME, ARTICLES FROM THE

23   *NEW YORK TIMES* AND THE *LOS ANGELES TIMES* REGARDING

24   CENSORSHIP IN GENERAL TO TRY TO PUT THIS CASE IN THE PROPER

25   CONTEXT IN TERMS OF HOW IMPORTANT PUNISHMENT IS WITH RESPECT

```
 1    TO A VIOLATION OF A FREE SPEECH TYPE OF STATUTE.

 2              AND I NOTICE, FOR EXAMPLE --

 3              AND I SHARED THIS, BY THE WAY, WITH THE

 4    PROSECUTION BEFORE YOUR HONOR TOOK THE BENCH JUST TO GIVE

 5    THE PROSECUTION AN ADVANCE WARNING OF THE TYPE OF ARGUMENT

 6    THAT I WOULD BE MAKING HERE AT SENTENCING.

 7              AND I NOTICED, FOR EXAMPLE, THERE WERE THE THREE

 8    PUNK ROCKERS IN MOSCOW ON THE FRONT PAGE OF THE LOS ANGELES

 9    TIMES OF AUGUST 13, 2012.  AND IF THE COURT WANTS TO LOOK AT

10    THESE ARTICLES, TOO, THE COURT IS WELCOME TO HAVE THEM.  I

11    THINK THIS IS A MATTER OF JUDICIAL NOTICE WHAT IS GOING ON

12    IN THE WORLD SITUATION.

13              THREE PUNK ROCKERS WERE LITERALLY IMPRISONED,

14    INCARCERATED IN THE MOSCOW JAIL, IN THE COURTROOM WHILE

15    BEING TRIED FOR THEIR HOOLIGANISM AND SO FORTH.  AND OF

16    COURSE, THE SOVIET UNION --

17              IT'S NOW NO LONGER THE SOVIET UNION, IT'S RUSSIA.

18    BUT I WAS THERE WITH MY WIFE IN 1978 WHEN IT WAS STILL THE

19    SOVIET UNION.  AND I TRIED TO GET A COPY OF THE

20    CONSTITUTION, THE SOVIET CONSTITUTION BECAUSE I WANTED TO

21    POINT OUT TO THE TOUR PERSON THE HYPOCRISY OF THE

22    CONSTITUTION OF THE SOVIET UNION STATING THAT THEY HAVE FREE

23    SPEECH ALSO BECAUSE I GOT INTO DEBATES WITH THOSE PEOPLE

24    ABOUT WHETHER I COULD GO OUT TO THE RED SQUARE AND THE

25    KREMLIN AND DISTRIBUTE COPIES OF THE NEW YORK TIMES OR THE
```

1   *WASHINGTON POST*.

2          AND THEY SAID, "OF COURSE YOU COULDN'T DO THAT

3   BECAUSE THOSE NEWSPAPERS ARE NOT PROTECTED BY OUR SOVIET

4   GUARANTEE OF FREE SPEECH BECAUSE THEY'RE NOT REALLY SPEECH,

5   THEY'RE LIES," ET CETERA, ET CETERA.

6          EVERY GOVERNMENT THAT SEEMS TO HAVE A FIRST

7   AMENDMENT TYPE OF MEASURE ALSO HAS AN EXCUSE FOR WHAT THEY

8   DO.

9          I'M SURE THAT IF WE WERE TO SURVEY THE

10  CONSTITUTIONS IN SAUDI ARABIA AND AFGHANISTAN AND PAKISTAN

11  AND SO FORTH, THEY WOULD ALSO SAY THEY HAVE FREE SPEECH; BUT

12  THEN THEY WOULD CLAIM IF YOU ARE ON TRIAL FOR BLASPHEMY,

13  THEY WOULD SAY, "OF COURSE, YOU HAVE FREE SPEECH HERE, BUT

14  BLASPHEMY -- "

15         WHICH, OF COURSE, IS CRITICIZING GOD OR

16  CRITICIZING RELIGION.

17         THEY WOULD SAY, "WELL, BLASPHEMY IS NOT SPEECH

18  AND, THEREFORE, WE DON'T FIND ANY CONFLICT BETWEEN OUR

19  CONSTITUTION, WHICH GUARANTEES FREE SPEECH, AND BLASPHEMY

20  BECAUSE IT'S NOT SPEECH.  HOW DARE YOU ATTACK THE PROPHET

21  MOHAMMED HERE?  WE WILL BEHEAD YOU."

22         AND I'M NOT GOING TO SPEND TOO MUCH MORE TIME ON

23  THIS.  I'M SURE THE COURT GETS THE POINT.  BUT I HAVE AN

24  ARTICLE HERE REGARDING AN INDIAN FROM THE COUNTRY OF INDIA

25  WHERE HE GOT INTO TROUBLE.  HE WAS A CARTOONIST, AND HE

```
 1   WROTE IN THE NEWSPAPER IN INDIA -- HIS NAME IS ASEEM,

 2   A-S-E-E-M; TRIVEDI, T-R-I-V-E-D-I -- AND I'LL JUST READ THE

 3   FIRST PARAGRAPH OF THE ARTICLE, WHICH WAS IN THE LOS ANGELES

 4   TIMES SEPTEMBER 11, 2012 (AS READ:)

 5        "INDIA FINDS ITSELF IN THE MIDDLE OF A NEW FREE

 6        SPEECH CONTROVERSY AFTER AUTHORITIES ARRESTED

 7        CARTOONIST AND ANTI-CORRUPTION ACTIVIST ASEEM

 8        TRIVEDI ON SEDITION CHARGES OVER THE WEEKEND AFTER

 9        HE POSTED CARICATURES OF INDIA'S CONSTITUTION,

10        PARLIAMENT, AND THE NATIONAL EMBLEM ON A SOCIAL

11        NETWORKING SITE."

12                 (END QUOTED MATERIAL.)

13        MR. DIAMOND:  SO IT WAS A BIG DEBATE BECAUSE THE

14   CARTOONIST WAS IN TROUBLE.

15        NOW, INDIA, OF COURSE, HAS A CONSTITUTION.  THEY

16   ALSO SEEM TO PROTECT FREE SPEECH RIGHTS.  BUT WHEN YOU GO

17   AFTER SOMETHING THAT IS SENSITIVE TO A LOT OF PEOPLE, YOU

18   GET INTO TROUBLE.

19        NOW AGAIN, I'M NOT JUSTIFYING WHAT MR. ISAACS DID

20   BECAUSE I PERSONALLY FOUND THE MOVIES TO BE REPULSIVE IN

21   THIS CASE.  I DID NOT EVEN WATCH THEM.  I READ A BOOK DURING

22   THE TRIAL RATHER THAN WATCHING THE MOVIES.  THEY WERE SO

23   DISGUSTING, I COULDN'T WATCH THEM.  BUT THAT DOES NOT MEAN

24   THEY ARE NOT PROTECTED BY THE FIRST AMENDMENT BECAUSE

25   SOCIETY SHOULD --
```

18

```
 1          ALTHOUGH I UNDERSTAND THAT'S NOT THE LAW RIGHT

 2    NOW.  WE DO HAVE A SUPREME COURT THAT DID SAY -- AND I THINK

 3    IT WAS A 5-TO-4 VOTE -- THAT OBSCENITY IS NOT PROTECTED BY

 4    THE FIRST AMENDMENT.

 5          WE STILL, IN THIS COUNTRY HAVE FREEDOM OF CHOICE,

 6    LIBERTY, AND SO FORTH.

 7          SO IN TERMS OF SENTENCING, AS OPPOSED TO WHETHER

 8    THERE WAS A CRIME COMMITTED, IT SEEMS TO ME THE COURT DOES

 9    HAVE DISCRETION TO CONSIDER THE NATURE OF THE CRIME, KEEPING

10    IN MIND THAT UNDER THE SENTENCING GUIDELINES -- THEY'RE ONLY

11    ADVISORY NOW.  THEY'RE NOT MANDATORY.  THEY'RE JUST

12    ADVISORY.

13          BUT THE COURT CAN CERTAINLY EXERCISE ITS

14    DISCRETION TO DECIDE WHETHER AN APPROPRIATE PUNISHMENT WOULD

15    BE PRISON IN A CASE LIKE THIS, WHERE IN SOUTHERN CALIFORNIA

16    WHERE THE ECONOMY TO SOME EXTENT IS BASED ON THE PORNOGRAPHY

17    INDUSTRY, WHETHER IT WOULD BE APPROPRIATE TO SENTENCE

18    MR. ISAACS TO TIME IN PRISON.

19          HE HAS NO CRIMINAL RECORD.  FIRST-TIME OFFENDER.

20          HOW OLD ARE YOU?

21    (COUNSEL CONFERS OFF THE RECORD WITH DEFENDANT.)

22          MR. DIAMOND:  61, 62 YEARS OLD, AND TO PUT

23    SOMEBODY LIKE MR. ISAACS IN PRISON WOULD REALLY SERVE NO

24    REAL PURPOSE.

25          WE ARE ASKING THIS COURT TO EXERCISE ITS JUDICIAL
```

1  DISCRETION JUDGING THIS CASE IN TERMS OF WHAT THE ACTUAL

2  CRIME WAS, WHICH WAS THE VIOLATION OF THE OBSCENITY LAW, AND

3  GIVE HIM PROBATION.

4          ALL THROUGH OUR HISTORY WE HAVE HAD A SYSTEM OF

5  JUSTICE IN OUR COUNTRY WHERE, UNFORTUNATELY FOR THE

6  PARTICIPANTS IN THE PARTICULAR ACTIVITY FOR WHICH THE TRIAL

7  IS CONDUCTED, WE DON'T GET THE TYPE OF WISDOM WE NEED TO

8  JUDGE WHAT THE PERSON DID UNTIL MUCH LATER.

9          SO WE HAVE A SERIES OF JUDICIAL MISTAKES IN THIS

10  COUNTRY SUCH AS THE DRED SCOTT DECISION, WHERE THE SUPREME

11  COURT SAID THAT A BLACK SLAVE COULD NOT FLEE HIS MASTER AND

12  WAS SIMPLY PROPERTY AND HAD TO BE RETURNED.

13          WE'VE HAD, OF COURSE, THE WITCHCRAFT TRIALS.  I

14  THINK A HUNDRED YEARS FROM NOW -- NATURALLY, NONE OF US WILL

15  BE AROUND THEN -- PEOPLE WILL LOOK BACK ON THIS TRIAL AND

16  SAY, "HOW COULD THESE PEOPLE IN AMERICA IN THE YEAR 2013" --

17  AND I THINK THIS CASE STARTED MAYBE IN 2009.

18          **THE DEFENDANT:**  2007.

19          **MR. DIAMOND:**  2007.  SO THIS CASE HAS BEEN GOING

20  ON FOR SIX YEARS.  "HOW COULD THE PEOPLE AT THAT TIME HAVE

21  BEEN SO" -- I'M FETCHING FOR THE TYPE OF ADJECTIVE TO USE

22  HERE -- "HOW COULD THEY HAVE BEEN SO NAIVE OR SILLY TO PUT

23  SOMEBODY IN PRISON FOR AN OBSCENITY VIOLATION?  THAT WOULD

24  BE LIKE EXECUTING A WITCH FOR WITCHCRAFT."

25          AND THEY HAD THOSE KINDS OF TRIALS IN SALEM,

```
 1   MASSACHUSETTS.

 2           WE DON'T HAVE THE BENEFIT OF LOOKING AT THIS TRIAL

 3   A HUNDRED YEARS FROM NOW.  I WAS TRYING TO FIGURE OUT A WAY

 4   TO PUT THIS CASE IN A PROPER CONTEXT, ADDRESSING YOUR HONOR

 5   AS THOUGH IT WERE A HUNDRED YEARS LATER IN TIME, TRYING TO

 6   REACH BACK -- THIS CASE ALMOST HAS LASTED FOR A HUNDRED

 7   YEARS.

 8           BUT HOW WOULD I APPROACH THIS CASE AND HOW WOULD I

 9   ADDRESS YOUR HONOR IF WE HAD THE BENEFIT OF A HUNDRED-YEAR

10   DELAY.  LET'S ASSUME THE CASE WAS SO COMPLICATED AND

11   CONVOLUTED THAT IT DID TAKE A HUNDRED YEARS TO REACH

12   SENTENCING.  AND WE WERE HERE, AND YOU AND I WERE BOTH HERE,

13   AND WE WERE DISCUSSING THIS POINT.

14           WE COULD SAY TO OURSELVES, "OBSCENITY, THAT

15   DESERVES FEDERAL PRISON TIME, ESPECIALLY OF THE ENORMITY

16   THAT THE GOVERNMENT IS ASKING FOR IN THIS CASE?  IT LOOKS TO

17   ME LIKE IT'S AROUND A 5- OR 6-YEAR SENTENCE FOR EXERCISING

18   WHAT WAS THOUGHT OF AS A FREE SPEECH RIGHT."

19           MR. ISAACS WAS PROVEN TO BE WRONG AFTER THREE

20   TRIALS; THAT IT WAS OBSCENE, TO THEN SAY YOU GUESSED WRONG.

21   YOU PREDICTED THAT THE JURY WOULD VOTE ONE WAY, AND IT

22   DIDN'T.  SO BECAUSE YOU CHOSE TO EXERCISE YOUR

23   CONSTITUTIONAL RIGHT TO A JURY TRIAL AND THE JURY CAME BACK

24   THE OPPOSITE WAY, YOU NOW GO TO PRISON FOR FIVE OR SIX YEARS

25   AT THE AGE OF 61 OR 62?
```

```
 1        HE COMES BACK ALMOST 70.  HE WOULD BE ALMOST AS

 2   OLD AS I AM, AND IT'S HARD TO GET A JOB WHEN YOU'RE REACHING

 3   UP THERE IN TIME.

 4        SO WE ARE ASKING THIS HONORABLE COURT TO EXERCISE

 5   THE FUNDAMENTAL DISCRETION THAT IT HAS, NOT TO NECESSARILY

 6   MINIMIZE THE CRIME, BUT TO PUT IT IN THE PROPER HISTORICAL

 7   CONTEXT AND DECIDE WHETHER OR NOT SOMEBODY LIKE MR. ISAACS

 8   DESERVES TO BASICALLY SPEND ALMOST THE REST OF HIS LIFE IN

 9   PRISON, SOMEBODY WHO HAS NEVER BEEN IN JAIL OR PRISON,

10   FIRST-TIME OFFENDER.

11        WE JUST THINK IT'S UNDULY HARSH, AND I WON'T SAY

12   "VINDICTIVE," BUT I DON'T REALLY UNDERSTAND THE GOVERNMENT'S

13   MOTIVATION IN PURSUING HIM SO AGGRESSIVELY IN THIS

14   PARTICULAR CASE.

15        THIS WAS STARTED BY A UNIT IN THE DEPARTMENT OF

16   JUSTICE CREATED DURING THE BUSH ADMINISTRATION.  SHORTLY

17   AFTER HE TOOK OFFICE, ATTORNEY GENERAL GONZALEZ FORMED THIS

18   GROUP, AND THEY STARTED LOOKING AFTER POSSIBLE OBSCENITY

19   CASES.

20        WE KNOW, OF COURSE, THAT DURING THE CLINTON

21   ADMINISTRATION, THERE WAS NO OBSCENITY PROSECUTIONS.  SINCE

22   PRESIDENT OBAMA HAS TAKEN OFFICE, THERE HAVE BEEN NONE.

23   THIS IS SORT OF AN ABERRATION.

24        THIS CASE WAS GENERATED DURING THE SHORT PERIOD OF

25   TIME WHEN, UNDER THE BUSH ADMINISTRATION, IT WAS DECIDED TO
```

```
 1   GO AFTER PORNOGRAPHY CASES.  BUT THIS IS NOT LIKE THERE'S A

 2   NATIONAL MOVEMENT TO GO AFTER PORNOGRAPHERS.  MR. ISAACS

 3   FINDS HIMSELF IN THE POSITION OF HAVING BEEN BASICALLY

 4   STRUCK BY LIGHTENING, AND FOR WHATEVER REASON, HE WAS

 5   SELECTED TO BE PROSECUTED IN THIS PARTICULAR CASE.

 6           AND AS THIS COURT WELL KNOWS, AFTER THE CASE WAS

 7   ASSIGNED TO YOUR HONOR, CHIEF JUDGE ALEX KOZINSKI TOOK OVER

 8   THE CASE.  THE TRIAL BEGAN, AND AN EMBARRASSING SITUATION

 9   OCCURRED.

10           AND INSTEAD OF DOING THE RIGHT THING, WHICH WOULD

11   HAVE BEEN FOR THE DEPARTMENT OF JUSTICE TO SAY, "IT'S NO BIG

12   DEAL; WHAT IS ON JUDGE KOZINSKI'S WEBSITE IS IRRELEVANT, AND

13   IT HAS NOTHING TO DO WITH THIS CASE, AND THE MATERIAL IS

14   NOWHERE THE SAME AS WHAT IS ON TRIAL" --

15           INSTEAD OF HELPING JUDGE KOZINSKI THROUGH AN

16   EMBARRASSING SITUATION AND INSTEAD OF THE GOVERNMENT SIMPLY

17   SAYING, "NO PROBLEM.  WE'RE SATISFIED WITH JUDGE KOZINSKI.

18   WE'LL PROCEED FORWARD," THE GOVERNMENT MADE A SMALL LITTLE

19   PROBLEM A MAJOR ISSUE BY THREATENING TO FILE A RECUSAL

20   MOTION, BY EMBARRASSING JUDGE KOZINSKI, SO THAT HE WITHDREW

21   FROM THE CASE.  THAT TRIGGERED THE MISTRIAL, AS THIS COURT

22   KNOWS.

23           WE HAD AN EXPERT WITNESS, THE DOCTOR, READY TO

24   TESTIFY IN THAT PARTICULAR CASE.  HE WAS PAID TO TESTIFY AS

25   AN EXPERT WITNESS.  THAT ALL WAS DISRUPTED.  JUDGE KOZINSKI
```

```
 1   RECUSED HIMSELF AND, OVER OUR OBJECTION, DECLARED A

 2   MISTRIAL.  IT WAS A BIG DEAL OVER NOTHING.  AND WHAT TYPE OF

 3   DEPARTMENT OF JUSTICE WOULD DO THAT TO A FINE JUDGE FOR NO

 4   REASON OTHER THAN SOME POLITICAL AGENDA?

 5           IN ANY EVENT, THAT HAPPENED.  WE LOST THE EXPERT

 6   WITNESS.  WE TRIED THE CASE A SECOND TIME AFTER GOING TO THE

 7   NINTH CIRCUIT AND THE U.S. SUPREME COURT ON THE DOUBLE

 8   JEOPARDY ISSUE.  AND ON THE SECOND TRIAL, AS YOUR HONOR

 9   KNOWS, IT WAS A MISTRIAL, A HUNG JURY.  SO WE HAD TO GO TO A

10   THIRD TRIAL, TOTALLY DISADVANTAGED BY NOT HAVING THE EXPERT

11   WE WANTED.

12           IT WAS THROUGH NO FAULT OF THE COURT.  WE'RE NOT

13   BLAMING THE COURT.  WE WANT TO PRAISE THE COURT FOR ALL THE

14   COURT HAS DONE IN THIS PARTICULAR CASE.  THE TIME THIS COURT

15   HAS TAKEN TO RESEARCH ISSUES HAS BEEN ABSOLUTELY

16   UNBELIEVABLE IN TERMS OF THE JUDICIAL WORKLOAD HERE.  WE

17   THANK THE COURT FOR ALL THE WORK THAT IT'S DONE.

18           BUT MR. ISAACS HAD TO GO TO TRIAL WITH NO EXPERT.

19   WE LOST THE CASE, FAIR AND SQUARE, I SUPPOSE.  WE'RE HERE.

20   WE'RE ASKING YOUR HONOR TO DO THE RIGHT THING AND IMPOSE A

21   PROBATIONARY SENTENCE ON MR. ISAACS.

22           NO BENEFIT AT ALL WOULD BE ACCOMPLISHED BY PUTTING

23   HIM IN PRISON, AND FOR THE YEARS THAT THE GOVERNMENT IS

24   ASKING FOR?  WE RESPECTFULLY ASK THIS HONORABLE COURT TO

25   IMPOSE A PROBATIONARY SENTENCE.
```

1        MR. ISAACS STOPPED THE -- I GUESS DISASSEMBLED, IF

2   THAT'S THE RIGHT WORD, THE WEBSITE.  IT'S BEEN DISMANTLED.

3   THE GOVERNMENT HAS OBTAINED, I GUESS, THE FORFEITURE.  WE

4   WERE COOPERATING WITH THE GOVERNMENT ON THAT ISSUE.  I THINK

5   IT'S ALL -- IT'S PENDING.

6        SO MR. ISAACS BASICALLY IS OUT OF BUSINESS.  HE'S

7   FINANCIALLY DESTITUTE, TO SAY NOTHING OF HIS LAWYER, BECAUSE

8   OF THIS CASE.  AND WE'RE JUST RESPECTFULLY ASKING YOUR HONOR

9   TO EXERCISE DISCRETION AND IMPOSE A PROBATIONARY SENTENCE ON

10  MR. ISAACS.

11       IF THE COURT HAS ANY PARTICULAR AREA OF INQUIRY OR

12  ANY COMMENTS THAT I CAN MAKE OR RESPOND TO IF IT WOULD HELP

13  THE COURT IN DECIDING WHAT THE COURT WANTS TO DO HERE, I

14  THINK THE COURT HAS A DIFFICULT SITUATION BECAUSE THERE ARE

15  COMPETING INTERESTS AT STAKE HERE.

16       BUT WE JUST BELIEVE THAT THE GOVERNMENT WENT OUT

17  OF ITS WAY TO BE OVERLY AGGRESSIVE IN PURSUING MR. ISAACS

18  FOR REASONS WE CANNOT REALLY UNDERSTAND.  AND AS I SAID, IT

19  WASN'T JUST AGGRESSIVE AGAINST MR. ISAACS, IT WAS ALSO

20  AGAINST THE PRIOR JUDICIAL OFFICER.

21       NOT THESE REPRESENTATIVES HERE.  THEY ARE VERY

22  FINE PEOPLE.  WE HAVE NOTHING BUT RESPECT FOR THESE PEOPLE.

23  IT WAS THEIR PREDECESSOR.

24       I WAS IN COURT THAT DAY -- IT WAS AWFUL -- IN

25  PASADENA, WHEN THIS ISSUE AROSE.  AND ALL THE GOVERNMENT HAD

1    TO DO WAS SAY, "NO PROBLEM.  WE'RE GOING TO PROCEED.  IT'S

2    NO BIG DEAL," AND THAT WOULD HAVE BEEN THE END OF IT.  BUT

3    IT WENT FORWARD TO THE EXTENT THAT SOMEBODY HAD TO BE

4    EMBARRASSED JUDICIALLY BECAUSE OF THE OVERAGGRESSIVE

5    ATTITUDE OF THE GOVERNMENT.

6            IT'S POLITICS, WASHINGTON POLITICS.  FORTUNATELY,

7    WE WON'T HAVE TO GO THROUGH THAT AGAIN AT LEAST FOR THE NEXT

8    FOUR YEARS.  BUT THIS BECAME A POLITICAL FOOTBALL IN

9    WASHINGTON IN TERMS OF HOW TO PROCEED ON THIS CASE.

10           THERE IS NO REASON TO PUT MR. ISAACS IN PRISON.

11   NO REASON.  WE'RE ASKING YOUR HONOR TO SENTENCE HIM TO

12   PROBATION.

13           **THE COURT:**  ALL RIGHT.  THANK YOU VERY MUCH.

14   MR. DIAMOND.

15           MR. ISAACS, YOU HAVE THE RIGHT TO PERSONALLY

16   ADDRESS THE COURT BEFORE I IMPOSE SENTENCE.  DO YOU WISH TO

17   BE HEARD AT THIS TIME?

18           **THE DEFENDANT:**  NO, THANK YOU, YOUR HONOR.

19           **THE COURT:**  ALL RIGHT.  MR. GRANT, ON BEHALF OF

20   THE UNITED STATES.

21           **MR. GRANT:**  YES, YOUR HONOR.

22           YOUR HONOR, WOULD YOU LIKE ME TO ADDRESS THE

23   OBJECTIONS TO THE ENHANCEMENTS OR JUST PROVIDE THE

24   GOVERNMENT'S POSITION ON SENTENCING?

25           **THE COURT:**  WHATEVER YOU CARE TO DO.

1       **MR. GRANT:**  OKAY, SIR.  I WON'T BELABOR THOSE

2   ENHANCEMENTS FOR TOO LONG, BUT I WOULD JUST LIKE TO ADDRESS

3   THAT IN REGARDS TO THE ADVISORY GUIDELINES THAT WERE

4   PRESENTED THROUGH THE PRESENTENCING REPORT, IT'S THE

5   GOVERNMENT'S POSITION THAT, IN FACT, THE PROBATION OFFICER

6   GOT IT CORRECTLY AND MEMORIALIZED IN ITS REPORT THE CRIMINAL

7   CONDUCT OF THE DEFENDANT.

8           SPECIFICALLY, IN REGARDS TO THE DEFENSE REQUEST

9   FOR AN ACCEPTANCE OF RESPONSIBILITY ADJUSTMENT, YOUR HONOR,

10  ALTHOUGH, AS MR. DIAMOND POINTED OUT, THE SENTENCING

11  GUIDELINES ARE ADVISORY, IN FACT, SECTION 3E1.1 IS

12  INSTRUCTIVE ON THE THINGS THAT THE COURT CAN CONSIDER WHEN

13  DECIDING WHETHER OR NOT TO GRANT THE 2-LEVEL ADJUSTMENT.

14          AND IN THE APPLICATION NOTES THERE, IT INDICATES

15  THAT -- IT'S INSTRUCTIVE THERE WHERE IT STATES THAT:

16          *(READING:) "A LEGITIMATE SOCIETAL INTEREST*

17          *HAS BEEN RECOGNIZED IN THIS REDUCTION WHERE A*

18          *DEFENDANT CLEARLY DEMONSTRATES AN AFFIRMATIVE*

19          *ACCEPTANCE OF RESPONSIBILITY FOR HIS CRIMINAL*

20          *CONDUCT."*

21              *(END QUOTED MATERIAL.)*

22      **MR. GRANT:**  AND, YOUR HONOR, THE NINTH CIRCUIT HAS

23  ADDRESSED THIS IN A NUMBER OF CASES, AND I POINT THE COURT

24  TO U.S. V. COOPER, WHICH WAS CITED IN THE GOVERNMENT'S

25  PAPERS AT 912 F.2D. 344.

27

1          AND THAT COURT ADDRESSED THIS ISSUE AND INDICATED

2    THAT THE BURDEN IS ON THE DEFENDANT TO SHOW SINCERE REMORSE

3    AND ACCEPTANCE OF RESPONSIBILITY.

4          YOUR HONOR, I BELIEVE THERE'S NO BETTER LITMUS

5    TEST FOR THIS THAN LOOKING AT THE POST-CONVICTION CONDUCT OF

6    THE DEFENDANT WHEN WE ARE ADDRESSING WHETHER OR NOT HE

7    ACTUALLY ACCEPTED RESPONSIBILITY.

8          AND, YOUR HONOR, WE PROVIDED IN DOCKET 244 ALL OF

9    THE ATTACHMENTS AND THE PROFFERED TESTIMONY OF DETECTIVE

10   LEWISON.

11         AND I THINK IT'S REMARKABLE THAT THE DEFENSE WOULD

12   REQUEST THIS DEPARTURE -- PARDON ME -- THIS ADJUSTMENT BASED

13   ON THE FACTS OF THAT POST-CONVICTION CONDUCT.

14         AS YOU ARE WELL AWARE, YOUR HONOR, THE DEFENDANT

15   WAS SENTENCED ON APRIL 27, 2012.  AT THAT POINT, THERE IS NO

16   DOUBT --

17         **THE COURT:**  HE WAS CONVICTED.

18         **MR. GRANT:**  PARDON ME, SIR.

19         I MEANT CONVICTED ON THE 27TH OF APRIL.

20         THERE CAN BE NO DOUBT AT THAT POINT THAT WHAT HE

21   DID WAS AGAINST THE LAW.  THE JURY SPOKE ON BEHALF OF THIS

22   COMMUNITY.  AND TWO DAYS LATER HE MADE THE DECISION ON HIS

23   OWN TO GO FORWARD INTO THIS SAME COMMUNITY AND FIND HIMSELF

24   ON A RADIO TALK SHOW WHERE HE WAS ASKING THE CITIZENS WHO

25   LISTEN TO THAT TALK SHOW TO GO OUT AND PURCHASE THE SAME

```
1    EXACT TYPE OF VIDEOS AS HE WAS CONVICTED OF TWO DAYS

2    EARLIER.

3           AND HE WENT SO FAR AS TO PANDER HIS WEBSITE, WHICH

4    WAS THE SAME EXACT SITE THAT WAS INVOLVED IN THE TRIAL TWO

5    DAYS PRIOR, AND WENT EVEN FURTHER, AS YOU SAW FROM THE

6    SCREEN SHOTS THAT WERE PRESENTED, I THINK ATTACHMENT 1 OF

7    244, WHERE HE ADDS 28 NEW VIDEOS TO HIS WEBSITE TWO DAYS

8    AFTER CONVICTED, YOUR HONOR.

9           AND YOU SAW THE EVIDENCE THAT DETECTIVE LEWISON --

10   THAT WE PROVIDED ON BEHALF OF DETECTIVE LEWISON'S PURCHASE

11   ON MAY 17TH.  AND THE VIDEOS THAT HAVE BEEN LODGED WITH THE

12   COURT SHOW QUITE CONVINCINGLY THAT THE DEFENDANT HAD NOT

13   ACCEPTED RESPONSIBILITY; THAT, IN FACT, HE HAD NO REGARD FOR

14   THE LAW OR THIS COMMUNITY AND CONTINUED TO COMMIT WHAT HE

15   KNEW, AT THAT POINT, UNEQUIVOCALLY, WAS CRIMINAL MISCONDUCT.

16          SO, YOUR HONOR, IF YOU GO TO THE COOPER CASE, THAT

17   COURT SAYS SPECIFICALLY THAT YOU CAN CONSIDER THAT

18   INFORMATION AND THAT IT'S RELEVANT AS TO WHETHER OR NOT HE'S

19   ACTUALLY ACCEPTED HIS RESPONSIBILITY AND HAS SHOWN REMORSE.

20   AND IT'S THE GOVERNMENT'S POSITION THAT, IN FACT, HE HAS NOT

21   AND HE SHOULD NOT RECEIVE CREDIT FOR ACCEPTANCE OF

22   RESPONSIBILITY.

23          YOUR HONOR, REGARDING THE AGGRAVATED ROLE IN THE

24   OFFENSE, WHICH IS THE 3B1.1 ENHANCEMENT, I JUST WANT TO GO

25   THROUGH THAT VERY QUICKLY, YOUR HONOR.
```

```
 1              THAT ADJUSTMENT OR ENHANCEMENT REQUIRES THAT TWO

 2    THINGS BE MET:

 3              ONE, EITHER THAT THERE ARE FIVE OR MORE

 4    PARTICIPANTS, YOUR HONOR, OR THAT IT WAS A -- PARDON ME --

 5    OR IT WAS OTHERWISE EXTENSIVE.

 6              IN THIS CASE, YOUR HONOR, THERE HAS BEEN EVIDENCE

 7    PRESENTED THROUGHOUT THE ENTIRE TRIAL THAT SUPPORTS THAT

 8    THERE WERE MORE THAN FIVE WHAT I WILL CALL "TRADITIONAL

 9    EMPLOYEES" WORKING FOR L.A. MEDIA UNDER THE CONTROL OF THE

10    DEFENDANT.

11              TESTIMONY FROM MS. TRICKETT.  WHEN SHE TESTIFIED

12    IN THIS COURT, SHE TESTIFIED TO NOT ONLY HERSELF, BUT AT

13    THAT TIME, MS. BRANDY KRIEGER AND MICHAEL COYLE WERE WORKING

14    AT L.A. MEDIA FOR THE DEFENDANT.

15              FURTHERMORE, THERE WAS TESTIMONY ABOUT SARAH JAMES

16    AND HER ROLE.  AND THAT TESTIMONY CAME NOT ONLY FROM

17    MS. TRICKETT BUT ALSO FROM MR. ISAACS HIMSELF ON

18    CROSS-EXAMINATION.

19              THERE WAS ALSO TESTIMONY ON CROSS-EXAMINATION OF

20    THE DEFENDANT THAT AN INDIVIDUAL BY THE NAME OF

21    MARISA BERGEN HAD WORKED FOR THE DEFENDANT AND WAS THE

22    PERSON RESPONSIBLE TO SEND OUT THE 2011 VIDEOS TO

23    DETECTIVE LEWISON AT THE INSTRUCTION OF THE DEFENDANT.

24              SO RIGHT THERE WE HAVE FIVE.  THE DEFENDANT IS

25    INCLUDED IN THAT ALSO.
```

```
 1          THE NINTH CIRCUIT HAS ADDRESSED THAT IN THE CASE
 2   U.S. V. ATKINSON AT 996 F.2D. 1270, THAT THE DEFENDANT IS,
 3   IN FACT, TO BE CONSIDERED A PARTICIPANT.  AND THE DEFENSE
 4   ACTUALLY, IN THEIR OBJECTION, JUST KIND OF COMES UP WITH
 5   THIS LEGAL STANDARD WITH NO AUTHORITY THAT THEY NEED TO BE
 6   EMPLOYED AT THE SAME TIME AND THEN COMES UP WITH THIS
 7   CONCEPT OF INDEPENDENT CONTRACTORS.
 8          YOUR HONOR, THE DEFENSE HASN'T PROVIDED, NOR WAS I
 9   ABLE TO FIND, ANY CASE AUTHORITY THAT WOULD SUGGEST THAT
10   EITHER OF THOSE STANDARDS ARE ACCURATE.
11          THE ENHANCEMENT IS THERE IN THE GUIDELINES AND
12   EXPLAINS WHAT'S REQUIRED, WHICH IS THE PARTICIPANT.  UNDER
13   APPLICATION NOTE 1, THEY DEFINE "PARTICIPANT" AS SOMEONE WHO
14   IS CRIMINALLY RESPONSIBLE FOR THE COMMISSION OF THE OFFENSE
15   BUT NEED NOT HAVE BEEN CONVICTED.
16          AND THE NINTH CIRCUIT HAS ADDRESSED THAT ALSO AND
17   HAS COME TO THE SAME CONCLUSION IN U.S. V. WARREN, WHICH IS
18   AT 330 FED. APPX. 665, THAT THE PARTICIPANTS NEED NOT BE
19   CHARGED OR CONVICTED.
20          YOUR HONOR, IT'S THE GOVERNMENT'S POSITION THAT AT
21   A MINIMUM THAT THE INDIVIDUALS THAT WERE INVOLVED WITH
22   L.A. MEDIA ON BEHALF OF THE DEFENDANT COULD HAVE BEEN
23   CHARGED PRIOR TO THE RUNNING OF THE STATUTE OF LIMITATIONS
24   WITH AIDING AND ABETTING AND OPERATING THE BUSINESS UNDER
25   COUNT 1.
```

```
 1              SO, YOUR HONOR, I THINK IT'S VERY CLEAR, JUST FROM

 2   THE EVIDENCE THAT WAS PRESENTED AND EVEN FROM ADMISSIONS OF

 3   THE DEFENDANT AND FROM HIS ADMISSIONS THROUGH THE

 4   STIPULATION OF FACT, THAT HE, IN FACT, WAS A LEADER AND

 5   ORGANIZER OF THIS CRIMINAL ACTIVITY FOR WHICH HE HAS BEEN

 6   CONVICTED.

 7              SO, YOUR HONOR, IT'S THE GOVERNMENT'S POSITION

 8   THAT PROBATION GOT THAT CORRECT, AND THAT HE SHOULD BE

 9   ASSESSED AN ENHANCEMENT OF THE FOUR LEVELS.

10              SO, YOUR HONOR, IF I MAY JUST HAVE A FEW MORE

11   MOMENTS OF THE COURT'S TIME, I'LL THEN MOVE ON TO A

12   SENTENCING RECOMMENDATION.

13              AND, YOUR HONOR, I JUST WANT TO START BY SAYING

14   THAT I'M NOT GOING TO STAND UP HERE AND GET INTO A DEBATE

15   OVER THE LAW.  I'M NOT GOING TO GO AND DISCUSS THE FIRST

16   AMENDMENT, AND I'M DEFINITELY NOT GOING TO SPEND ANY TIME

17   DISCUSSING THE PRIOR TRIAL AND THE JUDGE KOZINSKI ISSUE

18   BECAUSE IT HAS NO BEARING, IN THE GOVERNMENT'S OPINION, ON

19   THE SENTENCING OF THIS DEFENDANT.

20              BUT INSTEAD, WHAT I WOULD LIKE TO DO FOR THE

21   REMAINDER OF MY TIME IS JUST DISCUSS ABOUT WHY, UNDER

22   SECTION 3553(A), IT'S APPROPRIATE TO FOLLOW PROBATION'S

23   GUIDELINES AND SENTENCE THE DEFENDANT TO A GUIDELINE RANGE

24   OF PUNISHMENT BETWEEN 57 AND 71 MONTHS.

25              YOUR HONOR, IT IS CLEAR AT THIS POINT THAT
```

```
1    MR. ISAACS IS A MAN WHO IS MOTIVATED BY GREED, WHO HAS

2    PROVEN OVER AND OVER BY HIS ACTIONS THAT HE HAS NO RESPECT

3    FOR THIS COMMUNITY, THE LAW, OR THE CONSEQUENCES THAT MAY

4    COME FROM VIOLATING THE LAW.

5          SINCE 1999, THE DEFENDANT HAS OPERATED A BUSINESS

6    WITH ONE GOAL IN MIND, AND THAT GOAL WAS TO MAKE MONEY OFF

7    OF INDIVIDUALS WHO HAVE AN INTEREST IN SICK MATERIAL.

8          YOUR HONOR, HE DID THAT BY OPERATING L.A. MEDIA

9    AND STOLEN CAR FILMS, AND HE CREATED, PURCHASED, SOLD, AND

10   DISTRIBUTED OBSCENE VIDEOS OVER THE INTERNET AND BY COMMON

11   CARRIERS LIKE THE U.S. MAIL AND U.P.S. THAT REVEAL HORRIFIC

12   EVENTS OF EXTREME SADOMASOCHISTIC ACTS AGAINST WOMEN, EVENTS

13   OF WOMEN ENGAGING IN SEX WITH ANIMALS, AND ACTS OF WOMEN

14   ENGAGING IN SEXUAL ACTS WHILE EATING HUMAN EXCREMENT.

15         AND, YOUR HONOR, I THINK THE EVIDENCE THAT WAS

16   PRESENTED AT TRIAL -- AND YOU SAW THE VIDEOS THAT THE

17   DEFENDANT WAS CONVICTED ON, AND THEY SHOW SOME OF THE WORST

18   SEXUAL ACTS OR CONDUCT THAT COULD BE IMAGINABLE, AND THEY

19   HAVE ZERO VALUE TO SOCIETY AS A WHOLE AND THEY ARE, BY

20   DEFINITION, WHAT IS OBSCENE AND PATENTLY OFFENSIVE UNDER THE

21   OBSCENITY LAWS.

22         AND, YOUR HONOR, THIS WAS EVIDENCED CLEARLY ON

23   APRIL 27TH WHEN THE JURY STOOD BEFORE THIS COURT AND MADE IT

24   VERY CLEAR TO THIS DEFENDANT THAT THAT OBSCENE MATERIAL WAS

25   NOT ACCEPTED IN THIS COMMUNITY AND WOULD NOT BE TOLERATED.
```

1    SO, YOUR HONOR, WHEN YOU EVALUATE THE

2    SECTION 3553(A) FACTORS AND YOU LOOK SPECIFICALLY AT A

3    NUMBER OF THEM, IT'S VERY CLEAR THAT THROUGH THE DEFENDANT'S

4    ACTIONS, HE HAS EARNED A SENTENCE OF 57 TO 71 MONTHS,

5    SOMEWHERE IN THAT GUIDELINE RANGE.

6          AND I JUST WANT TO POINT OUT A FEW OF THOSE.  AND,

7    YOUR HONOR, YOU BROUGHT A COUPLE OF THEM UP AT THE BEGINNING

8    OF THIS HEARING, AND I WOULD LIKE TO FOCUS BRIEFLY ON A

9    COUPLE OF THEM.

10         YOUR HONOR, WHEN YOU LOOK AT THE NATURE AND

11   CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND

12   CHARACTERISTICS OF THE DEFENDANT -- WELL, STARTING WITH THE

13   OFFENSE, AND WE JUST DISCUSSED THAT, YOUR HONOR.  THEY ARE

14   HORRIFIC VIDEOS, AND THEY DEBASE CIVILIZED SOCIETY.

15         THERE IS NO PLACE FOR THOSE TYPE OF VIDEOS IN THE

16   COMMUNITY, AND THE DEFENDANT IS AWARE OF THAT.  AND THAT IS

17   WHY, OVER THE YEARS, HE TOOK THE STEPS THAT HE TOOK TO

18   CONCEAL HIS IDENTITY OF THE BUSINESS, CONCEAL THE LOCATION

19   OF THE BUSINESS, TO HIDE THE IDENTITY OF HIS EMPLOYEES.  HE

20   KNEW THIS WASN'T ACCEPTED.

21         AND, YOUR HONOR, THIS WAS NEVER ABOUT ART.  IT

22   JUST WASN'T.  IT WASN'T ABOUT ART.  IT ONLY BECAME ABOUT ART

23   WHEN HE WAS SITTING IN FRONT OF THIS COURT.  AND THE

24   EVIDENCE WAS VERY CLEAR THAT THIS WASN'T ABOUT ART.  YOU

25   JUST HAD TO WATCH THE VIDEOS AND HEAR THE DEFENDANT'S OWN

1   WORDS ABOUT WHAT HE WAS ATTEMPTING TO DO.  HE WAS TAKING

2   ADVANTAGE OF A SEGMENT OF SOCIETY THAT IS INTO SICK

3   MATERIAL.  SO IT WAS NEVER ABOUT ART.

4         WHEN YOU LOOK AT THE DEFENDANT AND HIS HISTORY,

5   YOUR HONOR, I MEAN, IT BECOMES VERY CLEAR THAT HE JUST

6   DOESN'T GET IT.

7         HE STARTED THIS BUSINESS IN 1999, AND IN 2007 THE

8   F.B.I. AND L.A.P.D. SHOWED UP AT THE DOOR OF HIS BUSINESS.

9   AND AT THAT POINT HE WAS ON NOTICE.  HE WAS AT LEAST ON

10   NOTICE THAT THE GOVERNMENT VIEWED HIS BUSINESS AND THE

11   MATERIALS THAT HE WAS DISTRIBUTING AS BEING IN VIOLATION OF

12   FEDERAL OBSCENITY LAWS.  BUT THAT DIDN'T STOP HIM.  OKAY.

13   HE WAS EVEN CHARGED WITH THE VIDEOS, AND HE CONTINUED TO

14   SELL THOSE SAME EXACT VIDEOS TO THE PUBLIC.

15         AND THAT'S WHERE WE GET TO 2011.  HE'S UNDER

16   CHARGES, AND HE, AT THAT POINT, IS CONTINUING TO SELL

17   OBSCENE MATERIAL.  AND THOSE ARE THE VIDEOS THAT WERE

18   PURCHASED BY DETECTIVE LEWISON.  HE JUST DOESN'T GET IT,

19   YOUR HONOR.

20         BUT THAT'S NOT THE END OF IT.  AND THIS IS THE

21   MOST, I BELIEVE, INFORMATIVE AS FAR AS WHO THE DEFENDANT IS

22   AND HOW HIS HISTORY HAS GOTTEN HIM TO WHERE HE IS TODAY, AND

23   THAT GOES TO THESE POST-CONVICTION SALES.

24         I MEAN, THAT REALLY TELLS US WHO THIS DEFENDANT

25   IS.  HE MADE THE DECISION TWO DAYS AFTER BEING CONVICTED IN

```
 1   THIS COURTROOM.  HE WEIGHED HIS CHOICES, AND WHAT HE DID,

 2   YOUR HONOR.  AND WHAT HE MUST HAVE DONE WAS HE MUST HAVE

 3   SAID, "YOU KNOW WHAT, I'M NOT CONCERNED OR TOO CONCERNED

 4   ABOUT THE SENTENCE THAT I COULD BE FACING IN THIS FEDERAL

 5   COURT."

 6            BECAUSE THERE CAN BE NO CONFUSION.  HE DID EXACTLY

 7   WHAT HE WAS CONVICTED OF DOING, TWO DAYS LATER.  HE PANDERED

 8   HIS SITE, HE ADDED VIDEOS.  AND DETECTIVE LEWISON BOUGHT

 9   THOSE VIDEOS.  AND YOUR HONOR HAS HAD AN OPPORTUNITY TO VIEW

10   THEM OR, AT A MINIMUM, SEE THE DESCRIPTIONS.  THEY ARE

11   EXACTLY THE SAME EXACT VIDEOS THAT HE WAS CONVICTED OF.  NOT

12   THE SAME VIDEOS, BUT THE SAME MATERIAL.

13            AS A MATTER OF FACT, DETECTIVE LEWISON PURCHASED

14   THREE VIDEOS.  THE FOURTH VIDEO THAT HE RECEIVED WAS A

15   GRATIS VIDEO THAT HAD TO DO WITH DOGS AND WOMEN ENGAGED IN

16   SEXUAL INTERCOURSE.  "JAPANESE DOGGIE 3-WAY," WHICH IS THE

17   SAME VIDEO THAT HE WAS CONVICTED OF.  IT'S THE SAME EXACT

18   THING, JUST DIFFERENT ACTORS.

19            HE JUST DOESN'T GET IT, YOUR HONOR.  BUT HE MADE

20   THAT DECISION ON HIS OWN.  HE MADE THE DECISION THAT WHAT HE

21   WAS FACING HERE WASN'T GOING TO STOP HIM FROM COMMITTING

22   VIOLATIONS OF THE LAW.  HE HAS NO RESPECT FOR THE LAW, AND

23   THAT'S CLEAR, YOUR HONOR.

24            NOW, ONE OF THE OTHER FACTORS THAT YOU CAN

25   CONSIDER IS THE NEED TO PROTECT THE PUBLIC FROM FUTURE
```

1    CRIMES BY THE DEFENDANT.

2           AND, YOUR HONOR, WE'RE ACTUALLY AGAIN IN A UNIQUE

3    SITUATION BECAUSE I WOULD PROFFER TO YOU THAT, ON THE

4    MAJORITY OF TIMES WHEN A DEFENDANT HAS BEEN CONVICTED AND IS

5    AWAITING SENTENCING, THAT IS PROBABLY THE TIME WHEN THEY ARE

6    GOING TO BE ON THEIR BEST BEHAVIOR.  I MEAN, THAT SEEMS

7    COMMONSENSICAL.  THEY KNOW THEY ARE FACING AN OPPORTUNITY TO

8    BE PUNISHED; SO THEY ARE GOING TO PUT THEIR BEST FOOT

9    FORWARD.

10           BUT NOT THIS DEFENDANT.  NOT THIS DEFENDANT.  HE

11   WENT OUT AND COMMITTED THE SAME VIOLATIONS TWO DAYS LATER.

12   SO WE KNOW THAT THERE IS AN ABSOLUTE NEED TO PROTECT SOCIETY

13   FROM THIS DEFENDANT AND HIS CONTINUED CRIMINAL CONDUCT.

14           YOUR HONOR, IT'S NOT A VICTIMLESS CRIME.  I MEAN,

15   THE COMMUNITY IS A VICTIM.  THEY HAVE SPOKEN.  THEY DON'T

16   WANT THIS MATERIAL IN THEIR COMMUNITY.  AND, YOU KNOW,

17   DEFENSE COUNSEL STANDS HERE AND TALKS ABOUT THE LAW, AND I'M

18   NOT GOING TO DEBATE THE LAW, BUT THE BOTTOM LINE IS HE KNEW

19   THAT THESE WERE VIOLATIONS OF THE LAW.

20           HE TALKS ABOUT THIS NOT BEING A NATIONAL MOVEMENT.

21   WELL, THAT'S NOT WHAT THE GOVERNMENT IS HERE FOR.  THE LAW

22   IS THE LAW; AND IF YOU VIOLATE THE LAW, YOU SHOULD BE HELD

23   ACCOUNTABLE.

24           HE MENTIONED THAT IT'S BAD FOR MR. ISAACS THAT

25   LIGHTENING STRUCK.  WELL, IT STRUCK TWICE BECAUSE, AGAIN, HE

1    GOES OUT AND COMMITS THE SAME VIOLATIONS.  HE HAS NO RESPECT

2    FOR THIS COURT.  HE HAS NO RESPECT FOR THE LAW.

3          SO, YOUR HONOR, WHEN YOU LOOK AT THE 3553(A)

4    FACTORS -- PARDON ME -- AND YOU ARE ATTEMPTING TO ASSESS WHO

5    THIS DEFENDANT IS AND THE SERIOUSNESS OF THE CRIME, YOU HAVE

6    A LOT OF INFORMATION IN FRONT OF YOU THAT POINTS TO ONE

7    DIRECTION -- THAT THESE ARE SERIOUS OFFENSES, AS THE

8    COMMUNITY HAS SPOKEN, AS THE LAW HAS SAID IN THE PAST, AND

9    YOU KNOW WHO THIS DEFENDANT IS.  THE SMOKESCREEN IS GONE.

10         YOU KNOW WHO HE IS.  HE SHOWED THAT TO YOU ON THE

11   29TH OF APRIL.  HE SHOWED IT TO YOU THROUGH ALL THE YEARS

12   WHEN HE DIDN'T STOP.  HE'S A MAN THAT'S MOTIVATED BY GREED

13   AND HAS NO RESPECT FOR THE LAW.

14         AND, YOUR HONOR, IT'S THE GOVERNMENT'S POSITION

15   THAT BASED ON THAT AND BASED ON THE FACT THAT THAT IS AN

16   INFORMED PRESENTENCING REPORT THAT MEMORIALIZES THE CRIMINAL

17   CONDUCT FROM THE DEFENDANT FROM 1999 TO 2011, THAT THAT

18   REPORT IS APPROPRIATE AND MEMORIALIZES THE CRIMINAL CONDUCT,

19   AND THAT THE DEFENDANT SHOULD BE SENTENCED WITHIN THE

20   GUIDELINE RANGES.

21         THANK YOU FOR YOUR TIME, YOUR HONOR.

22         **THE COURT:**  ALL RIGHT.  THANK YOU.

23         MR. DIAMOND, WHY DON'T YOU AND YOUR CLIENT

24   APPROACH THE LECTERN AGAIN.  AND THEN I WILL GIVE YOU AN

25   OPPORTUNITY, BRIEFLY, TO RESPOND TO MR. GRANT'S COMMENTS.

```
1          MR. DIAMOND:  YES.  THANK YOU, YOUR HONOR.

2          IT SEEMS THE GOVERNMENT IS EMPHASIZING THE ALLEGED

3   POST-CONDUCT ACTIVITY OF MR. ISAACS.  IT IS MY UNDERSTANDING

4   THAT MR. ISAACS IS HERE TO FURTHER COMMENT, IF HE CHOOSES TO

5   DO SO, THAT THE GOVERNMENT SENT A LETTER COMPLAINING ABOUT

6   THE POST-VERDICT CONDUCT, COMPLAINING THAT MR. ISAACS WAS

7   CONTINUING TO SELL MOVIES.

8          WHEN THAT LETTER WAS RECEIVED, MR. ISAACS

9   IMMEDIATELY STOPPED, IMMEDIATELY.  AND THE GOVERNMENT HAS NO

10  EVIDENCE THAT MR. ISAACS DID NOT COMPLY WITH THE

11  GOVERNMENT'S REQUEST AS SOON AS THE GOVERNMENT MADE THE

12  REQUEST.

13         MR. ISAACS, OF COURSE, RESPECTS THE COURT.

14  THERE'S NO EVIDENCE THAT HE DOES NOT RESPECT THE COURT.

15         WHEN THE GOVERNMENT SENT A LETTER COMPLAINING THAT

16  MR. ISAACS WAS CONTINUING TO SELL MOVIES, MR. ISAACS

17  IMMEDIATELY STOPPED AND HAS NOT RESUMED DOING THAT FOR

18  MONTHS AND MONTHS AND MONTHS.

19         FOR WHATEVER REASONS, THE SENTENCING WAS PUT OFF A

20  LONG TIME.  SO WE HAVE THE BENEFIT OF WHAT MR. ISAACS HAS

21  DONE SINCE APRIL OF 2012 TO THE PRESENT TIME.  AND ONCE

22  MR. ISAACS RECEIVED THE NOTICE FROM THE GOVERNMENT THAT IT

23  DID NOT WANT HIM TO SELL THE MOVIES, HE IMMEDIATELY STOPPED.

24  THE WEBSITE WAS DISBANDED.

25         SO MR. GRANT IS FOCUSING ON ONE BRIEF PERIOD OF
```

1    TIME JUST AFTER THE VERDICT WAS RENDERED AND IS

2    FORGETTING -- OR IS NOT DISCLOSING TO THE COURT THAT

3    MR. ISAACS HAS COMPLIED WITH THE GOVERNMENT'S REQUEST NOT TO

4    ENGAGE IN ANY ACTIVITY.

5          THE GOVERNMENT COULD HAVE ASKED THE COURT, AT THE

6    TIME OF THE VERDICT, THAT THE COURT IMPOSE, AS A CONDITION

7    OF MR. ISAACS' FURTHER RELEASE --

8          BECAUSE HE HAS BEEN RELEASED EVER SINCE HE WAS

9    ARRAIGNED IN THIS CASE, AND HE VOLUNTARILY SURRENDERED WHEN

10   HE WAS NOTIFIED THAT HE HAD BEEN INDICTED.

11         THE GOVERNMENT ALWAYS HAD THE AUTHORITY TO SAY

12   MR. ISAACS' RIGHT TO CONTINUE ON PRETRIAL RELEASE SHOULD BE

13   LIMITED, HE SHOULD NOT SELL ANY MOVIES.  ALL THE GOVERNMENT

14   HAD TO DO WAS MAKE THE REQUEST.  BUT AS SOON AS THE

15   GOVERNMENT COMPLAINED, MR. ISAACS STOPPED.

16         SO THAT IS REALLY A FALSE ISSUE IN THE CASE.  YET

17   IT SEEMS TO BE THE MAJOR ISSUE THE GOVERNMENT IS RELYING

18   UPON TO ASK FOR A PRISON SENTENCE IN THIS CASE.  MR. ISAACS

19   STOPPED THE CONDUCT COMPLETELY.

20         THE GOVERNMENT IS SIMPLY UPSET THAT IT TOOK THE

21   GOVERNMENT TO HAVE TO WRITE A LETTER TO MAKE THE COMPLAINT,

22   BUT MR. ISAACS OBEYED THE GOVERNMENT.

23         THE GOVERNMENT ASKED FOR THE SURRENDER OF THE

24   EQUIPMENT AND THE VIDEOS AND EVERYTHING AS PART OF THE

25   FORFEITURE.  MR. ISAACS HAS COOPERATED WITH THAT.

```
 1            SO EVERYTHING MR. ISAACS HAS DONE HAS BEEN IN

 2     COOPERATION WITH THE COURT AND WITH THE GOVERNMENT.  HE

 3     STOPPED ALL SALES AS SOON AS THE GOVERNMENT PROTESTED.

 4            SO IT WOULD BE A SHAME IF MR. ISAACS WERE IN ANY

 5     WAY PUNISHED BECAUSE OF THE ALLEGED POST-VERDICT CONDUCT

 6     THAT MR. ISAACS ONLY ENGAGED IN APPARENTLY VERY BRIEFLY

 7     UNTIL THE GOVERNMENT COMPLAINED, AND HE IMMEDIATELY STOPPED.

 8            IN THE GOVERNMENT'S ADDRESS TO YOUR HONOR, THE

 9     GOVERNMENT NOT ONCE MENTIONED THAT MR. ISAACS STOPPED.  IT

10     CREATED, I THINK, THE IMPRESSION THAT MR. ISAACS HAS

11     CONTINUED ON, WHEN IN FACT THAT IS NOT THE CASE.  HE DID

12     STOP.

13            SO I APPRECIATE THE TIME THE COURT HAS GIVEN ME TO

14     RESPOND.

15            IF MR. ISAACS WANTS TO FURTHER CLARIFY THAT, HE'S

16     FREE TO DO SO.  IT'S UP TO MR. ISAACS.

17         (COUNSEL CONFERS OFF THE RECORD WITH DEFENDANT.)

18            THE COURT:  MR. ISAACS HAS BEEN GIVEN AN

19     OPPORTUNITY TO SPEAK.  HE DECLINED.

20            MR. DIAMOND:  OKAY.  THANK YOU, YOUR HONOR.

21            THE COURT:  IT IS NOT UP TO HIM ANYMORE AT THIS

22     TIME.

23            MR. DIAMOND:  YES, YOUR HONOR.  THANK YOU VERY

24     MUCH.

25            MR. GRANT:  YOUR HONOR, JUST REAL QUICKLY --
```

1          **THE COURT:**  REMAIN THERE FOR SENTENCING.

2          **MR. GRANT:**  IF I MAY, YOUR HONOR.  I JUST WANT TO

3     BE VERY CLEAR ON THIS BECAUSE THAT WAS A MISREPRESENTATION.

4     THE DEFENDANT DID NOT STOP HIS MISCONDUCT.

5          ON JULY 19, 2012, THE PARTIES AGREED TO THE

6     PRELIMINARY CONSENT MOTION FOR PRELIMINARY ORDER OF

7     FORFEITURE, WHICH INCLUDED THE WEBSITES.  HE WAS CONVICTED

8     ON THE 27TH, HE SOLD ON THE 29TH, HE ADDED MOVIES ON THE

9     30TH OF APRIL, AND HE SOLD THE VIDEOS ON MAY 17TH TO

10    DETECTIVE LEWISON.

11         THE GOVERNMENT FORFEITED THE WEBSITES AND TOOK

12    CONTROL OF THOSE DOMAIN NAMES.  IT WAS THE GOVERNMENT'S

13    ACTIONS THAT MADE IT UNAVAILABLE FOR THE DEFENDANT TO BE

14    ABLE TO OPERATE HIS WEBSITES.  HE KNEW, ON THE DAY THAT HE

15    WAS CONVICTED, THAT HE WAS SUPPOSED TO FORFEIT THOSE SITES

16    TO THE GOVERNMENT, BUT INSTEAD HE CONTINUED TO OPERATE THEM

17    TO INCLUDE ADDING NEW MATERIAL.  SO THAT'S JUST AN ABSOLUTE

18    MISREPRESENTATION.

19         THE DEFENDANT TOOK NO STEPS ON HIS OWN BEHALF, AND

20    THE EVIDENCE IS VERY CLEAR OF WHAT HE DID POST-CONVICTION,

21    AND IT HAS NOTHING TO DO WITH US SENDING A LETTER.  HE WAS

22    AWARE THAT THAT WAS OBSCENE MATERIAL.  HE HAD JUST BEEN

23    CONVICTED OF A CRIME, THE SAME CRIME.

24         SO I JUST WANTED TO CLEAR THAT UP FOR THE COURT SO

25    THERE WAS NO MISREPRESENTATION THERE.

```
 1              THANK YOU FOR YOUR TIME, YOUR HONOR.

 2         THE COURT:  LET ME ASK YOU THIS:  THE COURT DID

 3    SIGN THE PRELIMINARY ORDER OF FORFEITURE IN THIS CASE

 4    BECAUSE THERE HAD BEEN NO OBJECTION BY THE DEFENDANT.  IS

 5    THAT RIGHT?

 6              MR. DIAMOND:  YES.  MR. ISAACS STOPPED THE SALE

 7    OF --

 8         THE COURT:  NO, THAT'S NOT MY QUESTION.  MY

 9    QUESTION IS WHETHER OR NOT YOU FOLKS AGREED THAT THE ORDER

10    HAD ACTUALLY BEEN ISSUED BY THE COURT.

11              MS. GUNDERSON:  YES, YOUR HONOR, THE ORDER HAS

12    BEEN ISSUED BY THE COURT.

13         THE COURT:  ALL RIGHT.  VERY GOOD.

14              ALL RIGHT.  THANK YOU VERY MUCH, COUNSEL.  I

15    APPRECIATE YOUR ARGUMENTS.

16              I HAVE FULLY CONSIDERED THE RECORD OF THIS CASE.

17    I HAD ALSO BEEN THE TRIAL JUDGE IN THIS CASE.  SO I HAD AN

18    OPPORTUNITY TO ALSO BENEFIT FROM THE EVIDENCE THAT HAD BEEN

19    INTRODUCED IN THIS CASE.

20              I BEGIN BY RULING ON THE OBJECTIONS OR THE

21    POSITIONS TAKEN BY THE DEFENDANT.

22              FIRST, WITH RESPECT TO THE ISSUE OF WHETHER OR NOT

23    MR. ISAACS OUGHT TO RECEIVE A 2-LEVEL DECREASE IN THE

24    CALCULATION OF THE GUIDELINES FOR PURPOSES OF ACCEPTANCE OF

25    RESPONSIBILITY, THAT REQUEST IS DENIED.
```

1          THERE IS NO QUESTION THAT MR. ISAACS' CONTINUING

2     TO ENGAGE IN THE CRIMINAL ACTIVITY POST-CONVICTION SHOWS

3     THAT HE DID NOT ACCEPT RESPONSIBILITY.

4          DEFENDANT COULD NOT HAVE THOUGHT THAT THE MATERIAL

5     THAT HE SOLD OR WAS ADVERTISING FOR SALE POST-CONVICTION WAS

6     ANYTHING DIFFERENT FROM THAT WHICH THE JURY HAD FOUND TO BE

7     OBSCENE.

8          MOREOVER, I HAVE ALSO REVIEWED THOSE VIDEOS

9     BECAUSE THEY WERE LODGED, PURSUANT TO THE COURT'S ORDER, BY

10    THE GOVERNMENT IN PREPARATION OF SENTENCING.

11         AND I FIND, FOR SENTENCING PURPOSES, THERE IS

12    ABSOLUTELY NO MATERIAL DIFFERENCE BETWEEN THE VIDEOS THAT

13    MR. ISAACS WAS CONVICTED OF AND THE VIDEOS THAT HE SOLD

14    POST-CONVICTION; AND THAT THEREFORE I ALSO FIND FOR

15    SENTENCING PURPOSES THAT THE POST-CONVICTION VIDEOS WERE

16    JUST AS OBSCENE.

17         THE FACT THAT THE DEFENDANT HAS CONTINUED TO

18    TRAFFIC IN THIS OBSCENE MATERIAL, INCLUDING OPENLY

19    ADVERTISING AND SEEKING PEOPLE TO VISIT HIS SITES FOR

20    PURPOSES OF PURCHASING THOSE MATERIALS, CLEARLY DEMONSTRATES

21    THAT THE DEFENDANT HAS NOT ACCEPTED RESPONSIBILITY FOR HIS

22    ACTIONS.

23         MR. DIAMOND'S ARGUMENT THAT SOMEHOW ONCE THE

24    GOVERNMENT HAD SENT A LETTER THAT MR. ISAACS CEASED AND

25    ASIDE FROM THE GOVERNMENT'S REBUTTAL, WHICH SHOWS THAT FOR

```
 1    MUCH OF THE TIME, THE MATERIAL HAD BEEN THE SUBJECT OF THE

 2    FORFEITURE AND THEREFORE HAD BEEN TAKEN FROM MR. ISAACS; BUT

 3    EVEN ASIDE FROM THAT, IT IS RATHER PREPOSTEROUS TO THINK

 4    THAT THE DEFENDANT HAS TO HAVE THE GOVERNMENT'S FURTHER

 5    REQUEST TO DESIST FROM CRIMINAL BEHAVIOR THAT HE KNEW WAS

 6    CRIMINAL AFTER THE JURY'S VERDICT.

 7            INSOFAR AS THE ENHANCEMENT FOR ROLE, THE COURT

 8    OVERRULES THE OBJECTION BY THE DEFENDANT.  THE PROBATION

 9    OFFICER'S REPORT, AS WELL AS THE EVIDENCE INTRODUCED AT

10    TRIAL -- ALL OF THAT EVIDENCE IS MORE THAN SUFFICIENT TO

11    ESTABLISH THE FACTUAL BASIS FOR THE ENHANCEMENT; AND THAT

12    IS, OVER THE COURSE OF THE TIME THAT MR. ISAACS COMMITTED

13    THESE OFFENSES, HE DID PLAY A ROLE AS A LEADER OR ORGANIZER

14    OF FIVE OR MORE PARTICIPANTS.

15            INSOFAR AS THE OBJECTION TO THE ERROR IN TERMS OF

16    THE COLLEGE FROM WHICH MR. ISAACS GRADUATED, THAT OBJECTION

17    IS SUSTAINED, AND THE P.S.R. WILL BE CORRECTED TO REFLECT

18    THAT.

19            THE REMAINING ARGUMENTS ARE 3553(A) ARGUMENTS,

20    WHICH, OF COURSE, WE WILL TAKE INTO CONSIDERATION.

21            WE BEGIN THE SENTENCING PROCESS BY CALCULATING THE

22    GUIDELINES BASED UPON OUR RULINGS.  THERE ARE NO OTHER

23    OBJECTIONS TO THE GUIDELINES.

24            THE BASE OFFENSE LEVEL IS 10; A 5-LEVEL INCREASE

25    FOR PECUNIARY GAIN; 2-LEVEL INCREASE FOR THE USE OF A
```

```
 1   COMPUTER; 4-LEVEL INCREASE FOR IMAGES OF SADOMASOCHISTIC
 2   CONDUCT OR OTHER DEPICTION OF VIOLENCE AS CLEARLY SET FORTH
 3   IN THE VIDEO CALLED "MAKO'S FIRST TIME SCAT"; 4-LEVEL
 4   INCREASE FOR BEING AN ORGANIZER OR LEADER OF FIVE OR MORE
 5   PARTICIPANTS IN CRIMINAL ACTIVITY.
 6             OFFENSE LEVEL 25, CRIMINAL HISTORY CATEGORY 1
 7   YIELDS AN ADVISORY RANGE OF 57 TO 71 MONTHS.
 8             THAT, OF COURSE, IS NOT THE END OF THE MATTER.
 9   THE COURT HAS ALSO CONSIDERED THE RELEVANT 3553(A) FACTORS.
10   THOSE ARE THE NATURE AND CIRCUMSTANCES OF THIS OFFENSE,
11   WHICH IS THAT MR. ISAACS HAD ENGAGED IN A BUSINESS OF
12   PRODUCING AND SELLING OBSCENE MATERIAL INVOLVING URINATION;
13   DEFECATION; INGESTION OF URINE, FECES, AND VOMIT; AND ACTS
14   OF BESTIALITY.
15             HE SOLD VARIOUS OBSCENE VIDEOS, SOME OF WHICH HE
16   PRODUCED HIMSELF, AND HE SOLD THOSE OVER THE INTERNET AND
17   DELIVERED THEM BY USE OF THE MAILS AS WELL AS OTHER COMMON
18   CARRIERS.
19             HE WAS THE PERSON WHO LED THE BUSINESS AND
20   DIRECTED THE ACTIVITIES OF THE BUSINESS, AS WELL AS ALL OF
21   ITS OTHER EMPLOYEES OR OTHER PARTICIPANTS, INCLUDING THE
22   PERFORMERS.
23             HE DID ALL OF THIS, I FIND, FOR MONETARY GAIN.  I
24   TOTALLY REJECT MR. ISAACS' SUGGESTION DURING THE COURSE OF
25   TRIAL THAT SOMEHOW HE IS A SHOCK ARTIST OR THAT THIS WAS
```

```
 1   MEANT TO BE SHOCK ART.

 2           HE NOW TRIES TO CLOAK HIMSELF WITH THE FIRST

 3   AMENDMENT AND ATTEMPTS IN VARIOUS INSTANCES TO PRETEND THAT

 4   HE IS A DEFENDER OF THE FIRST AMENDMENT AND THE PROTECTOR OF

 5   FIRST AMENDMENT RIGHTS.

 6           NOTHING COULD BE FURTHER FROM TRUTH INSOFAR AS

 7   MR. ISAACS IS CONCERNED.  HE DID IT MERELY FOR MONEY AND TO

 8   TAKE ADVANTAGE OF OTHERS WHO WOULD BE INTERESTED IN THIS

 9   ART.  IT WAS NOTHING MORE THAN A CYNICAL POST HOC

10   JUSTIFICATION AFTER HE HAD BEEN INDICTED AND ACCUSED BY THE

11   GOVERNMENT THAT MR. ISAACS DECIDED THAT THE FIRST AMENDMENT

12   WOULD BE A CONVENIENT TOOL FOR HIM TO USE TO ATTEMPT TO

13   EVADE RESPONSIBILITY AND PUNISHMENT.  HE IS NOT A DEFENDER

14   OF THE FIRST AMENDMENT.

15           MR. ISAACS, YOU ARE AN ABUSER OF THE FIRST

16   AMENDMENT.  YOU CHEAPEN THE FIRST AMENDMENT WITH YOUR FALSE

17   CLAIMS THAT SOMEHOW YOU WERE ACTING AS AN ARTIST.

18           IT IS VERY CLEAR TO ME FROM THE EVIDENCE PRESENTED

19   AT TRIAL THAT YOUR CLAIM OF BEING AN ARTIST AND THAT THIS

20   WAS ALL DONE IN THE NAME OF ARTISTIC ADVANCEMENT UNDER THE

21   FIRST AMENDMENT IS FALSE AND DEMONSTRABLY SO.

22           NOWHERE AT THE TIME THAT YOU PRODUCED OR WERE

23   SELLING THESE MATERIALS DID YOU EVER SUGGEST THAT THIS WAS

24   FOR ARTISTIC PURPOSES OR THAT IT WAS TO ADVANCE THE AGENDA

25   OF SHOCK ART.
```

```
 1        NOWHERE WERE ANY OF THESE VIDEOS EVEN PROPOSED TO

 2   BE USED IN ART SHOWS, GALLERIES, OR ANYTHING ELSE.  ALL OF

 3   THIS CAME UP AFTER THE FACT WHEN IT BECAME CONVENIENT TO YOU

 4   TO USE AS A PURPORTED DEFENSE TO THIS CASE.

 5        NOW, IN TERMS OF YOUR ARGUMENT, MR. DIAMOND, YOU

 6   SEEM TO SPIN A LITTLE BIT DIFFERENT ARGUMENT THAN THE

 7   PURPORTED SUGGESTION THAT THESE ARE PROTECTED BY THE FIRST

 8   AMENDMENT AS ARGUED BY YOU AND YOUR CLIENT DURING TRIAL;

 9   THAT IS, YOU SEEM TO BE SAYING THAT THE SUPREME COURT GOT IT

10   WRONG -- THAT THE FIRST AMENDMENT, FOR IT TO MEAN ANYTHING,

11   CANNOT EXEMPT AREAS OF WHAT YOU PURPORT TO BE SPEECH AND

12   THAT 100 YEARS FROM NOW PEOPLE ALIVE THEN WILL HAVE MORE

13   ENLIGHTENMENT THAN WE DO.

14        IN ESSENCE, WHAT YOU ARE SAYING IS I SHOULD, AT

15   TIME OF SENTENCING, EFFECTIVELY IGNORE THE LAW.

16        WHILE I CAN'T DO THAT AT THE TIME OF TRIAL FOR THE

17   GUILT OR INNOCENCE OF YOUR CLIENT, YOU ARE SUGGESTING THAT I

18   IGNORE THE LAW AND DETERMINE FOR MYSELF THAT IF I WERE MORE

19   ADVANCED AND MORE ENLIGHTENED, PERHAPS AS ENLIGHTENED AND AS

20   ADVANCED AS YOU ARE, THAT I WOULD FIND THAT THIS KIND OF,

21   QUOTE, "CRIME," CLOSED QUOTE, AS YOU MIGHT SAY, IS NOT

22   DESERVING OF ANY PUNISHMENT OTHER THAN STRAIGHT UNSUPERVISED

23   PROBATION.

24        TO THE EXTENT THAT THAT'S YOUR ARGUMENT, THAT IS

25   AN ARGUMENT THAT IS AT WAR WITH THE BASIC FUNDAMENTAL
```

1    CONCEPT OF A COUNTRY BASED UPON THE RULE OF LAW.

2         WHAT YOU ARE ASKING THE COURT TO DO IS TO SAY,

3    UNDER THE GUISE OF SENTENCING, I CAN FEEL FREE TO TOTALLY

4    SUBSTITUTE MY VIEWS OF WHAT THE LAW OUGHT TO BE, AND IF IT

5    IS INCONSISTENT WITH MY OWN VIEWS OR PERHAPS WITH YOUR

6    VIEWS, THAT I WILL, IN EFFECT, VITIATE THE EFFECT OF THE LAW

7    BY IMPOSING A SENTENCE COMMENSURATE WITH THAT.

8         I'M NOT HERE TO COMMENT ON WHETHER I AGREE WITH

9    THE SUPREME COURT OR WHETHER I AGREE WITH YOU.  I'M NOT HERE

10   TO COMMENT UPON WHETHER A HUNDRED YEARS FROM NOW, OR EVEN

11   TODAY, THAT THERE SHOULD OR SHOULD NOT BE OBSCENITY LAWS.

12   FOR ME AND FOR MY ROLE IN THIS CASE, THAT'S NEITHER HERE NOR

13   THERE.  IT IS IRRELEVANT.

14        WHAT IS NOT IRRELEVANT IS WHAT THE CURRENT STATE

15   OF THE LAW IS; NOR IS IT IRRELEVANT THAT THE COURT IS NOT

16   FREE, EVEN AT THE TIME OF SENTENCING UNDER THE GUISE THAT IT

17   IS ONLY SENTENCING AND NOT GUILT, TO JUST FREELY REJECT THAT

18   WHICH CONGRESS HAS PASSED AND THAT WHICH THE SUPREME COURT

19   HAS HELD TO BE CONSTITUTIONAL.

20        AND SO I AM NOT FREE TO INJECT MY PERSONAL VIEWS,

21   WHATEVER THEY MAY BE, ONE WAY OR ANOTHER, AND SAY BECAUSE

22   SOMEHOW I DISAGREE WITH THE SUPREME COURT AND WITH CONGRESS,

23   I'M GOING TO, IN EFFECT, SUBSTITUTE MY JUDGMENT AT THE TIME

24   OF SENTENCING.

25        THAT IS A DANGEROUS CALL FOR US TO ABUSE THE RULE

```
 1   OF LAW.  THAT WILL HAVE GREATER ADVERSE CONSEQUENCES IF

 2   JUDGES WERE TO ACCEPT YOUR INVITATION.  I DECLINE TO ACCEPT

 3   YOUR INVITATION TO BE LAWLESS.

 4          HISTORY AND CHARACTERISTICS OF THE DEFENDANT SHOWS

 5   THAT HE IS 61 YEARS OLD, HE HAS NO PRIOR CRIMINAL HISTORY,

 6   AND HE HAS HAD PRIOR EMPLOYMENT.

 7          THERE IS A NEED, OF COURSE, FOR THE SENTENCE

 8   IMPOSED TO REFLECT THE SERIOUSNESS OF THIS OFFENSE AS WELL

 9   AS TO PROMOTE RESPECT FOR THE LAW.

10          WITH RESPECT TO THAT FACTOR, IT APPEARS TO BE

11   PARTICULARLY NEEDED BECAUSE MR. ISAACS HAS DEMONSTRATED

12   CONTINUING DISRESPECT FOR THE LAW THROUGH THE REPEATED SALE

13   AND PRODUCTION OF OBSCENE MATERIAL AND THE CONTINUED

14   DISRESPECT FOR THE LAW AS EVIDENCED BY HIS CONTINUED

15   TRAFFICKING IN THIS OBSCENE MATERIAL EVEN AFTER CONVICTION

16   BY A JURY.

17          THERE IS A NEED TO PROVIDE JUST PUNISHMENT AND TO

18   AFFORD ADEQUATE DETERRENCE.  AGAIN, SPECIFIC DETERRENCE IS

19   NEEDED BECAUSE MR. ISAACS HAS TO KNOW THAT THERE WILL BE A

20   CONSEQUENCE TO THIS CRIMINAL BEHAVIOR AND THAT HE HAS TO

21   RECEIVE A SUFFICIENT SENTENCE TO CONVINCE HIM THAT THIS

22   CANNOT BE REPEATED.

23          GENERAL DETERRENCE IS LIKEWISE NEEDED.  INSOFAR AS

24   THE NEED TO PROTECT THE PUBLIC FROM FUTURE SUCH CRIMES BY

25   THE DEFENDANT, IT IS, OF COURSE, CLEAR THAT HE IS A
```

1    RECIDIVIST BY HIS POST-CONVICTION CONDUCT.  BUT HOPEFULLY,

2    WITH AN ADEQUATE SENTENCE, HE WILL BE SUFFICIENTLY DETERRED

3    SO AS NOT TO RISK FUTURE CRIMES.

4          EDUCATION, VOCATIONAL TRAINING, MEDICAL CARE,

5    CORRECTIONAL TREATMENT DO NOT APPEAR TO BE PARTICULARLY

6    APPLICABLE HERE.

7          THE COURT HAS AVAILABLE TO IT THE FULL RANGE OF

8    SENTENCES.  THERE DOES NOT APPEAR TO BE ANY OTHER PERTINENT

9    POLICY STATEMENTS.  RESTITUTION IS NOT AN ISSUE.

10         I AM KEENLY AWARE OF THE NEED TO AVOID UNWARRANTED

11   SENTENCING DISPARITIES.  IN THIS CASE, I HAVE ALSO TAKEN A

12   LOOK AT, NOT ONLY THE GUIDELINES BECAUSE THE GUIDELINES ARE

13   A MEASURE OF AVOIDING UNWARRANTED SENTENCING DISPARITIES,

14   BUT ALSO I HAVE REVIEWED SOME OF THE OTHER CASES ACROSS THE

15   COUNTRY WHERE SENTENCES HAVE BEEN IMPOSED UNDER VARYING

16   CIRCUMSTANCES AND THE RELEVANT FACTORS TO THOSE CASES.

17         HAVING THEREFORE CONSIDERED ALL OF THOSE FACTORS,

18   THE FOLLOWING IS THE SENTENCE OF THE COURT:

19         *IT IS ORDERED DEFENDANT SHALL PAY THE*

20         *UNITED STATES A SPECIAL ASSESSMENT OF $500, WHICH*

21         *IS DUE IMMEDIATELY.*

22         *ANY UNPAID BALANCE SHALL BE DUE DURING THE*

23         *PERIOD OF IMPRISONMENT AT A RATE OF NOT LESS THAN*

24         *$25 PER QUARTER AND PURSUANT TO THE BUREAU OF*

25         *PRISONS' INMATE FINANCIAL RESPONSIBILITY PROGRAM.*

1    *IT IS ORDERED DEFENDANT SHALL PAY THE*

2    *UNITED STATES A TOTAL FINE OF $10,000, WHICH*

3    *CONSISTS OF THE FOLLOWING:   COUNTS 1 THROUGH 5, A*

4    *FINE OF $10,000 EACH TO RUN CONCURRENTLY FOR A*

5    *TOTAL FINE OF $10,000.*

6    *THE TOTAL FINE SHALL BEAR INTEREST AS*

7    *PROVIDED BY LAW.*

8    *A SUM OF $450 SHALL BE PAID IMMEDIATELY.*

9    *PAYMENT OF THE BALANCE SHALL BE DUE DURING*

10   *THE PERIOD OF IMPRISONMENT AT A RATE OF NOT LESS*

11   *THAN $25 PER QUARTER AND PURSUANT TO THE BUREAU OF*

12   *PRISONS' INMATE FINANCIAL RESPONSIBILITY PROGRAM.*

13   *IF ANY AMOUNT OF THE FINE REMAINS UNPAID*

14   *AFTER RELEASE FROM CUSTODY, MONTHLY PAYMENTS OF*

15   *$300 SHALL BE MADE DURING THE PERIOD OF*

16   *SUPERVISION.*

17   *THESE PAYMENTS SHALL BEGIN WITHIN 30 DAYS*

18   *AFTER COMMENCEMENT OF COMMUNITY SUPERVISION.*

19   *THE DEFENDANT SHALL COMPLY WITH GENERAL*

20   *ORDER 01-05.*

21   *THE COURT HAS FOUND THAT THE PROPERTY*

22   *IDENTIFIED IN THE PRELIMINARY ORDER OF FORFEITURE*

23   *IS SUBJECT TO FORFEITURE AND HAS, IN FACT, SO*

24   *ORDERED.   THEREFORE, THE PRELIMINARY ORDER IS*

25   *HEREBY INCORPORATED BY REFERENCE INTO THIS*

1    *JUDGMENT AND IS FINAL AS TO THIS DEFENDANT.*

2        *IT IS THE JUDGMENT OF THE COURT THAT*

3    *DEFENDANT, IRA ISAACS, IS HEREBY COMMITTED ON*

4    *COUNTS 1 THROUGH 5 OF THE FIRST SUPERSEDING*

5    *INDICTMENT TO THE CUSTODY OF THE BUREAU OF PRISONS*

6    *TO BE IMPRISONED FOR A TERM OF 48 MONTHS.*

7        *THIS TERM CONSISTS OF 48 MONTHS ON EACH OF*

8    *COUNTS 1 THROUGH 5 OF THE FIRST SUPERSEDING*

9    *INDICTMENT TO BE SERVED CONCURRENTLY.*

10       *UPON RELEASE FROM IMPRISONMENT, DEFENDANT*

11   *SHALL BE PLACED ON SUPERVISED RELEASE FOR A TERM*

12   *OF THREE YEARS.*

13       *THIS TERM CONSISTS OF THREE YEARS ON EACH OF*

14   *COUNTS 1, 2, 3, 4, AND 5 OF THE FIRST SUPERSEDING*

15   *INDICTMENT.  ALL SUCH TERMS TO RUN CONCURRENTLY*

16   *UNDER THE FOLLOWING TERMS AND CONDITIONS:*

17       *1.  DEFENDANT SHALL COMPLY WITH THE*

18       *RULES AND REGULATIONS OF THE U.S. PROBATION*

19       *OFFICE AND GENERAL ORDER 05-02 AND GENERAL*

20       *ORDER 01-05, INCLUDING THE THREE SPECIAL*

21       *CONDITIONS DELINEATED IN GENERAL ORDER 01-05;*

22       *2.  DEFENDANT SHALL REFRAIN FROM ANY*

23       *UNLAWFUL USE OF A CONTROLLED SUBSTANCE.*

24       *DEFENDANT SHALL SUBMIT TO ONE DRUG TEST*

25       *WITHIN 15 DAYS OF RELEASE FROM IMPRISONMENT*

1    *AND AT LEAST TWO PERIODIC DRUG TESTS*

2    *THEREAFTER, NOT TO EXCEED EIGHT SUCH TESTS*

3    *PER MONTH, AS DIRECTED BY THE PROBATION*

4    *OFFICER;*

5        *3.  DURING THE PERIOD OF COMMUNITY*

6    *SUPERVISION, DEFENDANT SHALL PAY THE SPECIAL*

7    *ASSESSMENT AND FINE IN ACCORDANCE WITH THIS*

8    *JUDGMENT'S ORDERS PERTAINING TO SUCH PAYMENT;*

9        *4.  DEFENDANT SHALL APPLY ALL MONIES*

10   *RECEIVED FROM INCOME TAX REFUNDS, LOTTERY*

11   *WINNINGS, INHERITANCES, JUDGMENTS, AND ANY*

12   *ANTICIPATED OR UNEXPECTED FINANCIAL GAIN TO*

13   *THE OUTSTANDING COURT-ORDERED FINANCIAL*

14   *OBLIGATION;*

15       *5.  DEFENDANT SHALL COOPERATE IN THE*

16   *COLLECTION OF A D.N.A. SAMPLE FROM HIM; AND*

17       *6.  ALL COMPUTERS, COMPUTER-RELATED*

18   *DEVICES, AND THEIR PERIPHERAL EQUIPMENT USED*

19   *BY THE DEFENDANT SHALL BE SUBJECT TO SEARCH*

20   *AND SEIZURE.  IF THE DEFENDANT OPTS TO WORK*

21   *FOR SOMEONE OTHER THAN HIMSELF, THIS*

22   *CONDITION SHALL NOT APPLY TO ANY OF THAT*

23   *EQUIPMENT BEING USED AT THE EMPLOYMENT SITE*

24   *AND WHICH ARE MAINTAINED AND MONITORED BY THE*

25   *EMPLOYER.*

```
 1              THE COURT AUTHORIZES THE PROBATION

 2          OFFICER TO DISCLOSE THE PRESENCE REPORT TO

 3          THE SUBSTANCE ABUSE TREATMENT PROVIDER TO

 4          FACILITATE THE DEFENDANT'S TREATMENT FOR ANY

 5          DRUG ADDICTION OR DRUG DEPENDENCY.  ANY

 6          FURTHER RE-DISCLOSURE OF THE PRESENCE

 7          REPORT IS PROHIBITED WITHOUT THE CONSENT OF

 8          THE COURT.

 9          THE COURT:  MR. GRANT, I BELIEVE THERE WAS A

10  SUPERSEDING INDICTMENT.  I DON'T KNOW WHETHER WE HAD

11  DISMISSED THE UNDERLYING INDICTMENT, BUT I THINK IT IS

12  APPROPRIATE FOR US TO DO SO AT THIS TIME.

13          IS THERE A MOTION TO DISMISS THE UNDERLYING

14  INDICTMENT AT THIS TIME?

15          MR. GRANT:  YES.  THE GOVERNMENT MOVES FOR SUCH AT

16  THIS TIME, YOUR HONOR.

17          THE COURT:  ALL RIGHT.  THAT UNDERLYING INDICTMENT

18  IS DISMISSED AT THIS TIME.

19          (FOLLOWING PROCEEDINGS EFILED PREVIOUSLY.)

20          THE COURT:  MR. DIAMOND, DOES YOUR CLIENT REQUEST

21  A BRIEF TIME TO SURRENDER HIMSELF TO THE FACILITY THAT MAY

22  BE DESIGNATED BY THE BUREAU OF PRISONS FOR HIS CONFINEMENT?

23          MR. DIAMOND:  YES, HE WOULD LIKE TO REPORT.

24          ALSO, MR. ISAACS HAS ASKED ME TO FILE A NOTICE OF

25  APPEAL, BUT I WOULD NOT BE REPRESENTING HIM ON APPEAL.  SO
```

```
1   MY QUESTION TO THE COURT IS WHETHER THE NOTICE OF APPEAL CAN

2   BE PREPARED BY ME FOR HIM TO SIGN PRO PER.  SO HE CAN BE --

3            THE COURT:  FIRST OF ALL, MR. ISAACS, YOU HAVE THE

4   RIGHT TO APPEAL IN THIS CASE, NOT ONLY THE SENTENCE BUT

5   ALSO YOUR CONVICTION, AS WELL AS ANY OTHER MOTIONS PRETRIAL

6   THAT THE COURT HAD RULED AGAINST YOU ON; AND IF YOU WISH TO

7   DO SO, YOU SHOULD DISCUSS THE MATTER WITH MR. DIAMOND.

8            AND, MR. DIAMOND, I AM NOT GOING TO RELIEVE YOU.

9   I AM GOING TO HAVE YOU ASSIST MR. ISAACS IN THE FILING OF A

10  TIMELY NOTICE OF APPEAL, AND THEN YOU CAN SEEK TO BE

11  RELIEVED FROM THE NINTH CIRCUIT SO THAT I WANT TO MAKE SURE

12  THERE IS NO DANGER OF ANY UNTIMELINESS IN THE FILING OF THE

13  NOTICE OF APPEAL.

14           SO YOU ARE DIRECTED TO STAY ON THIS CASE AND TO

15  ASSIST HIM IN THE FILING OF A TIMELY NOTICE OF APPEAL.

16           DO YOU UNDERSTAND THAT, MR. DIAMOND?

17           MR. DIAMOND:  YES, YOUR HONOR.

18           THE COURT:  ALL RIGHT.

19           SO, MR. ISAACS, DO YOU UNDERSTAND THAT YOU HAVE

20  THE RIGHT TO APPEAL?

21           THE DEFENDANT:  YES, YOUR HONOR.

22           THE COURT:  ALSO, YOU HAVE THE RIGHT TO ASK THE

23  COURT TO WAIVE THE COST OF YOUR APPEAL IF YOU MAKE

24  SUFFICIENT DEMONSTRATION TO THE COURT THAT YOU ARE UNABLE TO

25  PAY THOSE COSTS BEFORE YOU APPEAL.
```

```
 1           DO YOU UNDERSTAND THAT?
 2           THE DEFENDANT:  YES, I DO, YOUR HONOR.
 3           THE COURT:  ALL RIGHT.  WHAT IS THE REASONABLE
 4   REQUEST THAT YOU WISH TO PROFFER IN TERMS OF THE
 5   SELF-SURRENDER TIME?
 6           MR. DIAMOND:  MY CLIENT HAS ASKED ME TO ASK THE
 7   COURT FOR 60 DAYS.
 8           THE COURT:  I DON'T THINK HE NEEDS THAT MUCH TIME.
 9   I DON'T KNOW WHY HE WOULD NEED 60 DAYS.  I WILL GRANT HIM 30
10   DAYS IN WHICH TO SURRENDER.
11           TODAY BEING THE 16TH OF JANUARY, I'LL PUT THIS
12   MATTER OVER -- WELL, THE 16TH OF FEBRUARY A SATURDAY, AND
13   THE FOLLOWING MONDAY IS A HOLIDAY.  SO I'LL PUSH IT OVER TO
14   THE 19TH.
15           MR. ISAACS, YOU ARE ORDERED TO SURRENDER YOURSELF
16   TO THE FACILITY THAT'S DESIGNATED BY THE BUREAU OF PRISONS
17   BY NO LATER THAN NOON ON FEBRUARY 19, 2013; AND IF NO SUCH
18   PLACE HAS BEEN DESIGNATED BY THE BUREAU OF PRISONS BY THAT
19   TIME, YOU ARE NEVERTHELESS TO SURRENDER YOURSELF ON THE SAME
20   DATE AND BY THE SAME TIME TO THE UNITED STATES MARSHAL OF
21   THIS DISTRICT AT 312 NORTH SPRING STREET, LOS ANGELES,
22   CALIFORNIA.
23           DO YOU UNDERSTAND THAT?
24           THE DEFENDANT:  YES, I DO, YOUR HONOR.
25           THE COURT:  AND YOU MAY REMAIN ON BOND UNTIL SUCH
```

1    TIME OF YOUR SELF-SURRENDER, AND YOUR BOND WILL BE

2    EXONERATED UPON YOUR SELF-SURRENDER.

3             MR. DIAMOND:  YOUR HONOR, COULD MR. ISAACS BE

4    PERMITTED, IF HE DOES FILE A TIMELY NOTICE OF APPEAL, TO

5    REMAIN FREE ON THE SAME BOND PENDING THE RESOLUTION OF THE

6    APPEAL?

7             THE COURT:  NO BECAUSE THAT IS YOUR OBLIGATION TO

8    SHOW ME BY CLEAR AND CONVINCING EVIDENCE OF THE

9    REQUIREMENTS, WHICH YOU HAVE MADE NO SUCH SHOWING TODAY.

10            IF YOU WANT TO MAKE A MOTION AND TRY TO MAKE SUCH

11   SHOWING EITHER TO ME OR TO THE CIRCUIT, THAT'S FINE.  BUT

12   THE BURDEN IS NOW ON YOU ON HIS BEHALF TO SHOW BY CLEAR AND

13   CONVINCING EVIDENCE THE REQUIREMENTS SET FORTH IN THE LAW.

14            MR. DIAMOND:  THANK YOU.

15            THE COURT:  SO THAT REQUEST AT THIS TIME IS DENIED

16   WITHOUT PREJUDICE.

17            ANYTHING FURTHER AT THIS TIME, MR. GRANT?

18            MR. GRANT:  NO, YOUR HONOR.

19            THE COURT:  ANYTHING FURTHER, MR. DIAMOND?

20            MR. DIAMOND:  NO, YOUR HONOR.

21            THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

22            THE CLERK:  THIS COURT NOW STANDS IN RECESS.

23                 (PROCEEDINGS CONCLUDED.)

24                      --oOo--

25

```
1                        CERTIFICATE

2

3            I HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

4    TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

5    CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

6    PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

7    TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

8    REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

9

10   DATED THIS 24TH DAY OF APRIL, 2013.

11

12              /S/ MARY RIORDAN RICKEY
                MARY RIORDAN RICKEY
13              OFFICIAL COURT REPORTER

14

15

16

17

18

19

20

21

22

23

24

25
```